## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| THOMAS L. PAYNE, SID ARCHINAL, GARY H. KARESH, JO ANN KARESH, BELCA D. SWANSON AND MERLE K. SWANSON, individually and on behalf of all others similarly situated, | ) ) ) ) ) ) | MISC No. _____  THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| ANTHONY J. DeLUCA, HARRY J. SOOSE, FRANCIS J. HARVEY, JAMES C. McGILL, RICHARD W. POGUE, DANIEL A. D'ANIELLO, PHILLIP B. DOLAN, E. MARTIN GIBSON, ROBERT F. PUGLIESE, JAMES DAVID WATKINS, and THE CARLYLE GROUP, | ) ) ) ) ) ) ) | CA No. 02-1927 |
| Defendants. | ) ) ) | |

## OPENING BRIEF IN SUPPORT OF THE MOTION OF
## THE TRUSTEE OF THE IT LITIGATION TRUST TO QUASH SUBPOENA

Dated: May 22, 2006

THE BAYARD FIRM
Jeffrey M. Schlerf (No. 3047)
Edmond D. Johnson (No. 2257)
222 Delaware Avenue, Suite 900
Wilmington, Delaware 19801
(302) 655-5000

-and-

John K. Cunningham
Matthew J. Feeley
WHITE & CASE LLP
Wachovia Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, Florida 33131
(305) 371-2700

Counsel to the Trustee

# TABLE OF CONTENTS

Page

I.     PRELIMINARY STATEMENT ................................................................1

II.    STATEMENT OF THE NATURE AND STAGE OF
       PROCEEDING ...................................................................................2

III.   SUMMARY OF ARGUMENT ..............................................................3

IV.    BACKGROUND FACTS .......................................................................5

V.     ARGUMENT ..........................................................................................6

       A.    THE SUBPOENA SHOULD BE QUASHED BECAUSE
             IT HAS BEEN MOOTED ...........................................................6

       B.    EVEN IF NOT MOOTED, THE SUBPOENA SHOULD
             BE    QUASHED    BECAUSE    IT    IS    UNDULY
             BURDENSOME ...........................................................................8

VI.    CONCLUSION .....................................................................................13

# TABLE OF AUTHORITIES

Page

Cases

*Blair v. Wills*, 112 Fed. Appx. 546, 547 (8th Cir. 2004)..................................................6, 8

*In re Blackstone Partners, L.P.,*
    2005 WL 1560505 (S.D.N.Y. 2005).......................................................................8

*Cash Today of Texas, Inc. v. Greenberg,*
    2002 WL 31414138 (D.Del. 2002) ...................................................................9, 12

*City of El Paso, Texas v. S.E. Reynolds*,
    887 F.2d 1103 (D.C. Circ. 1989) ..................................................................6, 7, 8

*Heidelberg Americas, Inc. v. Tokyo Kikai Seisakusho, Ltd.,*
    33 F.3d 38 (1st Cir. 2003)..........................................................................8

*Lopez v. F&M Bank*, 90 Fed. Appx. 549 (D.C. Cir. 2004)..............................................6, 8

*Mannington Mills, Inc. v. Armstrong World Industries, Inc.,*
    206 F.R.D. 525 (D.Del. 2002) .........................................................................9, 10

*McCook Metals LLC v. Alcoa, Inc.*, 249 F.3d 330
    (4th Cir. 2001)..............................................................................................6

*Micro Motion, Inc. v. Kane Steel Co., Inc.,*
    894 F.2d 1318 (Fed. Cir. 1990).......................................................................9

*Munz v. Parr*, 972 F.2d 971 (8th Cir. 1992) ....................................................................6, 8

*Sullivan v. Dickson*, 283 F.2d 725 (9th Cir. 1960) ...............................................................6

*United States of America v. Amerigroup Illinois, Inc.,*
    2005 WL 3111972 (N.D.Ill. 2005) ...........................................................8, 11, 12

Statutes

11 U.S.C. §§ 101 *et seq.*...........................................................................................2

Private Securities Litigation Reform Act.......................................................................3, 5

Rule 26 of the Federal Rules of Civil Procedure ...............................1, 4, 5, 8, 9, 11, 12, 13

Rule 45 of the Federal Rules of Civil Procedure ....................................1, 4, 5, 8, 9, 11, 12

## I.    PRELIMINARY STATEMENT

The IT Litigation Trust (the "Trust"), successor to The IT Group, Inc. ("IT

Group") and its affiliated debtors (collectively, the "Debtors"), by and through its trustee,

AlixPartners LLC (the "Trustee"), moves this Court (the "Motion"), pursuant to Rules 26

and 45 of the Federal Rules of Civil Procedure ("FCRP"), to quash that certain subpoena

(the "Subpoena," a copy of which is included in the Appendix to Opening Brief in

Support of the Motion of the Trustee of the IT Litigation Trust to Quash Subpoena

("Appendix") at A-2) issued on or about January 9, 2006 by Thomas L. Payne, Sid

Archinal, Gary H. Karesh, Jo Ann Karesh, Belca D. Swanson and Merle K. Swanson,

individually and on behalf of all others similarly situated (collectively, the "Plaintiffs")

and Anthony J. Deluca, Harry J. Soose, Francis J. Harvey, James C. McGill, Richard W.

Pogue, Daniel A. D'Aniello, Phillip B. Dolan, E. Martin Gibson, Robert F. Pugliese,

James David Watkins, and The Carlyle Group (collectively, the "Defendants").

The Subpoena arose from litigation (the "Securities Litigation") which was

pending in the United States District Court for the Western District of Pennsylvania (the

"Western District Court").  After the Subpoena's issuance, however, the Western District

Court dismissed the complaint with prejudice and closed the Securities Litigation

proceeding.  It is clear from the Western District Court's opinion approving the issuance

of the Subpoena that the Subpoena was intended to be of a short duration while the

motion to dismiss the Securities Litigation was pending.  Accordingly, as a result of the

dismissal, the Subpoena has been mooted, is of no further force or effect, and, thus, must be quashed.[1]

Even if the Subpoena were not mooted, however, it subjects the Trust to an undue burden and should be quashed. The Subpoena requires the preservation of thousands of documents, described by no less than 78 paragraphs and 18 pages of exhibits. The categories of materials under the Subpoena are so vast as to arguably require the Trustee to preserve substantially all of the documents in its possession. The cost associated with preserving such documents creates an undue burden upon the Trust and its beneficiaries–the Debtors' creditors. Therefore, the Subpoena must be quashed.

## II.    STATEMENT OF THE NATURE AND STAGE OF PROCEEDING

The Subpoena was issued out of this Court at the initiative of the parties to the Securities Litigation. The Trust was not a party to that dismissed action. The Trust is a creditors' trust that was created pursuant to a confirmed liquidation plan under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code") in the Debtors' chapter 11 cases (the "Bankruptcy Cases") which are pending in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). As described further below, on May 2, 2006, the Western District Court dismissed the Securities Litigation with prejudice and closed the proceeding.

According to the docket in the Securities Litigation, on or about May 31, 2002, the Plaintiffs filed an action in the United States District Court for the District of Nevada on behalf of themselves and other investors similarly situated against the Defendants.

---

[1]    While the Trustee believes the dismissal with prejudicial of the Securities Litigation automatically rendered the Subpoena of no further force or effect, the Trustee files the instant Motion in an abundance of caution.

They alleged that the Defendants' actions on behalf of the IT Group, Inc. violated federal securities law.

On or about November 7, 2002, the matter was transferred to the Western District Court. The Plaintiffs subsequently amended the complaint. A motion to dismiss was filed by the Defendants. After the motion to dismiss was filed, discovery in the Securities Litigation was stayed pursuant to the Private Securities Litigation Reform Act ("PSLRA").

The Plaintiffs in the Securities Litigation filed a motion to lift the stay imposed by the PSLRA. The Defendants in the Securities Litigation objected to the Plaintiff's motion and interposed a counter-motion seeking approval of the issuance of a subpoena for the purpose of preserving documents. Notwithstanding the lack of notice to the Trustee, on December 23, 2005, the Western District Court entered an order approving the issuance of a subpoena. On January 9, 2006, the Western District Court approved the issuance of the subject Subpoena following its submission to the Court, again without notice to the Trustee. Over five weeks after such Order, on or about February 15, 2006, the Subpoena was delivered to the Trustee's Delaware counsel.[2]

On May 2, 2006, the Western District Court issued a 91 page Memorandum Opinion granting the Defendants' motion to dismiss the Securities Litigation with prejudice.

## III.   SUMMARY OF ARGUMENT

The Subpoena arose from the Securities Litigation, which was dismissed by the Western District Court on May 2, 2006. The Subpoena was to be effective only during

---

[2]     The Subpoena Order directed the parties to "immediately effect issuance of the subpoena." In any event, when the Subpoena was issued, the Trustee's counsel did not agree to accept service.

the pendency of the Defendant's motion to dismiss. The Defendants' motion to dismiss was granted on May 2, 2006, and is no longer pending. Therefore, the Subpoena is now moot and must be quashed.

Even if not mooted, however, the Subpoena must be quashed as it subjects the Trust to undue burden. FRCP 26(b)(2) allows the court to limit discovery if it determines the discovery is unreasonably duplicative or if the "burden or expense outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2). In addition, FRCP 45 mandates that a court quash or modify a subpoena "if it ... subjects a person to undue burden." Fed. R. Civ. P. 45(c)(3)(A)(iv).

The Subpoena is unduly burdensome because it requires the Trustee to preserve substantially all of the books and records in its possession, the storage costs of which threaten to deplete the Trust's extremely limited resources. The Trust was established by the Debtors' chapter 11 plan (the "Plan") for the purpose of liquidating the Debtors' remaining assets and distributing the proceeds to holders of allowed claims against the Debtors. Importantly, the Plan does not require the Trust to continue to store books and records that are not necessary to the Trust's administration. Indeed, the Trust's duty is to maximize the value of the Trust's limited assets and resources for its beneficiaries. As it stands, the Trust's beneficiaries expect to recover only a fraction of their allowed claims. It would be inequitable to force such beneficiaries to further dilute their recovery by absorbing the excessive document storage expense imposed by the Subpoena. Because the Subpoena calls for the preservation of a majority of the documents in the Trust's

possession, it creates an undue and oppressive burden on the Trust, and pursuant to Federal Rules 26 and 45 should be quashed.

## IV.    BACKGROUND FACTS

The Debtors, including but not limited to The IT Group, Inc., commenced their Bankruptcy Cases on January 16, 2002.

Approximately three months into the Bankruptcy Cases, by Order dated April 25, 2002, the Bankruptcy Court approved the sale (the "Sale") of substantially all of the Debtors' assets to, and assumption of certain liabilities by, an affiliate of The Shaw Group, Inc. ("Shaw"). The Sale closed on May 3, 2002. Accordingly, it has been four years since the Debtors operated their businesses.

By Order dated April 5, 2004, the Bankruptcy Court confirmed the First Amended Joint Chapter 11 Plan of The IT Group, Inc. and Its Affiliated Debtors Proposed by the Debtors and the Official Committee of Unsecured Creditors. The effective date of the Plan, which was a liquidating chapter 11 plan, occurred on April 30, 2004. Under the Plan, inter alia, the Trust was established and the remaining estate assets vested in the Trust for the benefit of holders of allowed claims against the Debtors.

Upon information and belief, in late November 2005, the Plaintiffs in the Securities Litigation filed a motion with the Western District Court to lift the stay of discovery imposed by PSLRA, which the court denied by order dated on or about December 23, 2005. Also by the December 23, 2005 order, at the behest of the Securities Litigation parties, the Western District Court authorized the Plaintiffs and Defendants to jointly draft a subpoena which would require the Trustee to preserve documents "identified to the best of the parties' ability, for a period of time to be agreed upon by the parties, taking into account the Court's intention to issue a decision on a pending motion

626090v1

5

to dismiss within 60 days." <u>See</u> Memorandum Order at p. 14.  As previously indicated, if there was a hearing on this matter, the Trustee received neither notice of it, nor an opportunity to be heard.

On or about January 9, 2006, the Western District Court entered an order (the "Subpoena Order" a copy of which is included in the Appendix at A-1) approving a document preservation Subpoena submitted by the Plaintiffs and Defendants in the Securities Litigation.  The Trustee did not receive notice of the proposed Subpoena when submitted or the Subpoena Order approving it.

On or about February 15, 2006, 37 days after the Subpoena Order was entered, the Plaintiffs and Defendants delivered the Subpoena to the Trustee's counsel.

On May 2, 2006, the Western District Court granted the Defendants' motion to dismiss the Securities Litigation with prejudice.

## V.    ARGUMENT

### A.    The Subpoena should be quashed because it has been mooted.

The Subpoena was mooted by the Western District Court's dismissal of all of the claims in the Securities Litigation – the Subpoena's predicate litigation.  Indeed, courts regularly hold that subpoenas are mooted when the underlying claims in litigation are decided.  <u>See, e.g.</u>, <u>Blair v. Wills</u>, 112 Fed. Appx. 546, 547 (8th Cir. 2004) (citing <u>McCook Metals LLC v. Alcoa, Inc.</u>, 249 F.3d 330, 334 (4th Cir. 2001)); <u>Sullivan v. Dickson</u>, 283 F.2d 725, 727 (9th Cir. 1960); <u>Munz v. Parr</u>, 972 F.2d 971, 973 (8th Cir. 1992); <u>Lopez v. F&M Bank</u>, 90 Fed. Appx. 549, 550 (D.C. Cir. 2004); <u>City of El Paso,</u>

Texas v. S.E. Reynolds, 887 F.2d 1103, 1105 (D.C. Circ. 1989).[3] Because the Subpoena is moot, it should now be quashed. See id.

The Western District Court's own language limited the Subpoena to the life of the Securities Litigation.  In its December 23, 2005, Order approving the issuance of the Subpoena, the Western District Court stated its intention to decide the Defendants' motion to dismiss the Securities Litigation within 60 days (i.e., by the end of February 2006), thereby only authorizing the Subpoena to require the Trustee to "postpone the starting date of its document retention plan less than one month."  December 23, 2005 Order at n.9.  Other language in the Order also reflects the intended short duration of the Subpoena and the Western District Court's understanding that the Subpoena would be moot when it ruled on the Securities Litigation motion to dismiss:

- The Subpoena would require "the Trustee to merely preserve the documents for a brief period of time" Id. at p. 14. (emphasis added);

- "the relatively light burden of complying [with the Subpoena] for the short period of time envisioned" Id. (emphasis added); and

- "Finally, this Court may grant Defendants' Motion to Dismiss the Second Amended Complaint herein, thereby obviating any need for discovery." Id. (emphasis added).

Thus, because the Western District Court dismissed the Securities Litigation with prejudice, continued discovery in that case is unnecessary, and the Subpoena is moot and

---

[3]     As indicated above, on May 2, 2006, the Western District Court dismissed with prejudice the Securities Litigation.  The Trustee is not aware whether the Defendants have appealed or sought reconsideration of that decision.  Any appeal, however, would not revive the Subpoena. See Blair, 112 Fed. Appx. at 547.

should be quashed.  See Blair, 112 Fed. Appx. at 547; Munz , 972 F.2d at 973; Lopez  90

Fed. Appx. at 550; S.E. Reynolds, 887 F.2d at 1105.

> **B.    Even if not mooted, the Subpoena should be quashed because it is unduly burdensome.**

Even if dismissal of the Securities Litigation did not moot the Subpoena, the

Subpoena should be quashed because continued compliance with it creates an undue

burden on the Trust.  FRCP 45(c)(3)(A)(iv) mandates that a court "shall quash or

modify" a subpoena if it "subjects a person to undue burden."  See United States v.

Amerigroup Illinois, Inc., 2005 WL 3111972, *2 (N.D.Ill. 2005).  This language is not

the discretionary language of FRCP 26(c) for protective orders, under which a court "may

make any order which justice requires to protect a party from ... undue burden ...."  Id.

Rather, it is a "command."  Id. (citing Heidelberg Americas, Inc. v. Tokyo Kikai

Seisakusho, Ltd., 33 F.3d 38, 41 (1st Cir. 2003)).  Therefore, if FRCP 45 is applicable, as

here, a court must apply it.  Id.

In addition to a court's specific mandate to quash under FRCP 45, in ruling on a

motion to quash, a "court applies its general power to limit discovery under Rule

26(b)(2)."  See In re Blackstone Partners, L.P., 2005 WL 1560505, *3-4 (S.D.N.Y. 2005)

(citing 7 Moore's Federal Practice § 30.50 (Matthew Bender 3d ed. 2005)).  Federal Rule

26(b)(2) allows the court to limit discovery if it determines that the discovery is

unreasonably duplicative or if its "burden or expense outweighs its likely benefit, taking

into account the needs of the case, the amount in controversy, the parties' resources, the

importance of the issues at stake in the litigation, and the importance of the proposed

discovery in resolving the issues."  Fed. R. Civ. P. 26(b)(2).  A party, therefore, may seek

protection from discovery via the overlapping and interrelated provisions of both FRCP

626090v1

8

26 and 45. <u>See</u> <u>Mannington Mills, Inc. v. Armstrong World Industries, Inc.</u>, 206 F.R.D. 525, 529 (D.Del. 2002).

Even if a court determines that the information sought is relevant, "discovery is not allowed where no need is shown, or <u>where compliance is unduly burdensome</u>, or where the potential harm caused by production outweighs the benefit." <u>Id.</u> (emphasis added) (citing <u>Micro Motion, Inc. v. Kane Steel Co., Inc.</u>, 894 F.2d 1318, 1323 (Fed. Cir. 1990) (court should consider not only the potential burden to the producing party but the necessity of the information for the party seeking production, and whether the information can be obtained from other, more convenient sources)); <u>Cash Today of Texas, Inc. v. Greenberg</u>, 2002 WL 31414138, *1-5 (D.Del. 2002).

Here, the Subpoena imposes an undue burden on the Trustee because of the shear volume and scope of the documents involved. <u>See</u> Fed. R. Civ. P. 45. The documents sought to be preserved under the Subpoena are described in 78 paragraphs plus 18 pages of exhibits. There is no time limitation on <u>any</u> of these requests, notwithstanding that (as the parties know) the documents the Trust inherited from the Debtors go back as far as the 1970's and 1980's and are most irrelevant to any pending or potential proceeding. The Subpoena's categories are so broadly described that the Trust must preserve virtually all containers of records in its possession – some 113,000 boxes of documents in all. Below are some examples of the breadth of the Subpoena categories:

> • 10. All documents, including memoranda and correspondence, related to, referring to or reflecting any activity of or communication with the Carlyle Group or any of its representatives or agents, including but not limited to Philip Dolan or Daniel D'Aniello.
>
> • 11. All documents referring to, relating to or reflecting IT Group's relationship with the Carlyle Group,

including but not limited to documents relating to issuance
of dividends.

- 17.   All accounting documents of the IT Group
or any of its business lines or subsidiaries or of any of the
companies or entities acquired by IT Group.

- 18.   All documents or files of the accounting
department of IT Group, including but not limited to
memoranda, files, ledgers, or aging or other accounting
reports.

- 36.   All documents consisting of, referring to,
relating to or reflecting internal memoranda or other
communications concerning payment to vendors, including
late payments, withholding of payments, or consequences
of the foregoing.

- 37.   All documents referring to, related to or
reflecting accounts payable, handing of payables, aging of
payables or issuing vouchers or vouchering of payables.

- 70.   All documents referring to, relating to or
reflecting the sale of IT Group assets to the Shaw Group.

- 71.   All documents referring to, relating to or
reflecting any due diligence or investigation of IT Group by
the Shaw Group, including but not limited to documents
provided or shown or offered to the Shaw Group or utilized
or relied upon by the Shaw Group in connection with such
due diligence or investigation.

Here, the Subpoena's burden on the Trust is truly oppressive, particularly when

balanced against the unspecified relevance and "need" of the parties to the Subpoena to

preserve documents for a case that has already been closed by virtue of the dismissal with

prejudice. See Mannington Mills, 206 F.R.D. at 529. The Plaintiffs and Defendants in

the Securities Litigation have no continuing need for the retention of the documents in the

Securities Litigation because that case is no longer at bar. Id.

The burden caused by the Subpoena is also unnecessary to satisfy any person's or entity's needs – regardless of whether those needs are related to the Securities Litigation. The reality is that when the Plan went effective on April 30, 2004, only a fraction of the approximately 113,000 containers of documents the Trust inherited from the Debtors were relevant to the Trustee's administration of the Trust in accordance with the Plan. As such, the Subpoena is unduly burdensome because there is no conceivable reason to force the preservation of in excess of 113,000 containers of documents.

Further, the Trust cannot bear the expense imposed by the Subpoena. See Fed. R. Civ. P. 26(b)(2). The Trust is a post-confirmation creditors' trust established for the benefit of holders of allowed claims against the Debtors. By its very nature, the Trust has limited purpose and resources. The Trust's initial funding was a mere $1.5 million. The cost of preserving all of the books and records inherited by the Trust (over two years ago and counting) continues at a rate of $30,000 per month. In light of the Trust's limited funding, such cost is disproportionately large and weighs most heavily against the Trust's beneficiaries. Because the Trust simply cannot bear the indefinite imposition of these costs by the Securities Litigation Subpoena, the Subpoena creates an undue burden on the Trust and should be quashed. See, e.g., Amerigroup, 2005 WL 3111972 at * 2.

Moreover, the overbroad laundry list of document categories set forth in the Subpoena is inexcusable given the time and opportunity both Plaintiffs and Defendants had to narrow and focus the Subpoena categories. See Fed. R. Civ. P. 45(c)(1). FRCP 45 requires that requesting parties "take reasonable steps to avoid imposing undue burden or expense on a person subject to [a] subpoena." Id. Here, the Plaintiffs and Defendants in the Securities Litigation had ample time during the PLRSA discovery stay to narrow

the focus of their inquiry. Moreover, the Trustee provided them with indices of the documents in the Trust's possession and held numerous discussions with them regarding same. Therefore, the lack of specificity in the Subpoena regarding what these parties needed when the Securities Litigation was still pending verges on bad faith. Id.

Lastly, here, the undue burden imposed on the Trust by the Subpoena is amplified because the Trustee was not a party to the Securities Litigation. Indeed, in keeping with the text and purpose of FRCP 45(c)(3)(A), courts have consistently held that nonparty status is a significant factor in determining whether the burden imposed by a subpoena is undue. Greenberg, 2002 WL 31414138 at * 1-5; Amerigroup, 2005 WL 3111972 at * 2. Here, the Trustee was not a party to the dismissed Securities Litigation. Nor was the Trustee a party to the proceeding resulting in the Western District Court "approving" the Subpoena. As such, the imposition of the Subpoena's vast requirements on the Trustee, a nonparty that did not have a voice in the predicate litigation, increases the undue burden imposed on the Trustee by the continued operation of the Subpoena. Id.

In summary, the parties to the Securities Litigation failed to meet their statutory mandate "to take reasonable steps to avoid imposing undue burden or expense on a person subject to [a] subpoena." Fed. R. Civ. P. 45(c)(1). They were certainly in a position to do so given their knowledge of the status of documents in the Trusts' possession weeks before the Subpoena was issued. Instead, these parties caused the issuance of the Subpoena that requires the Trust, a nonparty, to bear the cost of the indefinite preservation of some 113,000 boxes of documents for a litigation that has already been dismissed. Fed. R. Civ. P. 26(b)(2); 45(c)(3)(A)(iv). Under these

circumstances, the burden imposed on the Trust by the Subpoena is certainly undue and requires that the Court quash the Subpoena. Id.

## VI.     CONCLUSION

For the foregoing reasons, the Trustee respectfully requests that this Court quash the Subpoena.

Dated: May 22, 2006

THE BAYARD FIRM

By:

Jeffrey M. Schlerf (No. 3047)
Edmond D. Johnson (No. 2257)
222 Delaware Avenue, Suite 900
Wilmington, Delaware 19801
(302) 655-5000

and

John K. Cunningham
Matthew J. Feeley
WHITE & CASE LLP
Wachovia Financial Center
200 South Biscayne Blvd.
Miami, Florida 33131
(305) 371-2700

Counsel to the Trust

Westlaw.

Slip Copy
Slip Copy, 2005 WL 3111972 (N.D.Ill.)
(Cite as: Slip Copy)

H
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,N.D. Illinois.
UNITED STATES of America, State of Illinois, ex
rel., and Cleveland Tyson, Plaintiffs,
v.
AMERIGROUP ILLINOIS, INC., and Magistrate
Judge Cole Amerigroup Corporation, Defendants.
**No. 02 C 6074.**

Oct. 21, 2005.

Michael I. Behn, Behn & Wyetzner, Michael Charles
Rosenblat, Michael E. Rosenblat, P.C., Paul Joseph
Gaynor, Chaka M. Patterson, David Jamison Adams,
Tyree L. Givens, Illinois Attorney General's Office,
Paul Joseph Gaynor, Chaka M. Patterson, Illinois
Attorney General, Joan Matlack, Putterman &
Howard, Marla Helene Swartz, Michael Keyes
Hendershot, Frederick H. Cohen, Chad A.
Blumenfield, David Joel Chizewer, Hillary Levitt
Dunn, Goldberg, Kohn, Bell, Black, Rosenbloom &
Moritz, Ltd, Michele Marion Fox, United States
Attorney's Office, NDIL, William W. Thomas,
Futterman & Howard, Chtd ., Chicago, IL, for
Plaintiffs.
Daniel John Voelker, Andrew C. Nordahl, Catherine
A. Miller, Daniel Charles Curth, Hillard M. Sterling,
Jeffrey Lawrence Dorman, Freeborn & Peters, Kellye
L. Fabian, Kirkland & Ellis LLP (Chicago), Michele
Marion Fox, United States Attorney's Office, NDIL,
Robert A Barba, Illinois Attorney General's Office,
Chicago, IL, for Defendants.

*MEMORANDUM OPINION AND ORDER*
MAGISTRATE, Judge.
*1 The Illinois Department of Healthcare and Family
Services ("HFS"), has moved to quash a subpoena
*duces tecum* served on it by the defendants calling for
production of emails of three named HFS employees
on the ground that compliance with the subpoena
would be unduly burdensome-especially given the
fact that HFS is not a party to the case.

**I**

**BACKGROUND**

**A**

**The Underlying Complaint**

Relator, Cleveland Tyson, filed this *qui tam* suit
under the False Claims Act ("FCA"), 31 U.S.C. § §
3729 *et seq.* and Illinois Whistleblower Reward and
Protection Act ("Illinois Whistleblower Act"). 740
ILCS § § 175/1 *et seq.* [FN1] The FCA establishes civil
penalties for any person who files "a false or
fraudulent claim for payment or approval" by the
United States government. 31 U.S.C. § 3729(a)(1).
The provisions of the IWRPA are similar. 740 ILCS
§ 175/3. The State of Illinois intervened in the suit
on March 2, 2005; the United States was just granted
leave to intervene on October 17, 2005.

> FN1. The term, *qui tam,* comes from the
> Latin expression, *qui tam pro domino rege
> quam pro se ipso in hac parte sequitur*
> ("Who brings the action for the King as well
> as for himself"). *United States ex rel.
> Mathews v. Bank of Farmington,* 166 F.3d
> 853, 857 (7th Cir.1999). In a *qui tam* action,
> a private party, the "relator," brings an
> action to redress fraud upon the government.
> *Id.* If the claim is proven, the relator receives
> a percentage of the recovery ranging, under
> the current statute, from 10% to 30%. *Id.* at
> 857-58 (*citing* 31 U.S.C. § 3730(d)). *See
> Vermont Agency of Natural Resources v.
> United States ex rel. Stevens,* 529 U.S. 765
> (2000). The history of the False Claims Act
> is detailed in *United States ex rel. S. Prawer
> and Co. v. Fleet Bank of Maine,* 24 F.3d
> 320, 324 (1st Cir.1994). *See also United
> States ex rel. Williams v. NAC Corp.,* 931
> F.2d 1493, 1496-98 (11th Cir.1991).

The second amended complaint alleged that under its
contract with the Illinois Department of Public Aid-
now known as HFS-Amerigroup Illinois ("AMG-IL")
was required to submit quarterly statements
certifying that, to its knowledge, there had been no
fraud, abuse, or misconduct on the part of its
employees, providers, or representatives. The
contract defined "abuse" as "a manner of operation

Slip Copy
Slip Copy, 2005 WL 3111972 (N.D.Ill.)
(Cite as: Slip Copy)

that results in excessive or unreasonable costs to the Federal and/or State health care programs." (*Second Amended Complaint,* Ex. A, at 2). The Second Amended Complaint alleges that AMG-IL did not report its limited enrollment practices in its quarterly certifications, which were a precondition to its receiving payment from the federal and state programs involved. This omission allegedly resulted in and constituted false or fraudulent claims for payment in violation of the applicable statutes.

### B

### The Present Discovery Dispute

On July 29, 2005, defendants served a subpoena on HFS, calling for the production of twelve categories of materials. It was the third in a series of substantially similar subpoenas, the first two having been the subject of successful motions to quash by HFS.[FN2] On August 11, 2005, HFS moved to quash the subpoena as to all but two of the categories-Nos. 5 and 11-on three grounds: that service was defective under the plain language of Fed.R.Civ.P. 45(b)(1); that the documents sought were not relevant; and that the subpoena was unduly burdensome to a non-party under Fed.R.Civ.P. 45(c)(3)(A)(iv). In the alternative, HFS sought a protective order that no discovery be had aside from discovery bearing on the calculation of damages. Defendants filed their response to HFS's motion on August 18, 2005.

> FN2. The defendants have filed objections to those two prior rulings under Fed.R.Civ.P. 72(a), which are currently pending before Judge Leinenweber.

I convened a hearing on this matter on August 23rd and 24th of 2005. In those two sessions, lengthy conferences were conducted in open court, and many of the disputed issues relating to the instant motion, as well as to another discovery dispute, were resolved. In the end, the parties were able to reach a voluntary agreement as to all but two of the document categories, Nos. 6 and 7. The resolution of their dispute as to category No. 6 was held in abeyance at my request. Document category No. 7, which relates to the production of emails of HFS personnel, remains in dispute, and it is the category that is presently the subject of HFS's motion to quash.

*2 The defendants have agreed to limit their request

to the emails of Lucille Rendok and Kelly Carter, who are currently HFS employees, and Nelly Ryan, a former employee. In addition, the defendants have agreed that HFS may limit the search terms to be used in retrieving the desired emails to: (1) adverse select*, cherry, pregnan*, trimester, discriminate*, and/or continuity of care; combined with (2) some reference to Amerigroup, such as Amerigroup or AMG. HFS-still unhappy with the request-filed its reply brief on September 14, 2005.

HFS maintains that the current version of the subpoena must still be quashed under Rule 45(c)(3)(A)(iv) because the defendants' request is unduly burdensome, and the emails are irrelevant and unlikely to lead to the discovery of admissible evidence. The defendants' position consists largely of the unadorned conclusion that the burden is not undue and that the emails are critical to proving that HFS had knowledge of the claimed illegality, which HFS insists is at least a *pro tanto* defense to the claimed fraud.

### II

### ANALYSIS

### A

### Undue Burden Within The Meaning Of Rule 45(c)(3)(A)(iv) And The Protections Accorded Non-Parties

Rule 45(c)(3)(A)(iv) mandates that a court "shall quash or modify" a subpoena if it "subjects a person to undue burden." The Advisory Committee's Notes to the 1991 amendments to Rule 45 make clear that the amendments have "enlarge[d] the protections afforded persons who are required to assist the court by giving information or evidence." The rule "requires the court to protect all persons from undue burden imposed by the use of the subpoena power." *Id.* This is not the discretionary language of Rule 26(c), under which a court "may make any order which justice requires to protect a party or person from ... undue burden...." It is a "command[ ]." *Heidelberg Americas, Inc. v. Tokyo Kikai Seisakusho, Ltd.,* 333 F.3d 38, 41 (1st Cir.2003).

HFS submits that its system and attendant backup system do not even allow the retrieval of emails for

Slip Copy
Slip Copy, 2005 WL 3111972 (N.D.Ill.)
(Cite as: Slip Copy)

the entire five-year period-2000 through 2004-
specified in the subpoena. All that is available,
according to HFS, is a year's worth of emails. But
even that, HFS argues, would constitute an undue
burden on it.

As the party objecting to the document request, HFS
must demonstrate that the burden of producing the
one year's worth of emails is undue. There must be
affirmative and compelling proof. *Ipse dixits* will not
suffice. *See Trading Technologies Intern., Inc. v.
eSpeed, Inc.,* No. 04 C 5312, 2005 WL 1300778, *1
(N.D.Ill. April 28, 2005)(Moran, J.); *Semien v. Life
Insurance. Co. of North America,* No. 03 C 4795,
2004 WL 1151608, *1 (N.D.Ill. April 21,
2004)(Kocoras, J.); *In re Sulfuric Acid Antitrust
Litigation,* No. 03 C 4576, 2005 WL 2403328, *9
(N.D.Ill. Sept. 27, 2005)(collecting cases). HFS has
provided such evidence in the form of the affidavit of
a testimonially competent HFS employee. *See* Rule
602, Federal Rules of Evidence.

**B**

**The Evidence In Support Of HFS's Motion
Suffices To Carry Its Burden Of Proving That
Production Of The One Year's Worth Of Emails
Should Not Be Required**

*3 In support of its contention that the document
request is unduly burdensome, HFS has submitted the
affidavit of Donald Perry, the chief of its bureau of
information systems. (*Motion of Non-Party HFS to
Quash a Subpoena for Documents,* Ex. H). Mr. Perry
is familiar with HFS's email systems, as well as
procedures for backing up email files and restoring
old files. (*Id.,* Ex. H, at ¶ 2). The HFS email system
comprises 23 post offices residing on specified
servers. Each HFS employee is provided with an
individual email account in the post office that is
appropriate to their location. (*Id.,* Ex. H, at ¶ 3). The
post offices are "backed up" incrementally on a daily
basis, while a full back up of all the post offices is
performed over the weekend. (*Id.,* Ex. H, at ¶ 4). The
daily, incremental backup files are retained for one
month; the weekly backup files are retained for one
year. (*Id.,* Ex. H, at ¶ 5).

Mr. Perry's affidavit explains what would be involved
in retrieving the old email files the defendants have
requested. In order to restore an employee's email
account, one begins with the data range and the
employee's post office. The data range is limited to

one year from the current date. Once provided with a
data range and post office, HFS's central management
service can retrieve the appropriate back up tapes
from an off-site storage facility and restore that entire
post office to a dedicated server with restricted
access. (*Id.,* Ex. H, at ¶ 6). At that point, the
individual employee's email messages can be
retrieved and analyzed to determine relevance. (*Id.,*
Ex. H, at ¶ 7). According to Mr. Perry, however, a
post office may only be restored one week at a time;
if there are multiple weeks in the data range, the
restoration process must be performed in stages. (*Id.,*
Ex. H, at ¶ 8). During such a "staged retrieval
process," a post office is restored for a period,
analyzed, and then deleted to allow the next post
office to be restored and analyzed. (*Id.,* Ex. H, at ¶
9). This stored retrieval process is costly, in terms of
expense, equipment, and man-power. (*Id.,* Ex. H, at ¶
10). For example, a review of one year's worth of an
employee's emails would take approximately six
weeks. (*Id.,* Ex. H, at ¶ 10).

Significantly, the defendants do not challenge any of
Mr. Perry's assertions. This omission, they claimed at
oral argument, was the inevitable result of having no
familiarity with the internal systems used at HFS.
The argument is unpersuasive. The defendants could
have sought leave to depose Mr. Perry, and, of
course, they could have retained an expert of their
own to opine on the validity of Mr. Perry's
statements-at least in a general sense. Moreover, Mr.
Perry's assessment is confirmed, in the main, by the
cases, which have recognized that the task of
restoring emails through the use of backup tapes is a
"unique burden":
Backup tapes record a "snapshot" of the contents of
the computer system at the moment the backup is
run. "The data on a backup tape are not organized for
retrieval of individual documents or files, but for
wholesale, emergency uploading onto a computer
system." In case the system "crashes," and all the
information created since the previous backup is lost,
the contents of the tape can be loaded onto the
system, restoring the lost information. Since crashes
presumably occur infrequently, backup tapes need
not be as convenient to access as, say, a CD-ROM.
At the same time, backup tapes must have the
capacity to store large amounts of information since
they are relied upon to replace all the information
contained on a computer system after a crash. It is
understandable, then, that backup tapes sacrifice
accessibility for storage capacity, since to have both
would be impractical and costly.

*4 *Hagemeyer North America, Inc. v. Gateway Data*

_Sciences Corp._, 222 F.R.D. 594, 600 (E.D.Wis.2004) (Citations omitted).

This is not to say that undue burden may be presumed simply because electronic evidence is involved. _Zubulake v. UBS Warburg LLC_, 217 F.R.D. 309, 318 (S.D.N.Y.2003). But, in the hierarchy of accessibility, it is clear that electronic data stored on media such as the backup tapes involved here is near the bottom. _Id._ at 319. One of the reasons for the difficulty involved in searching backup tapes is that they store infinitely more information than most other storage media. For example, a CD-ROM's storage capacity is 650 megabytes, the equivalent of 325,000 typewritten pages. Computer networks, on the other hand, create backup data measured in terabytes-1,000,000 megabytes-which is the equivalent of 500 billion typewritten pages. Manual for Complex Litigation (Fourth) § 11.446 (2004) (_cited in Hagemeyer_, 222 F.R.D. at 601).

It is not a decisive answer to say that the defendants have offered pay the costs that might be incurred in retrieving the emails. Expense is but a part of the burden. As Mr. Petty's uncontested affidavit indicates, the process of retrieving the emails also entails the extensive use of equipment and internal man-power. It will take six weeks to restore and review the data of just one of the three individual's email accounts. The entire project, then, will entail eighteen weeks of effort. To be sure, one can imagine the use of three dedicated servers to perform each of the six weeks of restoration work concurrently, but the end result is still eighteen weeks of man-power and eighteen weeks of use of the necessary equipment. That burden, which is undeniably substantial, exists independently of the monetary costs entailed.

The defendants have dealt with the question of undue burden by essentially ignoring its existence. This mode of dealing with potentially dispositive argument is as "pointless" as is ignoring potentially dispositive authority that is contrary to a party's position. _Hill v. Norfolk & Western Ry. Co._, 814 F.2d 1192, 1198 (7th Cir.1987); _Fred A. Smith Lumber Company v. Edidin_, 845 F.2d 750, 753 (7th Cir.1988). While ignoring the question of burdens, the defendants have not cited not a single case in which a non-party was subjected to the significant burden of restoring electronic data from backup tapes.

## The Significance Of HFS's Non-Party Status

In keeping with the text and purpose of Rule 45(c)(3)(A), it has been consistently held that "non-party status" is a significant factor to be considered in determining whether the burden imposed by a subpoena is undue. _See North Carolina Right to Life. Inc. v. Leake_, -F.R.D.-, 2005 WL 2456982 (D.D.C. Oct. 6, 2005); _Wyoming v. U.S. Dept. of Agriculture_, 208 F.R.D. 449, 452 (D.D.C.2002); _In re Automotive Refinishing Paint_, 229 F.R.D. 482, 495 (E.D.Pa.2005). As the First Circuit has explained:
*5 Although discovery is by definition invasive, parties to a law suit must accept its travails as a natural concomitant of modern civil litigation. Non-parties have a different set of expectations. Accordingly, concern for the unwanted burden thrust upon non-parties is a factor entitled to *special weight* in evaluating the balance of competing needs.

_Cusumano v. Microsoft Corp._, 162 F.3d 708, 717 (1st Cir.1998)(Emphasis added). Here, the "unique burden" of restoring the email records and the "special weight" to be accorded HFS's non-party status combine to require that the defendants' subpoena be quashed under Rule 45(c)(3)(A)(iv).

Instead of focusing on the pivotal question of undue burden, the defendants attempt to demonstrate how relevant-i.e., how important-the emails are to HFS's possible knowledge and approval of the defendants' alleged fraud under the False Claims Act. According to the defendants, HFS was aware of adverse selection and has allowed it to be a general part of the Medicaid program that it was charged with administering. (_Defendants' Response to Motion of Non-Party HFS_, at 13). As such, the defendants argue that their request for the emails is critical to a "government knowledge" defense under _United States ex rel. Durcholz v. FKW, Inc._, 189 F .3d 542 (7th Cir.1999).

There, the Seventh Circuit explained that, in order to prove an FCA violation, a relator must "produce evidence that [the defendant] knowingly presented, or caused to be presented, a false or fraudulent claim for payment or approval." _Id._ at 544 (_citing_ 31 U.S.C. § 3729(a)(1)). The court described the _mens rea_ element as requiring "that the defendant have actual knowledge of (or deliberately ignore or act in reckless disregard of) the truth or falsity of the information presented; no specific intent to defraud is required." 189 F.3d at 544 (Emphasis in original).

C

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2005 WL 3111972 (N.D.Ill.)
(Cite as: Slip Copy)

While the court noted that "[i]nnocent mistakes or negligence are not actionable," it also cautioned that "[w]hat constitutes the offense is not intent to deceive but knowing presentation of a claim that is either fraudulent or simply false." *Id.*

As for the "government knowledge" defense, the court held that: "[i]f the government knows *and approves of* the particulars of a claim for payment before that claim is presented, the presenter cannot be said to have knowingly presented a fraudulent or false claim." *Id.* at 545 (Emphasis added). Despite the seeming clarity of the court's opinion, HFS and the defendants have very different interpretations of the opinion and of the elements of the defense. (*Defendants' Response to Motion of Non-Party HFS,* at 13-14; *Reply Brief of the Non-party HFS to Defendants' Response,* at 3-5). For the defendants, knowledge, *simpliciter,* is enough. Not surprisingly, HFS contends that there must have been approval by employees who had approval authority, not merely knowledge of what was going on. (*HFS Reply Brief* at 6). For the defendants, this sort of proof is irrelevant since they ignore the approval prong of the Seventh Circuit's opinion.

*6 Of course, it would be improper for me to make a determination about the ultimate merits of the controversy regarding the scope of the government knowledge defense since that issue is before Judge Leinenweber in the context of defendant's motion for summary judgment. But that does not mean that some cursory review is inappropriate for limited purposes. Compare *Von Drake v. National Broadcasting Co., Inc.,* No. 04-CV-0652, 2004 WL 1144142, *2 (N.D.Tex. Mar. 29, 2004)(cursory review to determine whether defendants have substantial arguments for dismissal); *Pacific Lumber Co. v. National Union Fire Insurance. Co. of Pittsburgh, PA,* 220 F.R.D. 349, 352 (N.D.Cal.2003)(cursory review to determine whether motion will potentially dispose of entire case and whether pending motion can be decided absent additional discovery); *Chrysler Capital Corp. v. Century Power Corp.,* 137 F.R.D. 209, 209-10 (S.D.N.Y.1991)(cursory review to determine whether motion appears to have substantial grounds or does not appear to be without foundation in law); *Aura Lamp & Lighting, Inc. v. International Trading Corp.,* 325 F.3d 903 (7th Cir.2003); *Price v.Code-Alarm,* 73 Fed.Appx. 159, 161, 2003 WL 21750812 (7th Cir.2003); (Although a court of appeals lacked jurisdiction to decide the merits of a case over which there was no jurisdiction, it could nevertheless "take a peek" to see whether to transfer the case to the Federal Circuit or dismiss the appeal);

*Philips v. Seiter,* 173 F.3d 609, 611 (7th Cir.1999).

Judge Cudahy was the author of the opinion in *Durcholz.* On the panel were Judges Posner and Rovner. The Court of Appeals' conjunctive phrasing-"if the government knows *and* approves"-would appear to have been purposeful and intended to signal that mere knowledge alone of illegality would not enable those who defraud the government from being able to draw a conjurer's circle around their illegality and insulate themselves from condign punishment. Any other reading would make the conjunctive phrasing superfluous. The defendants have not paused to analyze the matter in any depth; they have merely quoted the text of the opinion. HFS, relying on the identical language quoted by the defendants, stressed the conjunctive phrasing and, in addition, adverted to the doctrine that prohibits, in most cases, estoppel against the government.

The inappropriateness of my deciding the issue presently before Judge Leinenweber is further underscored by the fact that the Relator and the State of Illinois have not briefed the government knowledge issue in connection with the present motion, involving as it does, a non-party. Consequently, any expression of ultimate opinion on the government knowledge defense would not only be unfair, but would necessarily be uninformed, as parties with a significant interest in the proper resolution of the question have not had an opportunity to express themselves. *Cf. Adamson v. California,* 332 U.S. 45, 59 (1946) (Frankfurter, J., concurring) ("the judicial process [is] at its best" only when there are "comprehensive briefs and powerful arguments on both sides...."); Brandeis, The Living Law, 10 Ill. L.Rev. 461, 470 (1916)("A judge rarely performs his functions adequately unless the case before him is adequately presented.").

*7 On the state of the present record, the following seems beyond debate: the burden on HFS to produce the requested emails is substantial and undue, while the claimed criticality of the emails is anything but certain, given the polar positions on the question by HFS and the defendants and the unresolved nature of the issue of the contours of the government knowledge defense. But even if it be conceded that the emails are "potentially germane" to the that defense, the significant and undue burden on HFS precludes production. *See Heidelberg Americas,* 333 F.3d at 41. In *Heidelberg,* for example, the First Circuit upheld the district court's quashing of a subpoena to a non-party and, in so doing, noted that: some considerable question exists as to how

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2005 WL 3111972 (N.D.Ill.)
**(Cite as: Slip Copy)**

discovery of the materials would lead to admissible evidence. In other words, the documents are not obviously, and perhaps not even reasonably, calculated to lead to other discoverable materials ... The burden on the non-party ..., by contrast, appears to be significant.

333 F.3d at 41.

Here, too, the subpoena is significantly burdensome, and there is a question as to the claimed criticality of the emails: When the defendants filed their motion for summary judgment in December 2004, they were obviously satisfied that the evidentiary record they had compiled was sufficiently comprehensive and compelling that there were no disputed issues of material fact on the question of the government knowledge defense. In the intervening eleven months, the defendants have been content to rely on the record submitted to the district court. Yet, in this court, they now insist that the emails are indispensable to the defense that they thought was so straightforward and uncompromising in their favor that they were entitled to judgment as a matter of law under Rule 56. The tension between the current claim in this court that the evidence is so critical that any burden that the non-party HFS must endure is outweighed by the need for the evidence and the position taken in the summary judgment motion is as irreconcilable as it is obvious. In short, while the evidence sought may be relevant, on the present record, the efforts required for its production would be unduly burdensome, especially given HFS's non-party status, and the unresolved issue of the scope of the government knowledge defense.

For the foregoing reasons, the motion of non-party Illinois Department of Healthcare and Family Services to quash the defendants' subpoena [267] as to document category No. 7 is GRANTED.

N.D.Ill.,2005.
U.S. v. Amerigroup Illinois, Inc.
Slip Copy, 2005 WL 3111972 (N.D.Ill.)

Briefs and Other Related Documents (Back to top)

• 2006 WL 1044685 (Trial Motion, Memorandum and Affidavit) Non-Party Illinois Department of Healthcare and Family Services' Response to Defendants' Motion for Sanctions and Request for Relief (Mar. 31, 2006) Original Image of this Document (PDF)
• 2006 WL 1044684 (Trial Motion, Memorandum and Affidavit) Defendants' Motion to Compel the

Production of ""Media" Documents Improperly Withheld by the Relator (Mar. 30, 2006) Original Image of this Document (PDF)
• 2006 WL 1040191 (Trial Motion, Memorandum and Affidavit) Relator's Response to Defendants' Motion for Sanctions for State of Illinois/HFS' Continued Failure to Comply with Court Orders (Mar. 7, 2006) Original Image of this Document (PDF)
• 2006 WL 1044683 (Trial Motion, Memorandum and Affidavit) Defendants' Reply Brief Supporting Motion for Order to Show Cause and to Compel MCOs to Produce Documents Required by Agreement (Mar. 6, 2006) Original Image of this Document (PDF)
• 2006 WL 1044682 (Trial Motion, Memorandum and Affidavit) Reply Brief Supporting Motion for Order to Show cause and Sanctions Based on HFS's Perjured Deposition Testimony (Mar. 3, 2006) Original Image of this Document (PDF)
• 2006 WL 1044681 (Trial Motion, Memorandum and Affidavit) Non-Party MCOs' Joint Response to Defendants' Motion for Order to Show Cause and to Compel (Mar. 1, 2006) Original Image of this Document (PDF)
• 2006 WL 740160 (Trial Motion, Memorandum and Affidavit) Relator's and the People of the State of Illinois' Response to Defendants' Motion for Order to Show Cause and Sanctions Based on Testimony of Kelly Carter (Feb. 27, 2006)
• 2006 WL 740159 (Trial Motion, Memorandum and Affidavit) Defendants' Opposition to the Relator's and the State of Illinois' Motion for Clarification of This Court's Order of November 2, 2005 (Feb. 20, 2006)
• 2006 WL 549059 (Trial Motion, Memorandum and Affidavit) Defendants' Opposition to Motion to Strike Affirmative Defenses (Jan. 24, 2006)
• 2006 WL 549057 (Trial Motion, Memorandum and Affidavit) Relator's and the People of the State of Illinois' Motion to Strike Affirmative Defenses (Jan. 5, 2006)
• 2006 WL 549058 (Trial Motion, Memorandum and Affidavit) Relator's and the People of the State of Illinois' Memorandum in Support of Their Motion to Strike Affirmative Defenses (Jan. 5, 2006)
• 2005 WL 3612838 (Trial Pleading) Defendants' Answer and Affirmative Defenses to the Third Amended Complaint (Nov. 23, 2005)
• 2005 WL 3615546 (Trial Motion, Memorandum and Affidavit) Non-Party Illinois Department of Heal Thcare and Family Services' Response to Amerigroup Illinois Inc.'s Objections to Magistrate Judge's Order Quashing Request for E-Mails in a Subpoena (Nov. 21, 2005)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2005 WL 3111972 (N.D.Ill.)
**(Cite as: Slip Copy)**

• 2005 WL 3615542 (Trial Motion, Memorandum and Affidavit) Objections to Magistrate Judge's Order Quashing Request for E-Mails in A Subpoena (Nov. 4, 2005)
• 2005 WL 3286491 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Defendants' Motion to Certify for Interlocutory Appeal Pursuant to 28 U.S.C. | 1292(b) (Oct. 27, 2005)
• 2005 WL 3286486 (Trial Motion, Memorandum and Affidavit) The People of the State of Illinois' Response to Amerigroup Corporation's Motion to Compel Discovery Responses (Oct. 24, 2005)
• 2005 WL 3286483 (Trial Motion, Memorandum and Affidavit) Amerigroup Illinois' Opposition to the Illinois Department of Healthcare and Family Services' ""Motion to Quash Subpoenas, or in the Alternative, Motion for Protective Order" (Oct. 18, 2005)
• 2005 WL 3286480 (Trial Motion, Memorandum and Affidavit) Trial Motion and Memorandum and Affidavit (Oct. 17, 2005)
• 2005 WL 2871044 (Trial Motion, Memorandum and Affidavit) Reply Brief of Non-Party Illinois Department of Healthcare and Family Services to Defendants' Response to Hfs' Motion to Quash A Subpoena for Documents Or, in the Alternative, Motion for Protective Order (Sep. 14, 2005)
• 2005 WL 2611036 (Trial Motion, Memorandum and Affidavit) Defendants' Response to Relator's Motion to Compel Answer to Interrogatory on Damages (Aug. 26, 2005)
• 2005 WL 2611026 (Trial Motion, Memorandum and Affidavit) Reply Brief in Support of Defendants' Motion to Dismiss Plaintiffs' Third Amended Complaint (Aug. 18, 2005)
• 2005 WL 2611031 (Trial Motion, Memorandum and Affidavit) Defendants' Response to ""Motion of Non-Party Illinois Department of Healthcare and Family Services to Quash A Subpoena for Documents Or, in the Alternative, Motion for Protective Order" (Aug. 18, 2005)
• 2005 WL 2611021 (Trial Motion, Memorandum and Affidavit) The United States' Memorandum of Law in Support of its Motion to Intervene (Aug. 11, 2005)
• 2005 WL 3295617 (Trial Motion, Memorandum and Affidavit) Motion of Non-Party Illinois Department of Healthcare and Family Services to Quash A Subpoena for Documents Or, in the Alternative, Motion for Protective Order (Aug. 11, 2005)
• 2005 WL 2611015 (Trial Motion, Memorandum and Affidavit) Relator's Supplemental Memorandum in Support of its Motion to Compel Answer to

Interrogatory on Damages (Aug. 09, 2005)
• 2005 WL 2611007 (Trial Motion, Memorandum and Affidavit) Relator's and the State of Illinois' Joint Response to Defendants' Motion to Dismiss (Aug. 04, 2005)
• 2005 WL 2240820 (Trial Motion, Memorandum and Affidavit) Non-Party Department of Healthcare and Family Services' Memorandum in Opposition to Defendant's Conditional Motion to Join Idpa as A Party (Jul. 19, 2005)
• 2005 WL 2240821 (Trial Motion, Memorandum and Affidavit) Relator's Response to Defendant's Brief Supporting its Motion to Join the Idpa as A Party (Jul. 19, 2005)
• 2005 WL 2240817 (Trial Motion, Memorandum and Affidavit) Defendants' Memorandum in Support of Their Motion for A Fair Apportionment of Electronic Discovery Costs (Jul. 13, 2005)
• 2005 WL 2240818 (Trial Motion, Memorandum and Affidavit) Brief Supporting Defendant's Conditional Motion to Join the Idpa as A Party (Jul. 12, 2005)
• 2005 WL 2240819 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Defendants Motion to Dismiss Plaintiffs' Third Amended Complaint (Jul. 7, 2005)
• 2005 WL 2240816 (Trial Motion, Memorandum and Affidavit) Relator's Response to Defendant Amerigroup Illinois, Inc.'s Conditional Motion to Join the Idpa as A Party (Jul. 1, 2005)
• 2003 WL 23817679 (Trial Motion, Memorandum and Affidavit) Defendant Amerigroup Illinois, Inc.'s Reply Brief in Support of Its Motion to Dismiss Plaintiff's Second Amended Complaint (2003) (Dec. 23, 2003)
• 2003 WL 23817676 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Response to Defendant's Motion to Dismiss Plaintiffs' Second Amended Complaint (2003) (Dec. 9, 2003)
• 2003 WL 23817675 (Trial Pleading) Second%n1%n Amended Complaint (2003) (Oct. 14, 2003)
• 2002 WL 32676088 (Trial Pleading) Complaint (Aug. 26, 2002)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy
Slip Copy, 2005 WL 1560505 (S.D.N.Y.)
**(Cite as: Slip Copy)**

**C**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,S.D. New York.
In re: BLACKSTONE PARTNERS, L.P.
Arnold WEINER, Litigation Trustee for IHDG
Litigation Trust, Appellant,
v.
BLACKSTONE PARTNERS, L.P., Appellee.
**No. 04 Civ. 7757(NRB).**

July 1, 2005.

Kenneth Oestreicher, Gary S. Posner, Brent C.
Strickland, Whiteford, Taylor & Preston L.L.P.,
Baltimore, MD, for Appellant.
Robert J. Bodian, Dominic J. Picca, Mintz Levin
Cohn Ferris, Glovsky and Popeo, P.C., New York,
NY, for Appellee.
Sandra E. Mayerson, Barbra R. Parlin, Holland &
Knight, LLP, New York, NY, Jerry D. Bernstein,
Blank Rome LLP, New York, NY, for Borden Inc.

MEMORANDUM and ORDER

BUCHWALD, J.
*1 Arnold Weiner, Litigation Trustee for IHDG
Litigation Trust ("Appellant"), appeals from a ruling
of the United States Bankruptcy Court (Blackshear,
J.) for this District granting two motions to quash
subpoenas filed by non-party Blackstone Partners LP
("Blackstone") on behalf of itself and its current and
former employees, David Foley and Anthony Grillo.
For the reasons discussed below, the Bankruptcy
Court's decision is affirmed.

*BACKGROUND*

On March 13, 1998, Imperial Home Décor Group,
Inc. ("IHDG") was created by a leveraged buyout
that combined Borden Decorative Products Holdings,
Inc. ("BDPH"), formerly owned by defendants
Borden, Inc. and its affiliates (collectively,
"Borden"), with Imperial Wallcoverings, Inc. and
substantially all the assets and liabilities of Imperial
Wallcoverings (Canada), Inc. (collectively,
"Imperial"), both of which were formerly owned by
Collins & Aikman Corporation ("C & A"). As part of
the transaction, Borden was paid $314 million for its

equity interests in BDPH. Blackstone was the
architect of the deal, and obtained an 89% equity
interest in IHDG through its $84.6 million
investment.

In January of 2000, IHDG filed for Chapter 11
reorganization in Delaware. IHDG confirmed a Plan
of Reorganization and created the Litigation Trust in
March of 2001. In November of 2001, the Litigation
Trustee filed the adversary proceeding in Delaware to
avoid the transfer of funds to Borden as a fraudulent
transfer and to recover the funds for the Trust.

In connection with the adversary proceeding, the
Trustee served Blackstone in January of 2003 with a
subpoena pursuant to Rule 30(b)(6), and Blackstone
designated David Blitzer, a Blackstone principal and
a member of the "Deal Team" involved in the
transaction-as its 30(b)(6) witness. The deposition of
Mr. Blitzer produced roughly one thousand pages of
testimony. In April of 2003, the Trustee issued a
subpoena for David Stockman, the senior Blackstone
partner on the "Deal Team," and later deposed him as
well. The Trustee also took four days of deposition
from William Fenstermaker, an employee of C & A
and later IHDG, who worked on due diligence for the
transaction.

In early 2004, after deposing Stockman and Blitzer,
the Trustee served subpoenas on two Blackstone
employees, David Foley and Anthony Grillo, in the
Southern District of New York. Mr. Foley was a
principal at Blackstone and was a member of the
Deal Team. Mr. Grillo was a former Senior
Managing Director at Blackstone and was also a
member of the Deal Team. Blackstone moved to
quash the subpoenas on the grounds that they were
unduly burdensome.

Following an April 28, 2004 hearing, the Bankruptcy
Court issued an opinion on May 7 granting the
motions to quash in part by limiting the Trustee to a
deposition of either Foley or Grillo and requiring the
Trustee to obtain Bankruptcy Court approval before
further depositions of current or former Blackstone
employees. The Trustee moved for reargument. On
July 2, 2004, Judge Blackshear denied the Trustee's
motion requesting that he withdraw his May 7
opinion and deny Blackstone's motion. Instead, Judge
Blackshear altered his earlier order by granting both
motions to quash in full. July 2 opinion at 9. Judge

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2005 WL 1560505 (S.D.N.Y.)
**(Cite as: Slip Copy)**

Page 2

Blackstone also reiterated his holding that the Trustee was required to seek his permission by a motion filed in the Southern District of New York to issue any other subpoenas to Blackstone and its current and former employees. *Id.* The Trustee appealed Judge Blackshear's order.

*DISCUSSION*

**\*2** In reviewing the decision of a bankruptcy court, we "accept[ ] its factual findings unless clearly erroneous but review[ ] its conclusions of law de novo." *DG Acquisition Corp. (In re DG Acquisition Corp.),* 151 F.3d 75, 79 (2d Cir.1998) (citing *In re McLean Industries, Inc.,* 30 F.3d 385, 387 (2d Cir.1994). Furthermore, a "court enjoys wide discretion in its handling of pre-trial discovery, and its rulings with regard to discovery are reversed only upon a clear showing of an abuse of discretion." *Id* . (quoting *Cruden v. Bank of New York,* 957 F.2d 961, 972 (2d Cir.1992)). *See also In re Integrated Resources, Inc.,* 147 B.R. 650, 664 (S.D.N.Y.1992) ("The standard of review of a bankruptcy court determination concerning the scope of discovery ... is whether the bankruptcy court abused its discretion.").

In the present motion, appellant challenges the bankruptcy judge's decision to quash subpoenas. Although "parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party," Fed.R.Civ.P. 26(b)(1), there are limitations on pre-trial discovery. A bankruptcy judge has authority to grant a motion to quash a subpoena pursuant to Fed. R. Civ. P. 45(c)(3)(A)(iv), made applicable to bankruptcy cases through Fed. R. Bankr.P. 9016, if a subpoena "subjects a person to undue burden." The determination of whether a subpoena subjects a witness to "undue burden" is "committed to the sound discretion of the trial court," *Concord Boat Corp. v. Brunswick Corp.,* 169 F.R.D. 44, 49 (S.D.N.Y.1996) (citations omitted), and "depends upon such factors as relevance ... and the burden imposed." ' *Kirschner v. Klemons,* No. 99 Civ. 4828, 2005 WL 1214330, at \*2 (S.D.N.Y. May 20, 2005) (quoting *Concord Boat,* 169 F.R.D. at 48) (quotation marks omitted). Furthermore, the "status of a witness as a non-party to the underlying litigation 'entitles [the witness] to consideration regarding expense and inconvenience." ' *Concord Boat,* 169 F.R.D. at 49 (quoting Fed.R.Civ.P. 45(c)(2)(B)).

The burden of persuasion on a motion to quash a subpoena is borne by the movant, *Concord Boat,* 169

F.R.D. at 48, who therefore "cannot merely assert that compliance with the subpoena would be burdensome without setting forth the manner and extent of the burden and the probable negative consequences of insisting on compliance." *Kirschner,* 2005 WL 1214330, at \*2. However, a "subpoena that 'pursues material with little apparent or likely relevance to the subject matter" ' is "likely to be quashed as unreasonable even where the burden of compliance would not be onerous." *Id.* (quoting *Concord Boat,* 169 F.R.D. at 50).

In addition to the court's specific power to quash under Rule 45, in ruling on a motion to quash, "the court applies its general power to limit discovery under Rule 26(b)(2)," 7 Moore's Federal Practice § 30.50 (Matthew Bender 3d ed.2005), made applicable to bankruptcy cases through Fed R. Bankr.P. 7026. Rule 26(b)(2) allows the court to limit discovery it determines is unreasonably duplicative or whose "burden or expense outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P. 26(b)(2).

**\*3** Furthermore, Rule 30(a)(2)(B), made applicable to bankruptcy proceedings by Fed. R. Bankr.P. 7030, requires a party to obtain leave of the court before deposing a witness who has already been deposed in the case. *See Bonnie & Co. Fashions, Inc. v. Bankers Trust Co.,* 945 F.Supp. 693 (S.D.N.Y.1996) (upholding denial of motion to take second deposition of nonparty); *see also Ameristar Jet Charter, Inc. v. Signal Composites,* 244 F.3d 189 (1st Cir.2001) (upholding quashing of second 30(b)(6) subpoena).

Here, Judge Blackshear's opinion relied in part on his view that Foley and Grillo are "extensions of Blackstone by virtue of their relationship with the company" and that it is therefore "Blackstone that is subject to the subpoena." May 7 opinion at 10-11. Judge Blackshear noted statements by counsel to the Litigation Trustee that he had assembled a strong case that "Blackstone's projections were not reasonable and that Blackstone's theory of the transaction was fatally flawed" based on the different responses by Blitzer, Stockman, and other witnesses. May 7 Opinion at 11. The intent of the Trustee in deposing the members of the Deal Team was to challenge the actions of Blackstone, and their testimony would be irrelevant if not binding on the company. Judge Blackshear was therefore correct to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2005 WL 1560505 (S.D.N.Y.)
**(Cite as: Slip Copy)**

view the proposed depositions of Foley and Grillo as
further depositions of Blackstone.

Judge Blackshear also found that the depositions of
Foley and Grillo would likely be "duplicative and
cumulative since the Trustee has acquired sufficient
relevant facts from key players" such as Blitzer and
Stockman. May 7 opinion at 10. The Trustee had
already taken several depositions of witnesses
knowledgeable about Blackstone's work on the
transaction, and had given the Bankruptcy Court no
explanation of what additional information it hoped
to obtain from further depositions of members of the
Deal Team other than to suggest that their testimony
might contain minor inconsistencies with that of
Blitzer and Stockman. Accordingly, we conclude that
Judge Blackshear did not abuse his discretion in
concluding that the depositions of Foley and Grillo
would be cumulative and would subject Blackstone
to undue burden.

In light of our discussion above, the Bankruptcy
Court's ruling granting Blackstone's motions to quash
the Trustee's subpoenas on Grillo and Foley and
requiring the Trustee to obtain Bankruptcy Court
approval before further depositions of current or
former Blackstone employees is affirmed. The Clerk
of the Court is respectfully requested to close this
matter on this Court's docket.

IT IS SO ORDERED.

S.D.N.Y.,2005.
In re Blackstone Partners, L.P.
Slip Copy, 2005 WL 1560505 (S.D.N.Y.)

Briefs and Other Related Documents (Back to top)

• 1:04cv07757 (Docket) (Sep. 30, 2004)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 31414138 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 1

**C**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
CASH TODAY OF TEXAS, INC., et al., Plaintiffs,
v.
Jerome N. GREENBERG, et al., Defendants.
**No. Civ.A. 02-MC-77-GMS.**

Oct. 23, 2002.

*MEMORANDUM AND ORDER*

SLEET, J.

### I. INTRODUCTION

*1 This matter stems from litigation currently
pending in the United States District Court for the
Northern District of Texas [FN1] ("the litigation")
between the plaintiffs, Cash Today of Texas, Inc.
("Cash Today"), *et al.* (collectively "the plaintiffs")
and the defendants, Easy Money Holding
Corporation ("Easy Money"), *et al.* (collectively "the
defendants"). The litigation arises from the
dissolution of a joint venture between Cash Today
and Easy Money. County Bank of Rehobeth Beach,
Delaware ("County Bank") is a lender with a past
business relationship with one of Easy Money's
affiliates and present business relationship with Cash
Today. Easy Money has issued and served upon
County Bank a subpoena *duces tecum* ("the
subpoena") for production of certain documents.
County Bank moves to quash the subpoena (D.I.1).
For the following reasons, the court will deny County
Bank's motion.

FN1. Civil Case No. 401-CV-0794-A

### II. BACKGROUND

The litigation pending in the district court in Texas is
a civil racketeering action arising from alleged
conduct following the dissolution of a joint venture
between Easy Money and Cash Today. Both
companies provide short-term credit to individuals
through a variety of mechanisms, including what is
frequently referred to as a "payday loan." The
defendants and the plaintiffs typically act as

"servicers" to provide such loans to consumers
pursuant to agreements with lenders. County Bank is
one such lender. For some period of time, County
Bank maintained a servicing relationship with one of
Easy Money's affiliates, Tidewater Services, until
approximately March 2001, when County Bank
terminated the relationship.[FN2] At some later point,[FN3]
County Bank entered into a servicing relationship
with Cash Today. Easy Money has issued and served
upon County Bank the subpoena, which seeks the
production of documents relating to transactions and
communications between County Bank and Cash
Today and other defendants.

> FN2. In October 2001, Easy Money
> instituted a suit against County Bank and
> others, alleging a variety of wrongs
> stemming from this termination. That
> litigation, Civil Action No. 01-Z-1959 in the
> United States District Court for the District
> of Colorado, currently is proceeding through
> discovery.

> FN3. The precise date seems to be
> contested.

### III. DISCUSSION

County Bank objects to the subpoena for several
reasons. It claims: (1) the requested information is
not relevant to the litigation; (2) the requested
information constitutes confidential information and
trade secrets; (3) the subpoena requires the disclosure
of statutorily-protected nonpublic personal financial
data of borrowers; and (4) the subpoena is unduly
burdensome. The court will address these objections
in turn.

#### A. Relevance of the Requested Information

County Bank objects to the subpoena as requesting
information that is not relevant to the litigation,
pursuant to Federal Rule of Civil Procedure 26. [FN4]
Rule 26 allows for discovery of "any matter, not
privileged, that is relevant to the claim or defense of
any party." Fed. R. Civ. P. 26(b)(1). Relevance for
discovery purposes is given very broad meaning.
*Allen v. Howmedica Leibinger, Inc.,* 190 F.R.D. 518,
521 (W.D.Tenn.1999). This is especially true because

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 31414138 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

determinations of relevance for discovery purposes are made well in advance of trial. Fed. R. Civ. P. 26 advisory committee note. Those facts which, for whatever reason, are not to be considered in determining the ultimate issues may be eliminated in due course. *Hercules Powder Co. v. Rohm & Hass Co.,* 3 F.R.D. 302, 304 (D.Del.1943). Therefore, only if "it is palpable that the evidence sought can have no possible bearing upon the issues" should a court deny discovery by quashing a subpoena. *Id.* Once an objection is raised as to relevancy, the party seeking discovery bears the burden of demonstrating the relevance of the sought information to the issues in litigation. *Andritz Sprout-Bauer v. Beazer East,* 174 F.R.D. 609, 631 (E.D.Pa.1997).

> FN4. Although Rule 26 refers specifically to depositions, subpoenas are governed by the same standards. *See Syposs v. United States,* 181 F.R.D. 224, 226 (W.D.N.Y.1998) ("The reach of a subpoena issued pursuant to Fed. R. Civ. P. 45 is subject to the general relevancy standard applicable to discovery under Fed. R. Civ. P. 26(b)(1)."); *Mannington Mills, Inc. v. Armstrong World Indus.,* 206 F.R.D. 525, 529 (D.Del.2002) (detailing relationship between Rules 26 and 45).

*2 In the instant case, Easy Money seeks the disclosure of documents relating to transactions between County Bank and Cash Today and certain of Cash Today's business entities. County Bank contends these documents are irrelevant because its relationship with the plaintiffs began in the Fall of 2001, while the litigation between the plaintiffs and the defendants focuses on acts allegedly committed in the Spring of 2000. However, Easy Money asserts the information is nonetheless relevant to certain claims and affirmative defenses of the litigation, including Cash Today's mitigation of damages. Easy Money claims that these damages may have continued to accrue after the joint venture was severed in the Spring of 2000, well through the time when County Bank concedes it began a business relationship with the plaintiffs. Further, Easy Money alleges that Cash Today may have kept funds that were rightfully the property of the defendants; that Cash Today deposited these funds to County Bank accounts; and that County Bank may act as an alter ego of Cash Today.

Even a cursory review of these allegations, detailed in the defendants' pleadings, reveals the requisite connection between the sought information and the litigation. The subpoenaed documents may provide information regarding damages resulting from Cash Today's alleged breach of contracts, as well as the extent of the plaintiffs' mitigation of damages. Certainly, the evidence sought may have some "possible bearing upon the issues" in the pending litigation. *Hercules Powder Co.,* 3 F.R.D. at 304. The plaintiffs' objection that the information sought is not relevant is not justified.

B. Disclosure of Confidential Information and Trade Secrets

County Bank objects that the subpoena would require the disclosure of confidential information and trade secrets to its competitors. In some contexts, trade secrets are protected from discovery. "It is well established," however, "that trade secrets are not absolutely privileged from discovery in litigation." *Coca Cola Bottling Co. v. The Coca Cola Co.,* 107 F.R.D. 288, 292 (D.Del.1985). To avoid discovery of a trade secret, the party must demonstrate by competent evidence that the information sought is a trade secret and that disclosure of the secret might be harmful. *Id.* (citing *Centurion Industries, Inc. v. Warren Steurer & Associates,* 665 F.2d 323, 325 (10th Cir.1981); 8 C. Wright & A. Miller, Federal Practice & Procedure: Civil § 2043, at 301 (1970)). Information may be deemed a trade secret if it "derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure and use [and][i]s the subject of efforts ... to maintain its secrecy." Del.Code Ann. tit. 6, § 2001(4)(a)(2001); *see also Proctor & Gamble Co. v. Nabisco Brands, Inc., et al.,* 111 F.R .D. 326 (D.Del.1986). In determining if disclosure would be harmful, the court must consider "not the injury that would be caused by public disclosure, but the injury that would result from disclosure under an appropriate protective order." *Coca Cola Bottling Co.,* 107 F.R.D. at 293. Disclosure to a competitor is presumed more harmful than disclosure to a non-competitor. *Id.*

*3 If it is established that the sought information constitutes trade secrets and that disclosure would be harmful, the burden shifts to the party seeking discovery to establish that disclosure of the trade secret is relevant and necessary to the litigation. *Id* at 292. Relevance is established, as discussed above, when the sought information is relevant, in broad

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 31414138 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

terms, to the subject matter of the litigation. *Id.* Disclosure of the evidence is considered necessary when the information is required "for the movant to prepare its case for trial, which includes proving its theories and rebutting its opponent's theories." *Id* at 293. If relevancy and need have been established, the court must balance the need for the information with the harm that would be caused if disclosure is ordered. *Id.* This balance tilts in favor of disclosure. *Coca Cola Bottling Co., 107 F.R.D. at 293.* Indeed, "discovery is virtually always ordered once the movant has established that the secret information is relevant and necessary." *Id.* (citing a survey of relevant case law).

In the instant case, County Bank offers an affidavit by its vice president, David Gillan, to establish that the subpoenaed evidence constitutes confidential information and trade secrets. Mr. Gillan states:
County Bank is one of the pioneers in [its] field, and has expended considerable resources developing and implementing its proprietary means for carrying out [its] business, and developing a qualified network of servicers. County Bank also takes measures to safeguard its proprietary information, including entering into confidentiality agreements with those loan servicers that wish to enter into business with County Bank ..... More importantly, County Bank takes significant measures to safeguard the personal and confidential financial data of its borrowers. These measures include the use of computer passwords and instructions to servicers and employees.

Aff. of David Gillan ¶ 5, County Bank's Opening Brief, Exhibit E. It is not completely clear from this evidence, the only evidence offered by County Bank to support its position, that the documents sought contain confidential and trade secret material. For example, it has not established that its contracts with loan servicers and other "proprietary information" possess "independent economic value ... from not being generally known." Del.Code Ann. tit. 6, § 2001(4)(a)(2001). County Bank has not sustained its burden of showing that the requested information constitutes trade secrets. Nonetheless, the subpoenaed information may well be confidential in nature. Certainly, County Bank seems to treat its contracts with its loan servicers as confidential. Although the issue is not entirely clear,[FN5] the court, in any event, does not regard a finding of confidentiality as controlling, for the reasons set out below.

FN5. For example, it appears that some of

the same types of documents that County Bank now asserts are confidential were submitted in the Colorado litigation between Easy Money and County Bank, without any designation of confidentiality or trade secret protection.

Even assuming the information is confidential in nature, County Bank also must show that harm will flow from disclosure of such information. It does not meet this burden. County Bank asserts merely that "there are very real threats to the integrity of County Bank's confidential operating systems lurking within this Subpoena" and that "this information would be very useful to Easy Money." County Bank's Opening Brief at 7. Nowhere in its briefing does County Bank elaborate about these "threats" supposedly inherent in the subpoena.[FN6] County Bank claims that Easy Money is a competitor (a claim rejected by Easy Money), and the court can well imagine harms that might flow from disclosure of confidential information to a competitor. It is not the court's role to fathom arguments on County Bank's behalf, however, and "blanket and generalized" assertions of confidentiality, absent allegations regarding specific harm, are not sufficient to sustain a motion to quash. *United States v. International Business Machines Corp., 81 F.R.D. 628, 630 (S.D.N.Y.1979)* (assertions that information is "confidential and sensitive" and that disclosure would cause "severe and irreparable injury" not sufficient); *see also In re Rogatory, 144 F.R.D. 272, 276 (E.D.Pa.1992)* ("[T]he mere fact that documents discuss trade secrets does not make them per se undiscoverable...."). Indeed, the party moving to quash "must show, with specificity, that disclosure will work a clearly defined and serious injury to the moving party." *Composition Roofers Union Local 30 Welfare Trust Fund v. Graveley Roofing Enterprises, Inc., 160 F.R.D. 70, 72 (E.D.Pa.1995).* County Bank simply has not done so. For these reasons, County Bank's objection that the subpoena requires the disclosure of confidential or trade secret material is insufficient to support a motion to quash.

FN6. This is especially striking given County Bank's failure to file a reply brief.

*4 Nonetheless, the court is mindful of County Bank's concern about the disclosure of sensitive or confidential information. For this reason, the court orders the parties to extend the protective order currently in place between the parties to encompass any information gathered pursuant to the subpoena.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                Page 4
Not Reported in F.Supp.2d, 2002 WL 31414138 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

C. Disclosure of Non-Public Financial Information of
Borrowers

County Bank objects to the subpoena as requiring the
production of confidential personal financial
information of its borrowers, in contravention of 12
C.F.R. § 332. Section 332.10 limits the disclosure by
banks and other financial institutions of nonpublic
personal information to nonaffiliated third parties
absent a consumer "opt out" notice. 12 C.F.R. §
332.10. Section 332.15(a)(7) of the same title,
however, expressly allows for disclosure of
nonpublic personal information "[t]o comply with a
properly authorized ... subpoena or summons." 12
C.F.R. § 332.15(a)(7)(ii). Disclosure for purposes of
the instant subpoena clearly is exempted from the
opt-out requirements designed to protect consumer
financial information. County Bank's objection to the
subpoena per 12 C.F.R. § 332 is unfounded.

D. Burden of Complying

Finally, County Bank objects to the subpoena as
unduly burdensome. Federal Rule of Civil Procedure
45 directs a court to quash or modify a subpoena "if it
... subjects a person to undue burden." Fed. R. Civ. P.
45(c)(3)(A)(iv). In determining if compliance with
the subpoena would create an undue burden, the court
should consider not only the potential burden to the
producing party, but the necessity of the information
for the party seeking production, and whether the
information can be obtained from other, more
convenient sources. *Allen,* 190 F.R.D. at 525. In this
undue burden inquiry, nonparties are afforded
"special protection." *Exxon Shipping Co. v. United
States Dept. of Interior,* 34 F.3d 774, 779 (9th
Cir.1994).

In the instant case, the subpoena as issued would
appear to create a substantial burden on County
Bank, a nonparty to the litigation. The subpoena may
require the production of over 20,000 individual loan
files, as well as certain other documents. The burden
of locating and copying such documents would fall
on County Bank's staff of five people. Were the
inquiry to end here, the court may well have found an
undue burden. The defendants, however, in keeping
with their statutory mandate "to take reasonable steps
to avoid imposing undue burden or expense on a
person subject to [a] subpoena," Fed. R. Civ. P.
45(c)(1), have proposed conditions that would
dramatically lessen the burden on County Bank. For

example, Easy Money has offered: (1) to accept
computer disks or reports summarizing the relevant
documents; and (2) to conduct an on-site, supervised
inspection of the relevant documents and to copy
them at its own expense. Subject to these sorts of
terms, the burden of complying with the subpoena is
substantially reduced such that the burden is not
"undue."

*5 In this undue burden inquiry, the court also is
mindful of the apparent necessity of the information
and the absence of alternative sources. The
subpoenaed information relates to the defenses and
counterclaims of the defendants. The records of the
financial transactions between County Bank and
Cash Today may provide the defendants with
evidence of Cash Today's failure to mitigate
damages, or the damages resulting from any breach
of contract on Cash Today's part. To paraphrase
Judge Hand, then, unless County Bank is required to
respond to the subpoena, the defendants will be
unable to learn whether the plaintiffs have done them
a wrong. *Grasselli Chemical Co. v. National Aniline
& Chemical Co.,* 289 F. 379, 381 (S.D.N.Y.1920). In
addition, it does not appear, and the parties have not
alleged, that such information can be provided by any
other source. For these reasons, the court finds that
whatever burden County Bank will encounter in
complying with the subpoena is necessary and, as
tempered by certain conditions discussed above, not
undue.

III. CONCLUSION

For the aforementioned reasons, IT IS HEREBY
ORDERED that:
1. County Bank's motion to quash the subpoena *duces
tecum* (D .I. 1) is DENIED.
2. Counsel for County Bank and the defendants shall
confer and, within 20 days of the date of this order,
extend the protective order currently existing in the
litigation to incorporate the information contemplated
by the subpoena.

D.Del.,2002.
Cash Today of Texas, Inc. v. Greenberg
Not Reported in F.Supp.2d, 2002 WL 31414138
(D.Del.)

Briefs and Other Related Documents (Back to top)

• 1:02MC00077 (Docket) (Jul. 15, 2002)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2002 WL 31414138 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

END OF DOCUMENT

## CERTIFICATE OF SERVICE

I, Kathryn D. Sallie, Esquire, hereby certify that on this 22nd day of May, 2006, I caused copies of the foregoing *Opening Brief in Support of the Motion of the Trustee for the IT Litigation Trust to Quash Subpoena* to be served upon the following parties in the manner indicated:

### VIA ELECTRONIC MAIL AND HAND DELIVERY

Brian D. Long, Esquire
Milberg, Weiss, Bershad & Schulman
919 North Market Street
Suite 980
Wilmington, DE 19801
Email: blong@milbergweiss.com

### VIA ELECTRONIC MAIL AND FIRST CLASS MAIL

Kwasi A. Asiedu, Esquire
Law Offices of Kwasi A. Asiedu
3858 Carson Street
Number 204
Torrance, CA 90503
Email: laskido@hotmail.com

Lionel Z. Glancy, Esquire
Michael Goldberg, Esquire
Robert Zabb, Esquire
Glancy & Binkow
1801 Avenue of the Stars
Suite 311
Los Angeles, CA 90067
Email: info@glancylaw.com

Richard J. Pocker, Esquire
Boies, Schiller & Flexner
777 North Rainbow Boulevard
Suite 350
Las Vegas, NV 89107
Email: rpocker@bsfllp.com

Mark A. Willard, Esquire
Robert V. Campedel, Esquire
Eckert, Seamans, Cherin & Mellott
600 Grant Street, 44th Floor
Pittsburgh, PA 15219
Email: mwillard@eckertseamans.com
Email: rcampedel@eckertseamans.com

Charles A. DeMonaco, Esquire
Kimberly L. Haddox, Esquire
Richard J. Federowicz, Esquire
Dickie, McCamey & Chilcote
Two PPG Place, Suite 400
Pittsburgh, PA 15222-5402
Email: cdemonaco@dmclaw.com
Email: khaddox@dmclaw.com
Email: rfederowicz@dmclaw.com

E. Powell Miller, Esquire
Miller Shea
950 West University Drive
Suite 300
Rochester, MI 48307
Email: epm@millershea.com

625997v1

Steven A. Schwartz, Esquire
Chimicles & Tikellis , Esquire
361 West Lancaster Avenue
One Haverford Centre
Haverford, PA 19041
Email: steveschwartz@chimicles.com

Larry K. Elliott, Esquire
Cohen & Grigsby
11 Stanwix Street, 15th Floor
Pittsburgh, PA 15222-1319
Email: lelliott@cohenlaw.com

David A. Becker, Esquire
Thomas L. Patten , Esquire
Courtney S. Schorr, Esquire
Laurie B. Smilan, Esquire
Latham & Watkins
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004
Email: david.becker@lw.com
Email: tom.patten@lw.com
Email: courtney.schorr@lw.com
Email: laurie.smilan@lw.com


_____
Kathryn D. Sallie (No. 4600)