## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THOMAS L. PAYNE, SID ARCHINAL, GARY H. KARESH, JO ANN KARESH, BELCA D. SWANSON AND MERLE K. SWANSON, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br> v. <br><br> ANTHONY J. DeLUCA, HARRY J. SOOSE, FRANCIS J. HARVEY, JAMES C. McGILL, RICHARD W. POGUE, DANIEL A. D'ANIELLO, PHILLIP B. DOLAN, E. MARTIN GIBSON, ROBERT F. PUGLIESE, JAMES DAVID WATKINS, and THE CARLYLE GROUP, <br><br> Defendants. | MISC No. _____ <br><br> THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA <br><br> CA No. 02-1927 |

### APPENDIX TO OPENING BRIEF IN SUPPORT OF THE MOTION OF THE TRUSTEE OF THE IT LITIGATION TRUST TO QUASH SUBPOENA

Dated: May 22, 2006

THE BAYARD FIRM
Jeffrey M. Schlerf (No. 3047)
Edmond D. Johnson (No. 2257)
222 Delaware Avenue, Suite 900
Wilmington, Delaware 19801
(302) 655-5000

-and-

John K. Cunningham
Ileana A. Cruz
WHITE & CASE LLP
Wachovia Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, Florida 33131
(305) 371-2700

Counsel to the Trustee

# TABLE OF CONTENTS

Page

ORDER APPROVING PROPOSED DOCUMENT PRESERVATION
SUBPOENA ................................................................................................ A-1

SUBPOENA OF TRUSTEE OF THE IT GROUP LITIGATION TRUST .................. A-2

## CERTIFICATE OF SERVICE

I, Kathryn D. Sallie, Esquire, hereby certify that on this 22nd day of May, 2006, I caused copies of the foregoing *Appendix to Opening Brief in Support of the Motion of the Trustee for the IT Litigation Trust to Quash Subpoena* to be served upon the following parties in the manner indicated:

### VIA ELECTRONIC MAIL AND HAND DELIVERY

Brian D. Long, Esquire
Milberg, Weiss, Bershad & Schulman
919 North Market Street
Suite 980
Wilmington, DE 19801
Email: blong@milbergweiss.com

### VIA ELECTRONIC MAIL AND FIRST CLASS MAIL

Kwasi A. Asiedu, Esquire
Law Offices of Kwasi A. Asiedu
3858 Carson Street
Number 204
Torrance, CA 90503
Email: laskido@hotmail.com

Lionel Z. Glancy, Esquire
Michael Goldberg, Esquire
Robert Zabb, Esquire
Glancy & Binkow
1801 Avenue of the Stars
Suite 311
Los Angeles, CA 90067
Email: info@glancylaw.com

Richard J. Pocker, Esquire
Boies, Schiller & Flexner
777 North Rainbow Boulevard
Suite 350
Las Vegas, NV 89107
Email: rpocker@bsfllp.com

Mark A. Willard, Esquire
Robert V. Campedel, Esquire
Eckert, Seamans, Cherin & Mellott
600 Grant Street, 44th Floor
Pittsburgh, PA 15219
Email: mwillard@eckertseamans.com
Email: rcampedel@eckertseamans.com

Charles A. DeMonaco, Esquire
Kimberly L. Haddox, Esquire
Richard J. Federowicz, Esquire
Dickie, McCamey & Chilcote
Two PPG Place, Suite 400
Pittsburgh, PA 15222-5402
Email: cdemonaco@dmclaw.com
Email: khaddox@dmclaw.com
Email: rfederowicz@dmclaw.com

E. Powell Miller, Esquire
Miller Shea
950 West University Drive
Suite 300
Rochester, MI 48307
Email: epm@millershea.com

625982v1

Steven A. Schwartz, Esquire
Chimicles & Tikellis , Esquire
361 West Lancaster Avenue
One Haverford Centre
Haverford, PA 19041
Email: steveschwartz@chimicles.com

Larry K. Elliott, Esquire
Cohen & Grigsby
11 Stanwix Street, 15th Floor
Pittsburgh, PA 15222-1319
Email: lelliott@cohenlaw.com

David A. Becker, Esquire
Thomas L. Patten , Esquire
Courtney S. Schorr, Esquire
Laurie B. Smilan, Esquire
Latham & Watkins
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004
Email: david.becker@lw.com
Email: tom.patten@lw.com
Email: courtney.schorr@lw.com
Email: laurie.smilan@lw.com

_____
Kathryn D. Sallie (No. 4600)

### UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THOMAS L. PAYNE, SID ARCHINAL, GARY H. KARESH, JO ANN KARESH, BELCA D. SWANSON AND MERLE K. SWANSON individually and on behalf of all others similarly situated, | Civil Action No. 02-1927 |
| Plaintiffs, | CLASS ACTION |
| v. | Judge William L. Standish |
| ANTHONY J. DeLUCA, HARRY J. SOOSE, FRANCIS J. HARVEY, JAMES C. MCGILL, RICHARD W. POGUE, DANIEL A. D'ANIELLO, PHILIP B. DOLAN, E. MARTIN GIBSON, ROBERT F. PUGLIESE, JAMES DAVID WATKINS, and THE CARLYLE GROUP, | |
| Defendants. | |

### ORDER

The proposed document preservation subpoena submitted by the parties on January 5, 2006 is hereby approved. Any one or more of the parties shall immediately effect issuance of the subpoena through whichever U.S. District Court has appropriate jurisdiction over the IT Group Litigation Trust Trustee, and shall thereafter immediately serve the subpoena upon the Trustee.

IT IS SO ORDERED.

January 9, 2006

*D S Cercone for*

_____
The Honorable William L. Standish
United States District Judge

A    1

Issued by the
# UNITED STATES DISTRICT COURT

DISTRICT OF _____ **DELAWARE** _____

### SUBPOENA IN A CIVIL CASE

THOMAS L. PAYNE, et al.,
          Plaintiff,

V.

ANTHONY. J. DELUCA, et al.,
          Defendants.

Case Number: 02-1927
Western District of Pennsylvania

TO:    TRUSTEE OF THE IT GROUP LITIGATION TRUST
      C/O Jeffrey Schlerf, Esq., The Bayard Firm, 222 Delaware Ave., Suite 900, P.O. Box 25130
      Wilmington, DE 19899

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
| --- | --- |
| | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
| --- | --- |

☒ YOU ARE COMMANDED to preserve the following documents or objects pending further court order:
### SEE EXHIBIT A ATTACHED HERETO

| PLACE    TO BE DETERMINED | DATE AND TIME    TO BE DETERMINED |
| --- | --- |

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PREMISES | DATE AND TIME |
| --- | --- |

    Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)    SEE SIGNATURE PAGE ATTACHED AS EXHIBIT B | DATE    FEBRUARY 15, 2006 |
| --- | --- |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
### SEE SIGNATURE PAGE ATTACHED AS EXHIBIT B

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)

RECEIVED

FEB 1 6 2006

JEFFREY M. SCHLERF

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | February 15, 2006 | The Bayard Firm, 222 Delaware Ave., Suite 900, P.O. Box 25130 Wilmington, DE 19899 |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| [PROVIDE] | BY HAND |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| [PROVIDE] | Attorneys for Plaintiffs Thomas L. Payne *et al.* |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____ February 15, 2006 _____

SIGNATURE OF SERVER

PROVIDE
ADDRESS OF SERVER

---

**RULE 45, Federal Rules of Civil Procedure, Parts C&D:**

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take responsible steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i)    fails to allow reasonable time for compliance,
(ii)    requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded

to travel from any such place within the state in which the trial is held, or

(iii)    requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv)    subjects a person to undue burden.

(B) If a subpoena

(i)    requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii)    requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii)    requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d)    DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim

A    3

# Exhibit A

## EXHIBIT A

## I. DEFINITIONS

As used herein, the words and phrases set forth below shall have the meaning or meanings prescribed for them:

1.    "And" shall include the term "or", and the term "or" shall include the term "and", such that each document request calls for the production of the greatest number of documents.

2.    "Any" shall mean any and all.  The term "all" has the same meaning.

3.    "Arthur Andersen" means Arthur Andersen LLP, or any of its subsidiaries, divisions, offices, affiliates, predecessors, successors, joint ventures, present and former partners, employees, representatives, agents, attorneys, and all other persons or entities acting or purporting to act on its behalf.

4.    Any reference to the "board of directors" shall refer to the board of directors of IT Group and shall also refer to any committee, subcommittee thereof, including but not limited to the audit committee or the executive committee.

5.    "Second Amended Complaint" means the Second Amended Complaint filed in *Payne v. DeLuca*, Civ. Action No. 02-1927(W.D. Pa.).

6.    "Communicate" or "communication(s)" refers to every manner or means of disclosure, transfer, provision, conveyance, or exchange of information or thoughts (in the form of facts, ideas, inquiries or otherwise), orally, written and/or electronically transmitted, including but not limited to any meeting or correspondence, formal or informal, in writing or electronic.

7.    "Concerning" means reflecting, relating to, referring to, describing, evidencing, constituting, reflecting, or logically or factually connected with the matter discussed.

8.    "Document(s)" has the same meaning as "writings," which is defined in Federal Rule

A    5

of Civil Procedure 34(a) and Federal Rule of Evidence 1001, and is used herein in the broadest possible sense and includes data, videotape and motion pictures, and electronic, mechanical or electric records or representations, including e-mail. "Document(s)" include, but are not limited to, correspondence, letters, contracts, agreements, memoranda, statements, bills, schedules, receipts, invoices, records of purchases or sale, brochures, projections, budgets, calendars, reports, studies, minutes, resolutions, due diligence files, promissory notes, loan documents, letters of credit, notes (handwritten or otherwise), messages, analyses, plans, evaluations, diaries, agendas, announcements, manuals, telephone message slips, telephone bills, telephone logs, telephone toll records, press releases, transcripts, scripts, graphs, charts, computer directories, computer disks, computer tapes, or any other written, printed, typed, taped, filmed, or graphic matter however produced or reproduced. "Document(s)" further includes non-identical copies, including, but not limited to, drafts, revisions, alterations, modifications, changes, markups, amendments of the foregoing or comments or notations appearing on the foregoing, which are not part of the original text. "Document(s)" also include the file, folder tabs, and labels appended to or containing any documents.

9.    "Ernst & Young" or "E&Y" means Ernst & Young LLP, or any of its subsidiaries, divisions, offices, affiliates, predecessors, successors, joint ventures, present and former partners, employees, representatives, agents, attorneys, and all other persons or entities acting or purporting to act on its behalf.

10.    "IT Group" or "the Company" means The IT Group, Inc., including predecessors and/or successors, subsidiaries, joint ventures, and/or affiliates, and any division and/or segments thereof, or any of its former or current officers, directors, employees, attorneys, partners, or any other person or entity acting on its behalf.

11.    "Kroll Zolfo Cooper" means Kroll Zolfo Cooper LLC or any of its subsidiaries,

A    6

divisions, offices, affiliates, predecessors, successors, joint ventures, present and former partners, employees, representatives, agents, attorneys, and all other persons or entities acting or purporting to act on its behalf.

12.  "Meeting" means the contemporaneous presence of any natural persons (including by telephone) for any purpose, whether or not such presence was by chance or prearranged, and whether or not the meeting was formal or informal or occurred in connection with some other activity.

13.  "Person" or "persons" refers to natural persons, proprietorships, governmental agencies, corporations, partnerships, trusts, joint ventures, groups, associations, organizations and all other entities.

14.  "PWC" means PricewaterhouseCoopers or any of its subsidiaries, divisions, offices, affiliates, predecessors, successors, joint ventures, present and former partners, employees, representatives, agents, attorneys, and all other persons or entities acting or purporting to act on its behalf.

15.  "Relate to", "related to", "relating to" or "regarding" means in any way to consist of, reflect, relate to, refer to, mention, describe, evidence, consider, discuss, contain, analyze, study, describe, pertain to, report on, be legally, logically or factually connected with, or reflect, in whole or part, directly or indirectly, a stated subject matter.

16.  "SEC" means the United States Securities and Exchange Commission, or any of its present and former divisions, subdivisions, affiliates, employees, representatives, agents and all other persons acting or purporting to act on behalf of the foregoing.

A    7

## II. INSTRUCTIONS

This subpoena requires the preservation of documents rather than their production. The documents shall be preserved pending further court order in a manner consistent with their eventual production in accordance with the following instructions, including, for example, preservation of all non-identical copies and drafts, preservation of transmittal sheets, cover letters, exhibits, enclosures, or attachments, and preservation of files, envelopes, storage labels or other indicia of storage method, system, classification or index.

1.    The instructions set forth in Rules 26 (to the extent applicable) and 34 of the Federal Rules of Civil Procedure are incorporated herein by reference.

2.    The use of the singular shall be deemed to include the plural, the disjunctive shall include the conjunctive, and the use of masculine, feminine or neutral gender shall include each gender, as appropriate in context.

3.    The terms "all," "any," "each," and "every" shall each be construed as all, any, each and every to bring within the scope of the Request or Requests all information that might otherwise be construed to be outside of its scope.

4.    The terms "and" and "or" shall be construed disjunctively or conjunctively as necessary to bring within the scope of the Request all information that might otherwise be construed to be outside of its scope.

5.    These Document Requests are continuing in nature and require supplemental responses as specified in Federal Rule of Civil Procedure 26(e) if you (or any person acting on your behalf) obtain additional information called for by the requests between the time of the original response and the time set for trial. Each supplemental response shall be served on plaintiff no later than thirty (30) days after the discovery of the further information, and in no event shall any

A    8

supplemental response be served later than one week before the first day of trial.

6. These document requests encompass any documents produced in any other action regardless of whether that case is active or inactive.

7. In producing documents and other materials, you are requested to furnish all documents or things in your possession, custody or control, regardless of whether such documents or materials are possessed directly by you or your directors, officers, agents, employees, representatives, parents, subsidiaries, predecessors, successors, managing agents, divisions, affiliates, investigators, or by your attorneys, accountants, or their agents, employees, representatives or investigators. A document shall be deemed to be within your control if you have the right or practical ability to secure the document or a copy of the document, directly or indirectly, from another person having possession or custody of the document.

8. If any part of a document is responsive to any request, the whole document is to be produced. Any alteration of a responsive document, including, but not limited to, any marginal notes, handwritten notes, underlining, date stamps, endorsed or filed stamps, drafts, revisions, modifications and other versions of a final document is a separate and distinct document and it must be produced.

9. The fact that a document is produced by any other person does not relieve you of the obligation to produce your copy of the same document, even if the two documents are identical in all respects.

10. If any requested document or thing cannot be produced in full, produce it to the extent possible, indicating which document or portion of that document is being withheld and the reason that document is being withheld.

11. In producing documents, you are requested to produce the original of each document

A    9

requested together with all non-identical copies and drafts of that document. If the original of any document cannot be located, a copy shall be provided in lieu thereof, and shall be legible and bound or stapled in the same manner as the original.

12.    Documents shall be produced as they are kept in the usual course of business. Each document shall be produced in such fashion as to indicate clearly the identity of the file in which such document was located and the configuration in which such document was kept. Therefore, all documents shall be produced in the file folder, envelope or other container in which the documents are kept or maintained by you. If, for any reason, the container cannot be produced, produce copies of all labels or other identifying marks.

13.    Documents shall be produced in such fashion as to identify the department, branch or office in whose possession it was located and, where applicable, the natural person in whose possession it was found and the business address of each document's custodian(s).

14.    Documents attached to each other should not be separated.

15.    Electronic, computer or machine-readable data should be produced in an electronic form that does not require specialized or proprietary hardware or software. If you wish to provide electronic, computer or machine-readable documents in a form different from that described above, counsel for Plaintiffs and Defendants should be contacted to determine if the proposed format is appropriate.

16.    Documents not otherwise responsive to this discovery request shall be produced if such documents mention, discuss, refer to or explain the documents which are called for by this discovery request, or if such documents are attached to documents called for by this discovery request and constitute routing slips, transmittal memoranda, letters, comments, evaluations or similar materials.

A   10

17.     Each request shall be construed independently and not with reference to any other Request for the purpose of limitation.

18.     A request for a document shall be deemed to include a request for any and all transmittal sheets, cover letters, exhibits, enclosures, or attachments to the document, in addition to the document itself.

19.     If there is no document responsive to any particular request, please so state in writing.

20.     In the event that you interpose an objection to the requests or a request, you should clearly indicate to which part or portion of the requests or request the objection is directed and provide all documents to which objection is not made as if such part or portion were propounded as a separate request.

21.     In evaluating whether any e-mail is responsive to the requests, you are to review the text of each individual e-mail (i.e. not simply review the subject heading or utilize an electronic search device).  As the requests relate to web-sites and other electronic information, you are to review the electronic content posted on web-sites in your possession, custody or control (i.e. not simply review the subject heading or utilize an electronic search device).

22.     You are to preserve all electronic documents in your possession, which includes discontinuing any and all purging, deleting, erasing, overwriting or destroying of electronic documents in your possession irrespective of your normal business practice.

23.     If any information requested herein is withheld under claim of privilege, or is not provided for whatever reason, you are requested at the time of responding to these Requests to (a) describe in detail the claim of privilege or other reason used to withhold the information and (b) identify all information by date and subject matter as required by applicable law.

24.     The relevant time period, unless otherwise indicated, shall be from January 1, 1995 to

A    11

the date of the response, and shall include all documents and information which relate in whole or in part to such period, or to events or circumstances during such period, even though dated, prepared, generated or received prior or subsequent to that period.

25. This subpoena is being served to ensure observance of the recipient's legal duty to preserve all documents which are within the scope of discovery in this action. The requested categories specified in the subpoena merely reflect the parties' best efforts to identify documents within that scope based on their knowledge of the underlying facts of the case at this time. Regardless of the scope of this subpoena, the IT Group Litigation Trust Trustee is required to preserve all such documents which are within the scope of discovery in this case as delineated by the allegations in the Second Amended Complaint, other filings or developments in this case or filings, discovery of additional facts or other developments in any related actions, or facts known to the IT Group Litigation Trust Trustee (including all employees or other agents thereof). Gaps or omissions in the subpoena shall not be taken as a basis, justification, license or excuse to destroy or fail to preserve any such documents.

## DOCUMENTS TO BE PRODUCED

1.    All files or documents, including memoranda and correspondence, of Anthony DeLuca, Harry Soose, James Pierson, Richard Conte, Francis Harvey or Karl Schwartz.

2.    All files or documents, including memoranda and correspondence, of IT Group heads or their immediate subordinates (e.g. vice-presidents) of business lines or subsidiaries, or controllers of such business lines or subsidiaries who held such position at any time during the period 1996 to 2002, including but not limited to Enzo Zoratto, Dennis Galligan, David Derry, Gary Gardner, Tom Marti, and Mary Geiger.

3.    All files or documents, including memoranda and correspondence, of David Igata, Joseph Iovino, James Kirk, Tom Marti, Drew Park, Kirk Saunders, Kevin Smith, and Paul Smith.

4.    All documents consisting of, referring to, relating to or reflecting contacts communications and correspondence between Pittsburgh headquarters offices (including Anthony DeLuca, Harry Soose, James Pierson or Richard Conte) and any of the business lines or subsidiaries concerning financial results, accounting methods or issues, cash handling or availability, payment of vendors, or other accounting, financial or liquidity issues.

5.    All documents relating to, referring to or reflecting the resignation, dismissal or termination of Anthony DeLuca from his position as CEO of IT Group.

6.    All documents relating to, referring to or reflecting the resignation, dismissal or termination of David Hill from his position at IT Group.

7.    All documents relating to, referring to or reflecting the resignation, dismissal or termination of Ray Pompe from his position at IT Group.

8.    All files or documents, including memoranda and correspondence, of IT Group's in-house counsel.

9.    All documents, including memoranda and correspondence, related to, referring to or reflecting any activity of or communication with any or all of IT Group's directors, including the entire board of directors, the directors individually, the audit committee, executive committee, or any other committee thereof. Such documents would include, but not be limited to, documents or other information provided to any board member or distributed at any meeting of the board or any committee or subcommittee thereof.

10.    All documents, including memoranda and correspondence, related to, referring to or reflecting any activity of or communication with the Carlyle Group or any of its representatives or agents, including but not limited to Philip Dolan or Daniel D'Aniello.

11.    All documents referring to, relating to or reflecting IT Group's relationship with the Carlyle Group, including but not limited to documents relating to issuance of dividends.

12.    All documents referring to, relating to or reflecting the Carlyle Group's purchase of preferred stock in IT Group in 1996, including but not limited to documents reflecting plans for IT Group or valuations of IT Group or any analysis of IT Group's then-current or future business prospects.

13.    All documents consisting of, related to, referring to or reflecting any annual report, SEC-related document or draft thereof, any filing with the SEC or draft thereof, whether or not such document was ever finalized, filed or transmitted.

14.    All documents consisting of, relating to, referring to or reflecting any contacts, communications or correspondence with the SEC.

15.    All documents consisting of, relating to, referring to or reflecting any contact, communication or correspondence with one or more shareholders or analysts, or any press release or draft thereof, whether or not the press release was ever finalized or issued.

16.     All documents consisting of, relating to, referring to or reflecting projections, pro formas, or estimations of IT Group's revenue, expenses, cash usage or other financial or operating results.

17.     All accounting documents of the IT Group or any of its business lines or subsidiaries or of any of the companies or entities acquired by IT Group.

18.     All documents or files of the accounting department of IT Group, including but not limited to memoranda, files, ledgers, or aging or other accounting reports.

19.     All documents reflecting the accounting system, accounting methods or internal accounting controls of IT Group or any of its business lines or subsidiaries.

20.     All documents relating to, referring to or reflecting the financial or operational results of any of IT Group's business lines or subsidiaries, including but not limited to the reporting thereof to Pittsburgh headquarters and/or any review or revision or critique of such reported results by anyone at Pittsburgh headquarters.

21.     All documents related to or reflecting any audit or internal audit of IT Group or any of its business lines or subsidiaries, including but not limited to any audit by Ernst & Young or any internal audit by Arthur Anderson or IT Group's internal audit department.

22.     All documents relating to, referring to or reflecting any services performed by Ernst & Young for IT Group (including any subsidiaries or business lines).

23.     All documents relating to, referring to or reflecting any services performed by Arthur Anderson for IT Group (including any subsidiaries or business lines).

24.     All documents consisting of, relating to, referring to, or reflecting contacts, communications and correspondence with Ernst & Young.

25.     All documents consisting of, relating to, referring to or reflecting contacts,

communications and correspondence with Arthur Andersen.

26.    All documents related to cash handling or cash handling practices or cash management or cash management practices by IT Group, including but not limited to cash transfers between or among bank accounts, subsidiaries, the main Pittsburgh office, or other internal transfers.

27.    All documents, consisting of, relating to, referring to or reflecting internal memoranda or other communications concerning cash handling or cash management including but not limited to cash transfers between or among bank accounts, subsidiaries, the main Pittsburgh office, or other internal transfers.

28.    All documents consisting of, referring to, relating to or reflecting contacts, communications or correspondence with any of IT Group's lenders, lending banks, or suppliers of credit in connection with IT Group's credit line or term loans, including but not limited to Citibank or Fleet Bank.

29.    All documents referring to related to or reflecting IT Group's liquidity or cash needs or usage, or credit line availability or usage, including not not limited to any subsidiaries, business lines or projects.  Such documents would include but not be limited to projections of cash flow or cash usage.

30.    All documents related to, referring to or reflecting IT Group's revolving credit line, including but not limited to the usage of that credit line.

31.    All documents referring, relating to or reflecting to loans, borrowing, funding, underwriting or offering or sale of securities or notes by IT Group , whether existing or possible or prospective, public or private.

32.    All documents related to, referring to or reflecting IT Group obtaining the $100 million Term C loan in early 2000, including but not limited to documents reflecting the need for or

A   16

reasons for obtaining that loan, plans for using the funds, and actual usage of the funds.

33.   All documents related to, referring to or reflecting IT Group's bank or lending agreements or loan covenants, including but not limited to proposed or actual amendment thereof, or projected, past, current or future compliance or non-compliance therewith, or any potential or actual default or violation of any loan terms or covenants.

34.   All documents relating to, referring to or reflecting any discussion of, study of, or actual sale of operating or real estate assets including but not limited to sale of any subsidiaries or business lines, including but not limited to any such documents relating to any effort to meet IT Group's liquidity needs.

35.   All documents relating to, referring to or reflecting payment to vendors, including but not limited to late payment, withholding of payments, or consequences of the foregoing, and including but not limited to documents reflecting contacts, communications or correspondence with vendors or customers (including the U.S. government) regarding the foregoing.

36.   All documents consisting of, referring to, relating to or reflecting internal memoranda or other communications concerning payment to vendors, including late payment, withholding of payments, or consequences of the foregoing.

37.   All documents referring to, related to or reflecting accounts payable, handing of payables, aging of payables or issuing vouchers or vouchering of payables.

38.   All documents referring to, related to or reflecting delinquent, past due, untimely, or disputed payments to contractors or subcontractors.

39.   All documents referring to, related to or reflecting any problems with contractors or subcontractors or equipment used or to be used for projects, including but not limited to hiring contractors or subcontractors, any instance of their walking off jobs for non-payment, inability to

purchase or rent equipment and use or non-use of equipment due to payment or subcontractor problems.

    40.    All documents referring to, relating to or reflecting any acquisitions by IT Group, whether or not ultimately finalized, including but not limited to the acquisition of OHM, Emcon, Beneco, Fluor Daniel GTI, Roche Limited Consulting Services, or EFM Group, including but not limited to any investigation or due diligence conducted by IT Group and/or the Carlyle Group in connection with any acquisition transaction.

    41.    All documents referring to, relating to or reflecting any accounting or financial records related to any acquisition by IT Group, including but not limited to documents reflecting valuation of acquired assets, any goodwill account, or any write-downs or write-offs of acquired assets.

    42.    All documents referring to, relating to or reflecting acquisition purchase price adjustments involving accounts receivable, including but not limited to any such purchase price adjustments which related to any write down of receivables in 2001.

    43.    All documents supporting, referring or relating to the amounts booked as goodwill in connection with companies acquired by IT Group between 1996 and 2002.

    44.    All documents referring to, relating to or reflecting any projections or assessment of performance or future performance related to any acquisition(s) by IT Group, including but not limited to any statement of goals or the extent to which such goals were or were not met or achieved.

    45.    All documents referring to, relating to or reflecting the financing of acquisitions by IT Group, including but not limited to any financing plans (whether or not accepted), or contacts with banks other lenders or underwriters.

    46.    All documents referring to, relating to or reflecting the existence, validity or

collectability of IT Group's accounts receivable.

47.    All documents referring to, relating to or reflecting accounts receivable aging reports.

48.    All documents referring to, relating to or reflecting any reserve taken for accounts receivable, such as any reserve for uncollectable receivables, including but not limited to documents related to the calculation or method used for the calculation of the amount of such reserves.

49.    All documents referring to, relating to or reflecting any possible or actual write-offs or write-downs of accounts receivable, whether or not such write-offs or write-downs were ultimately taken, including but not limited to documents reflecting which accounts, receivables, projects or other items were to be subject to the write-off or write-down, and documents reflecting any analysis of such accounts or other basis for taking the write-off or write-down. Such documents include, but are not limited to, the write-offs reflecting in a December 2001 presentation to IT Group's banks, and write-offs reflected in IT Group's audited 2001 financial statements as included in a Form 8-K filed with the SEC by the Shaw Group in 2002.

50.    All documents referring to, relating to or reflecting the "special charge" taken by IT Group in the fourth quarter of 2000, including but not limited to documents reflecting calculation or determination of the special charge, which accounts, receivables, projects or other items were subject to the charge, and documents reflecting any analysis of such accounts or other basis for taking the charge.

51.    All documents referring to, relating to or reflecting any review of accounts receivable, including any review undertaken in connection with the "special charge" for the fourth quarter of 2000 or in connection with the write-offs reflected in a December 2001 presentation to IT Group's banks or the write-offs taken in IT Group's audited 2001 financial statements as included in a Form 8-K filed with the SEC by the Shaw Group in 2002.

52.     All documents referring to, relating to or reflecting what is referred to in the September 20, 2000 IT Group audit committee meeting minutes as follows: "An acquisition evaluation review, as well as the on-going accounts receivable review, including a detailed by-project review of unbilled accounts receivable contained in acquired computer systems, including the Oracle system were discussed. In this regard, approximately (200) two hundred projects are being reviewed which represent over 70% of the universe. Discussion with the project managers, project administrators, and business line presidents has commenced and is expected to be a lengthy process which will include interface with clients to determine realization estimates. As earlier anticipated, the review process is scheduled to be completed during the later part of the fourth quarter."

53.     All documents referring to, relating to or reflecting the existence, validity and collectability of accounts receivable for particular projects for which write-offs or write-downs were contemplated or taken, including but not limited to the projects listed on Exhibit "A" hereto, which includes a project claims and a/r analysis as of December 1, 2000 and the attached issues list FYE December 28, 2001.

54.     All documents referring to, relating to or reflecting the existence, validity and collectability of accounts receivable generated by OHM, including but not limited to the OHM projects listed on Exhibit "B."

55.     All documents referring to, relating to or reflecting any claims or change orders included in IT Group's accounts receivables, including but not limited to documents reflecting their existence, validity and collectability.

56.     All documents consisting of, referring to, relating to or reflecting contacts, communications or correspondence with IT Group's attorneys or in-house counsel concerning the validity, existence or collectability of accounts receivable, including but not limited to the validity,

existence or collectability of change orders or claims included in receivables.

57.    All documents referring to, relating to or reflecting the billed and unbilled receivables within the accounts receivable of IT Group, including but not limited to any calculation of billed and unbilled receivables, any back-up or documentation which would substantiate or evidence the accuracy of any disclosures concerning billed or unbilled receivables, any statement of the amount of billed and unbilled receivables, any reports of billed and unbilled receivables to IT Group's lending banks, and any adjustment which may have been made to billed and unbilled receivables for purposes of reporting such amounts to the public in SEC filings, press releases or other public statements.

58.    All documents referring to, relating to or reflecting the IT Group's backlog, including but not limited to the amount of backlog, the calculation of backlog, allocation of backlog amount IDO, fixed price, cost-plus or other types of government contracts, the basis for claiming backlog amounts on specific projects (such as project contracts), the basis for projecting revenues on the projects which were claimed as part of the backlog, and any allocation of projected project revenues among IT Group and other companies which were participants in such projects.

59.    All documents referring to, relating to or reflecting the government contractors other than IT Group which were participants in contracts or projects for which revenues were included in IT Group's claimed backlog.

60.    All documents referring to, relating to or reflecting the actual calculation or method used by IT Group to calculate its claimed backlog for IDO (indefinite order) contracts with the Government.

61.    All documents referring to, relating to or reflecting the calculation of, or basis for claimed backlog on projects comprising 5% or more of the backlog claimed by IT Group. (This

request includes, but is not limited to the backlog-related items specified in prior requests, such as basis for projected revenue, contracts, existence of other contractors on the projects).

62.    All documents referring to, relating to or reflecting the calculation of, or basis for claimed backlog derived from each of the projects listed as "largest contracts by business line as of September 28, 2001" on the attached Exhibit "C." (This request includes, but is not limited to the backlog-related items specified in prior requests, such as basis for projected revenue, contracts, existence of other contractors on the projects).

63.    All documents referring to, relating to or reflecting the Government "pay when paid" (also possibly referred to as "bill when paid") regulations, any requirements for billing or payment contained in the Federal Acquisition Regulations, any requirements for billing or payment in any state or local government regulations, or any law, rule or regulation applicable to government contractors which impacts on whether any receivable can be billed to or collected from the government (federal, state, or local).

64.    All documents referring to, relating to or reflecting any discussion or calculation of amounts which had to be paid to contractors or others before IT Group could, would, or was in whole or in part entitled to bill and/or collect receivables from any government or private client or customer.

65.    All documents referring to, relating to or reflecting Kroll Zolfo Cooper's liquidation analyses of IT Group performed in or around the third or fourth quarter of fiscal 2001, including but not limited to all documents provided to Kroll Zolfo Cooper in connection with its analysis.

66.    All documents referring to, relating to or reflecting PWC's liquidation analyses of IT Group performed in or around fiscal 2001 or early 2002, including but not limited to all documents provided to PWC in connection with its analysis.

A    22

67.    All documents referring to, relating to or reflecting, used or provided in connection with, or forming the basis for, any report by the bankruptcy court-appointed examiner R. Todd Neilson (including but not limited to the examiner's First Report dated march 11, 2002), and/or any report of Chanin Capital Partners, including but not limited to the Restructuring Plan for IT Group dated April 11, 2002.

68.    All documents referring to, relating to or reflecting, used or provided in connection with, or forming the basis for, any valuation or assessment of IT Group assets, liabilities, or operations during 1996 to the present.

69.    All documents referring to, relating to or reflecting, used or provided in connection with, or forming the basis for, any valuation or assessment of IT Group assets, liabilities or operations related to the sale or disposal of all or part of IT Group as part of the bankruptcy process, including but not limited to the sale of assets to the Shaw Group.

70.    All documents referring to, relating to or reflecting the sale of IT Group assets to the Shaw Group.

71.    All documents referring to, relating to or reflecting any due diligence or investigation of IT Group by the Shaw Group, including but not limited to documents provided or shown or offered to the Shaw Group or utilized or relied upon by the Shaw Group in connection with such due diligence or investigation.

72.    All documents requested (of the IT Group Litigation Trust Trustee, Ernst & Young or any other party) or produced (by the IT Group Litigation Trust Trustee, Ernst & Young or any other party), whether informally or pursuant to a discovery request, in any related litigation, including but not limited to the following cases:    Staro Asset Management LLC v. DeLuca et al., U.S. District Court, W.D.Pa. Case No. 02-0886, (2) the Trustee's action, IT Litigation Trust v. D'Aniello et al.,

U.S. District Court for the District of Delaware Case No. 04-CV-1268KAJ, as well as a case filed by

the Trustee in August, 2005 against IT Group auditor Ernst & Young in Delaware State court for

New Castle County, and (3) two related cases brought by one of the lenders in the Citibank

consortium: Highland Capital Management et al. v. Ernst & Young, LLP and The Carlyle Group,

Case No. 03-04530, in the District Court of Dallas County, Texas, 192nd Judicial District, and

Highland Capital Management v. TC Group, et al, Case No. 04C-06-068 RRC, in the Superior Court

of the State of Delaware in New Castle County.

      73.     All documents, including drafts, constituting, referring or relating to any public filing

by the IT Group, including but not limited to, proxy solicitations, annual reports, quarterly reports or

press releases.

      74.     All documents relating to any communication between the IT Group and Thomas

Payne, Sid Archinal, Gary Karesh, Jo Ann Karesh, Belca Swanson or Merle Swanson or any agent or

representative thereof.

      75.     All files or documents, including memoranda and correspondence, of Frank Rice.

      76.     All documents relating to, referring to or reflecting on their face any payment or

prepayment or negotiations or terms of any proposed deal for such payment or prepayment on the

project for the Iron Mountain Mines Superfund Site, including but not limited to document reflecting

contacts, communications or correspondence with the U.S. Government or any insurance carrier or

any source of funds for such prepayment. Such documents would include, but not be limited to

documents relating to the $33 million advance payment received in December 2000 as reported in IT

Group's 2000 Form 10-K.

      77.     All documents referring to, relating to or reflecting any of the projects specifically

referred to in the Second Amended Complaint ("SAC"), including but not limited to projects cited as

subject to improper accounting (see, e.g. SAC ¶ 243–Erie PA power project), SAC ¶ 257 (PSE&G

project), SAC ¶ 281 (Norfolk Air Naval Station project) and/or projects shown to Fran Harvey.

(See, e.g. SAC ¶ 267 (Fresno, CA project), SAC ¶ 268 (Florida Everglades project).

     78.    All documents which identify the internal project numbers assigned by IT Group to its

own projects.

# EXHIBIT A TO SUBPOENA

The IT Group
Project Claims & A/R Analysis
(In millions)

| | Claim Submittal & Collect. A/R | Anticipated Settlement | Book Position net of purch acct reserve | Potential Benefit (Loss) | Cash Proceeds before 6/30/01 | Cash Proceeds between 7/01-12/01 | Total Anticipated Settlement |
|---|---|---|---|---|---|---|---|
| **Legacy Claims** | | | | | | | |
| Fons/Willow Run | $ | | $ 3.6 | | | | |
| Occidental-IT Only | | | 0.9 | | | | |
| Coakley | | | 5.6 | | | | |
| American Creosote/Cape Fear | | | 3.8 | | | | |
| Wellsville | | | 2.4 | | | | |
| Weyerhauser | | | 1.1 | | | | |
| Cacos | | | 1.4 | | | | |
| Sikes | | | 1.5 | | | | |
| Total | 28.3 | 11.5 | 21.5 | (10.0) | 5.5 | 6.0 | 11.5 |
| | | | | | | | |
| **Acquired Claims** | | | | | | | |
| Occidental-OHM Only | | | 3.1 | | | | |
| Penn Mines | | | 3.9 | | | | |
| Lake Apopka | | | 0.9 | | | | |
| Sevanson | | | 1.9 | | | | |
| Monticello | | | 10.3 | | | | |
| Earth Tech | | | 5.5 | | | | |
| D Eagle | | | 0.8 | | | | |
| Norfolk | | | 3.6 | | | | |
| Total | 48.2 | 20.0 | 30.0 | (10.0) | 10.0 | 10.0 | 20.0 |
| | | | | | | | |
| **Acquired A/R Issues** | | | | | | | |
| LanlDiv | | | | | | | |
| Emcon Ind. Svcs | | | | | | | |
| Wilco Trainer | | | | | | | |
| Chemical Sales | | | | | | | |
| SFWMD S5A | | | | | | | |
| Hercules Parlin Landfill | | | | | | | |
| Bufton Gwinett Landfill | | | | | | | |
| Western Processing | | | | | | | |
| Pfister Wastewater Lagoon | | | | | | | |
| Georgia Pacific-Rem | | | | | | | |
| Parsons Landfill | | | | | | | |
| SMC/WWTP | | | | | | | |
| CK-Wilco | | | | | | | |
| B.J. Landfill | | | | | | | |
| Zeneco AG-Rem Svc Op. #2 | | | | | | | |
| Dupont | | | | | | | |
| Sanders (Beneco) | | | | | | | |
| Total | 7.5 | | 7.5 | (7.5) | | | |
| | | | | | | | |
| **Oracle Unbilled & Cost Reim.** | | | | | | | |
| Howard | | | | | | | |
| Phelps | | | | | | | |
| Razu | | | | | | | |
| Kinney | | | | | | | |
| CIP | | | | | | | |
| PEG | | | | | | | |
| Other | | | | | | | |
| Add'l Reserve | | | | | | | |
| Total | 7.6 | 2.6 | 7.6 | (5.0) | 0.9 | 1.7 | 2.6 |
| | | | | | | | |
| Chi Mel | 1.7 | 1.7 | 4.2 | (2.5) | 1.7 | | 1.7 |
| | | | | | | | |
| Cumulative Total | $ 93.3 | $ 35.8 | $ 70.8 | $ (35.0) | $ 18.1 | $ 17.7 | $ 35.8 |

XYA 00000898

The TT Group
Project Claims & A/R Analysis
As of December 1, 2000
$(000's)

| Project Name | Project N | Bus. Line | Amounts before write offs | | | | | | Amounts adjusted for write offs | | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | | Year to Date | | | Project to Date | | | Writs Offs | Year to Date | | | Project to Date | | |
| | | | Revenue | Margin | Margin % | Revenue | Margin | Margin % | | Revenue | Margin | Margin % | Revenue | Margin | Margin % |
| **Legacy Claims** | | | | | | | | | | | | | | | |
| FondWillow Run | 45/77 | CEC | 646 | (5) | -0.7% | 54,403 | (364) | -0.5% | (1,000) | (354) | (1,005) | 283.8% | 53,403 | (1,264) | -2.4% |
| Occidental - IT On | S15569 | CEC | 4 | (0) | -6.8% | 2,334 | (229) | -9.8% | (600) | (596) | (800) | 100.0% | 1,734 | (829) | -47.8% |
| Cooksey | 768303 | CEC | 249 | 250 | 100.2% | 7,717 | 247 | 3.2% | (3,500) | (3,251) | (3,250) | 100.0% | 4,217 | (3,253) | -77.1% |
| American Cresoot | 305975 | CEC | | | 0.0% | 21,055 | 2,002 | 0.5% | (2,500) | (2,500) | (2,500) | 100.0% | 18,555 | (498) | -2.7% |
| Wielsville | 765310 | CEC | 10 | | 0.0% | 7,359 | 246 | 3.3% | (1,900) | (1,890) | (1,900) | 100.5% | 5,459 | (1,654) | -30.3% |
| Weyerhauser | 769840 | CEC | | | 0.0% | 4,449 | (423) | -9.5% | (1,000) | (1,000) | (1,000) | 100.0% | 3,449 | (1,423) | -41.3% |
| Lake Apopka | 773813 | CEC | 31 | (0) | -0.3% | 4,701 | (0) | 0.0% | | 31 | (0) | 100.0% | 4,701 | (0) | 0.0% |
| Cecos | 770661 | CEC | | | 0.0% | 3,904 | 163 | 4.2% | (900) | (900) | (900) | 100.0% | 3,004 | (737) | -24.5% |
| Sikes | 760697 | CEC | 44 | | | 118,171 | 26,241 | 22.2% | | 44 | | | 118,171 | 26,241 | 22.2% |
| Total | | | 985 | 245 | 24.9% | 224,182 | 27,083 | 12.5% | (11,400) | (10,415) | (11,155) | 107.1% | 212,762 | 16,583 | 7.8% |
| | | | | | | | | | | | | | | | |
| **Acquired Claims** | | | | | | | | | | | | | | | |
| Occidental - OHM | 915275 | CEC | | | 0.0% | 13,731 | 823 | 6.0% | (1,400) | (1,400) | (1,400) | 100.0% | 12,331 | (577) | -4.7% |
| Penn Mines | 920395 | CEC | 501 | | 0.0% | 9,776 | 200 | 2.0% | (2,400) | (1,500) | (2,400) | 126.6% | 7,376 | (2,200) | -29.8% |
| Severson | 9E+07 | DOD | 276 | 30 | 10.7% | 11,598 | 167 | 1.4% | 1,100 | 1,378 | 1,130 | 82.1% | 12,726 | 1,267 | 9.9% |
| Monticello | 918060 | ENO | 3,142 | (9) | -0.3% | 57,692 | (1,438) | -2.5% | (6,300) | (3,158) | (6,300) | 199.8% | 51,692 | (7,738) | -15.0% |
| Earth Tech | 45/199 | DOD | 7,361 | 4,299 | 58.4% | 58,044 | 15,608 | 26.9% | (1,500) | 5,061 | 2,799 | 47.3% | 56,544 | 14,108 | 25.0% |
| Double Eagle | 920593 | CEC | 1 | | 0.0% | 5,641 | 373 | 6.6% | (300) | (269) | (300) | 100.4% | 5,341 | 72 | 1.4% |
| Nortlok | Benesco | OUT | | | #DIV/0! | 15,531 | (1,000) | -6.4% | (1,500) | (1,500) | (1,500) | 100.0% | 14,031 | (2,500) | -17.0% |
| Total | | | 11,281 | 4,320 | 38.3% | 172,413 | 14,734 | 8.5% | (12,300) | (1,019) | (7,080) | 782.9% | 160,113 | 2,434 | 1.5% |

XYZA 002800899

The IT Group
Project Claims & A/R Analysis
As of December 1, 2000
$(000's)

| Project Name | Project N | Bus Line | [Amounts before write offs] Year to Date | | | Project to Date | | | Write Offs | [Amounts adjusted for write offs] Year to Date | | | Project to Date | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | Revenue | Margin | Margin % | Revenue | Margin | Margin % | | Revenue | Margin | Margin % | Revenue | Margin | Margin % |
| **Acquired A/R Issues** | | | | | | | | | | | | | | | |
| LandDv | 990026 | DCD | (250) | (250) | 100.0% | 1,750 | 1,750 | 100.0% | (1,800) | (2,050) | (2,050) | 100.0% | (50) | (50) | 100.0% |
| Emcon Ind. Svcs | 808301 | CEC | 735 | (200) | -27.2% | 735 | (200) | -27.2% | (500) | 235 | (700) | -298.3% | 235 | (700) | -298.3% |
| Wilco Trainer | 777950 | CEC | (47) | (48) | 102.2% | 1,216 | 379 | 31.1% | (300) | (347) | (348) | 100.3% | 916 | 79 | 8.6% |
| Chemical Sales | 770746 | CEC | 405 | (226) | -55.7% | 4,735 | (200) | -4.2% | (1,200) | (796) | (1,426) | 179.3% | 3,535 | (1,400) | -39.6% |
| SPYWAD SSA | 776693 | CEC | 1,032 | (567) | -55.0% | 10,065 | 1,860 | 18.6% | (1,000) | 32 | (1,567) | -874.3% | 9,065 | 860 | 9.5% |
| Hercules perin La | 777075 | CEC | 498 | (268) | -53.9% | 2,605 | (169) | -6.3% | (400) | 90 | (568) | -665.2% | 2,205 | (569) | -24.9% |
| Button Gwinett La | 703109 | CEC | 38 | (2) | -5.2% | 413 | 71 | 17.1% | (300) | (262) | (302) | 115.4% | 113 | (229) | -202.3% |
| Western Process | 918308 | CEC | (9) | (1) | 5.3% | 11,007 | 3,311 | 30.1% | (200) | (209) | (200) | 95.7% | 10,807 | 3,111 | 28.8% |
| Pfister Wastewtr | 771714 | CEC | 6 | | 0.0% | 1,263 | 162 | 12.9% | (200) | (194) | (200) | 102.9% | 1,063 | (30) | -3.5% |
| Georgia Pacific-R | 782180 | CEC | (8) | (1) | 23.0% | 244 | 48 | 19.5% | (100) | (106) | (101) | 95.6% | 144 | (52) | -36.2% |
| Parsons Landfill | 767661 | CEC | - | - | 0.0% | 1,338 | (814) | -60.8% | (100) | (100) | (100) | 100.0% | 1,238 | (914) | -73.8% |
| SMCA/WWTP | 108159 | CEC | (283) | (196) | 63.6% | 3,509 | 375 | 10.4% | (300) | (483) | (398) | 70.4% | 3,399 | 175 | 5.1% |
| CK-Wilco | 803040 | CEC | 2 | 1 | 43.0% | 2 | 1 | 43.0% | (100) | (98) | (99) | 101.4% | (98) | (99) | 101.4% |
| B.J. Landfill | 782603 | CEC | 13 | (9) | -2.3% | 388 | 39 | 10.0% | (100) | (97) | (100) | 115.0% | 288 | (61) | -21.2% |
| Zeneca AG-Rem | 797307 | CEC | 39 | (8) | -21.1% | 817 | 143 | 17.5% | (100) | (61) | (108) | 176.7% | 717 | 43 | 6.0% |
| Dupont | 776411 | CEC | (8) | (8) | 100.0% | 1,030 | 48 | 4.7% | (100) | (108) | (108) | 100.0% | 930 | (52) | -5.5% |
| Sanders (Beneco) | Beneco | OUT | | #DIV/0! | -81.9% | 1,954 | 679 | 34.6% | (500) | (500) | (500) | 100.0% | 1,354 | 79 | 5.6% |
| **Total** | | | 2,154 | (1,764) | | 41,220 | 6,803 | 16.5% | (7,300) | (4,546) | (8,464) | 100.2% | 34,530 | 103 | 0.3% |
| | | | | | | | | | | | | | | | |
| **Oracle Unbilled & Cost. Reim.** | | | | | | | | | | | | | | | |
| Howard | DOD | | | | | | | | 100 | | | | | | |
| Phelps | DOD | | | | | | | | (800) | | | | | | |
| Razor | DOD | | | | | | | | (300) | | | | | | |
| Kenney | DOD | | | | | | | | (2,000) | | | | | | |
| CIP | CEC | | | | | | | | (1,500) | | | | | | |
| PEG | CEC | | | | | | | | (1,500) | | | | | | |
| Other | Other | | | | | | | | (1,000) | | | | | | |
| Add'l Reserve | | | | | | | | | 2,000 | | | | | | |
| **Total** | | | | | | | | | (5,000) | | | | | | |
| | | | | | | | | | | | | | | | |
| Chl Mel | INT | | | | | | | | (2,000) | | | | | | |
| | | | | | | | | | | | | | | | |
| **Cumulative Total** | | | 14,420 | 2,801 | 19.4% | 437,825 | 49,520 | 11.3% | (38,000) | (15,960) | (27,599) | 172.7% | 407,425 | 19,120 | 4.7% |

XYA 00209000900

**The IT Group**
**Project Claims & A/R Analysis**
**As of December 1, 2000**
**$(000's)**

| Project No. | Project Name | Run Line | Amounts before write off — Year to Date Revenue | Margin | Margin % | Project to Date Revenue | Margin | Margin % | Write Offs | Amounts adjusted for write off — Year to Date Revenue | Margin | Margin % | Project to Date Revenue | Margin | Margin % |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Legacy Claims** | | | | | | | | | | | | | | | |
| 767445/772802 | Ford/Willow Run | CEC | 648 | (6) | -0.7% | 54,403 | (354) | -0.5% | (1,000) | (354) | (1,006) | 213.9% | 53,403 | (1,260) | -2.4% |
| 515550 | Occidental - IT Only | CEC | 4 | (6) | | 1,734 | (240) | -9.8% | (580) | (596) | (400) | 100.0% | 1,734 | (820) | -47.8% |
| 768303 | Coakley | CEC | 240 | 250 | 100.3% | 2,717 | 247 | 3.2% | (3,500) | (3,251) | (3,250) | 100.0% | 4,217 | (3,253) | -77.1% |
| 305975 | American Creosote/Cape Fear | CEC | - | - | 0.0% | 21,055 | 2,002 | 9.5% | (2,500) | (2,500) | (2,500) | 100.0% | 18,555 | (499) | -2.7% |
| 765316 | Wellsville | CEC | 10 | - | 0.0% | 7,359 | 248 | 3.3% | (1,840) | (1,840) | (1,900) | 100.0% | 5,459 | (1,854) | -30.3% |
| 769546 | Warehouse | CEC | - | - | 0.0% | 4,440 | (423) | -9.5% | (1,000) | (1,000) | (1,000) | 100.0% | 3,449 | (1,423) | -41.3% |
| 773913 | Lake Apopka | CEC | 31 | (6) | -0.3% | 4,101 | - | 0.0% | - | 31 | 0 | -0.3% | 4,791 | 0 | 0.0% |
| 770661 | Cecos | CEC | - | - | 0.0% | 3,604 | 163 | 4.2% | (900) | (900) | (900) | 102.0% | 3,004 | (737) | -24.5% |
| 760597 | Sikes | CEC | 44 | - | 0.0% | 118,171 | 26,241 | 22.2% | - | 44 | 0 | 0.0% | 118,171 | 26,241 | 22.2% |
| | **Total** | | 685 | 245 | 24.9% | 224,182 | 27,083 | 12.5% | (10,415) | (11,150) | (11,155) | 107.1% | 212,782 | 16,583 | 7.8% |
| **Acquired Claims** | | | | | | | | | | | | | | | |
| 915275 | Occidental - OHM Only | CEC | 501 | - | 0.0% | 13,731 | 833 | 6.0% | (1,400) | (1,400) | (1,400) | 100.0% | 12,331 | (977) | -4.7% |
| 920388 | Penn Mines | CEC | 278 | 30 | 10.7% | 9,776 | 200 | 2.0% | (2,400) | (1,000) | (2,400) | 126.4% | 7,276 | (2,200) | -28.6% |
| 87115520 | Stevenson | DOO | 3,142 | - | -0.3% | 11,938 | 187 | 1.6% | 1,100 | 1,316 | 1,130 | 82.1% | 12,788 | 1,287 | 9.3% |
| 918090 | Monticello | ENO | - | - | 0.0% | 57,992 | (1,438) | -2.5% | (6,300) | (3,158) | (6,300) | 199.8% | 51,692 | (7,738) | -15.0% |
| 990045/990048 | Earth Tech | DOO | 7,361 | 4,249 | 58.4% | 53,944 | 15,608 | 28.9% | (199) | 5,861 | 2,709 | 47.3% | 56,544 | 14,108 | 25.0% |
| 920503 | Double Eagle | CEC | 1 | - | 0.0% | 5,341 | 373 | 6.9% | (900) | (199) | (900) | 100.4% | 5,341 | 73 | 1.4% |
| Bemco | Norfolk | OUT | - | - | 0.0% | 15,531 | (1,000) | -6.4% | (1,500) | (1,509) | (1,509) | 100.0% | 14,031 | (2,500) | -17.8% |
| | **Total** | | 11,283 | 4,310 | 39.3% | 172,413 | 14,734 | 8.5% | (12,300) | (1,019) | (7,860) | 762.8% | 160,113 | 2,434 | 1.5% |
| **Acquired A/R Issues** | | | | | | | | | | | | | | | |
| 890076 | LandOH | DOO | (250) | (250) | 100.0% | 1,750 | 1,750 | 100.0% | (1,800) | (2,050) | (2,050) | 100.0% | (50) | (50) | 100.0% |
| 806301 | Emcon Ind. Svcs | CEC | 735 | (200) | -27.2% | 135 | (30) | -27.2% | (500) | 235 | (700) | -298.3% | 235 | (700) | -298.3% |
| 777950 | Wilco Trainer | CEC | (47) | (46) | 102.3% | 1,218 | 379 | 31.1% | (900) | (947) | (346) | 100.3% | 3,535 | (1,400) | -39.6% |
| 765746 | Chemical Select | CEC | 425 | (276) | -55.7% | 4,735 | (200) | -4.2% | (1,300) | (795) | (1,424) | 179.3% | 9,005 | 860 | 9.5% |
| 777083 | SFVWMD SSA | CEC | 1,032 | (567) | -55.0% | 10,005 | 1,860 | 18.6% | 22 | 22 | (1,567) | -674.3% | 2,245 | (560) | -24.9% |
| 777975 | Hercules paint LandOill | CEC | 498 | (264) | -53.3% | 2,685 | (163) | -6.3% | (668) | 58 | (668) | -885.2% | 113 | (228) | -202.3% |
| 765109 | Sutton Oobraat LandOill | CEC | 38 | (1) | -5.2% | 413 | 71 | 17.1% | (300) | (201) | (302) | 115.4% | 10,807 | (229) | -3.5% |
| 916338 | Western Processing | CEC | 6 | (1) | 5.3% | 11,007 | 3,311 | 30.1% | (200) | (194) | (200) | 102.5% | 1,063 | (38) | -30.2% |
| 771714 | Pfister Wastewater Lagoon | CEC | (6) | 0.0% | 162 | 162 | 12.3% | (200) | (198) | (201) | 95.6% | 144 | (52) | -73.4% |
| 782180 | Georgia Pacific-Rem | CEC | (6) | (1) | 21.6% | 244 | (816) | -50.3% | (100) | (108) | (101) | 100.0% | 1,238 | (914) | -73.4% |
| 761661 | Parsons Landfill | CEC | (230) | (186) | 81.5% | 1,338 | 375 | 10.4% | (100) | (407) | (346) | 74.4% | 3,399 | 175 | 5.1% |
| 103158 | SMCWWTP | CEC | 2 | - | 43.0% | 7 | - | 43.0% | (100) | (98) | (99) | 101.4% | (46) | (98) | 101.4% |
| 603040 | CK-Wilco | CEC | 13 | (8) | -2.3% | 308 | 39 | 43.0% | (100) | (87) | (100) | 115.6% | 280 | 78 | -21% |
| 793503 | B.J. LandOill | CEC | 12 | (6) | -21.1% | 817 | 143 | 17.5% | (100) | (88) | (100) | 174.7% | 717 | 43 | 6.0% |
| 797207 | Zaneca Agi-Rem Svc Op #1 | DOO | 39 | (8) | 100.0% | 1,030 | 49 | 4.7% | (100) | (108) | (108) | 100.0% | 930 | (52) | -5.5% |
| 716411 | Dupont | CEC | (8) | (8) | 100.0% | 1,364 | 579 | 24.5% | (500) | (98) | (650) | 100.0% | 1,364 | 73 | 5.8% |
| | Sandees (Bemco) | OUT | 2,154 | (1,764) | -81.9% | 41,230 | 9,603 | 18.5% | (7,300) | (4,549) | (8,444) | 186.3% | 34,530 | 103 | 0.3% |
| | **Total** | | 2,154 | (1,764) | -81.9% | 41,230 | 9,603 | 18.5% | (7,300) | (4,549) | (8,444) | 186.3% | 34,530 | 103 | 0.3% |
| | Oracle Unbilled & Cost. Reim. | | | | | | | | (5,000) | | | | | | |
| | **Total** | | | | | | | | | | | | | | |
| | Clut Mel | INT | | | | | | | (3,000) | | | | | | |
| | **Cumulative Total** | | 14,410 | 2,661 | 18.4% | 437,025 | 49,510 | 11.3% | (24,000) | (15,860) | (27,590) | 172.7% | 407,425 | 19,120 | 4.7% |

XYA 0800000901

The IT Group, Inc.
Issues List
FYE Dec 28, 2001

| | $ 000's | | | Prop. W/Os | | Note |
|---|---|---|---|---|---|---|
| | Yrs 98 & prior | 1999 | 2000 | 2001 Total | Total | |
| **Government Services:** | | | | | | |
| **HTRW:** | | | | | | |
| Coleman Evans | | | 650 | | 650 | Performance issues - cash acct. Strategy |
| EPA ERRS | 630 | | | | 630 | Client no bills - denied by client - Close out team |
| EPA ERRS | 1,550 | 250 | 70 | | 1,870 | Client no bills - denied by client - Close out team |
| Battelle | 300 | | | | 300 | Will be a charge to rate reserve or straight w/o |
| Rocky Mountain | | | 20 | | 20 | Settlement |
| Brookhaven | 23 | | | | 23 | All closed out |
| OHM | 12 | | | | 12 | Clean up |
| Monticello | 3,100 | | | | 3,100 | Cash acct. Strategy - hazards of litigation/ |
| Severson | 1,500 | | | | 1,500 | hazards of litigation/claim assessment change |
| Bunker Hill | | | 2,400 | | 2,400 | hazards of litigation/claim assessment change |
| Fernald | | | | 1,000 | 1,000 | Cash acceleration strategy/timing of revenue recognition |
| Tank 1A/Portsmouth Quadrant | | | | 725 | 725 | Performance issue |
| Billed A/R < 10K | 400 | | | | 400 | |
| Retainage | 50 | | | | 50 | |
| Unbilled A/R > 50K | 1,700 | | | | 1,700 | |
| Unbilled A/R < 50K | 300 | | | | 300 | |
| Georgia Tech | | | | 500 | 500 | Cash acceleration strategy |
| Hunter's Point | | | | 200 | 200 | This is a w/o of 50% of balance |
| Barbor's Point | | | | 500 | 500 | To be reflected with Equip Div. (Cash Acct. 0 to 500K) |
| Subtotal HTRW | 9,565 | 250 | 3,140 | 2,925 | 15,880 | |
| | | | | | | |
| **Govt Rate Reserves:** | | | | | | |
| Change in est. on billings | | | 2,000 | | 2,000 | |
| Ant. DCAA Audit adjust. | | | 1,000 | | 1,000 | |
| 2001 Fringe adjustments | | | | 2,000 | 2,000 | |
| Total govt rate adjustments | 0 | 0 | 3,000 | 2,000 | 5,000 | |
| | | | | | | |
| **Civil Works:** | | | | | | |
| Fort Sill | | | 2,100 | | 2,100 | |
| Pump Station 9A | | | | 1,400 | 1,400 | |
| Subtotal Civil Works | 0 | 0 | 2,100 | 1,400 | 3,500 | |
| | | | | | | |
| **Benecco:** | | | | | | |
| Norfolk | | | 2,500 | | 2,500 | |
| Sanders | | 550 | | | 550 | |
| BEQ Brunswick | | | 400 | | 400 | |
| Mayport Exchange | | | | 950 | 950 | |
| FT Bliss | | | | 300 | 300 | |

IT-BOD-008650

BalShtRev1.xls
J. Pierucci

1

The IT Group, Inc.
Issues List
FYE Dec 28, 2001

| | Yrs 98 & prior | 1999 | 2000 | 2001 Total | Prop. W/Os Total |
|---|---|---|---|---|---|
| | | | $ 000's | | Prop. W/Os |
| FT Drum 1-5 (DR) | | | 469 | 400 | 869 |
| FT Hood | | | 150 | 140 | 290 |
| Hill | | | 85 | 89 | 174 |
| Rutgers | | | 265 | 200 | 465 |
| Wright Pat | | | 80 | 88 | 168 |
| Chesapeake (Annapolis CH1200) | | | 229 | 200 | 429 |
| Chesapeake (Bethesda CH1800) | | | 106 | 100 | 206 |
| Chesapeake (Dahlgren CH1700) | | | 182 | 150 | 332 |
| Chesapeake (Indianhead CH1600) | | | 100 | 94 | 194 |
| Chesapeake (Navy Yard CH1300) | | | 100 | 71 | 171 |
| Chesapeake (Quantico CH1500) | | | 68 | 60 | 128 |
| FT Bragg | | | 280 | 250 | 530 |
| Subtotal Baneco | 0 | 550 | 5,014 | 3,062 | 8,656 |
| | | | | | |
| Facilities Management | | | | | 0 |
| | | | | | |
| HTRW Cost Accrual | | | | 205 | 205 |
| Baneco Cost Accrual | | | | 245 | 245 |
| Subtotal Cost Accrual | | 800 | | 450 | 450 |
| | | | | | |
| Total Government Services | 9,565 | 550 | 13,254 | 0,887 | 33,486 |
| | | | | | |
| CEC Business Line | | | | | |
| | | | | | |
| CEC Engineering: | | | | | |
| | | | | | |
| CEC Engineering South: | | | | | |
| Chevron | | | 50 | 50 | 100 |
| Verizon | | | 100 | | 100 |
| Bankruptcy | | | 13 | | 13 |
| South Engineering > 360 | | 200 | 125 | | 325 |
| Billed < 10K | | | 200 | 50 | 250 |
| Subtotal billed | 0 | 200 | 488 | 100 | 768 |
| | | | | | |
| 2% Reserve on State Reimburs. | | 210 | 210 | | 210 |
| Category Four | | | 50 | 50 | 50 |
| City of Hammond | | | 35 | 35 | 35 |
| Carlton Fields | | | 25 | 25 | 25 |
| Landpark N/E Laundry | | | 35 | | 35 |

IT-BOD-008651

BaSchfRev1.xls
J. Pierson

2

12/3/01 8:23 PM

A    32

The IT Group, Inc.
Issues List
FYE Dec 28, 2001

12/3/01 8:23 PM

|  | $ 000's | | | Prop. W/Os | |
|---|---|---|---|---|---|
|  | Yrs 98 & prior | 1999 | 2000 | 2001 Total | Total |
| Unbilled < 25K |  |  |  |  |  |
| Subtotal unbilled: | 0 | 0 | 0 | 0 |  |
| Total CEC Engineering South |  | 200 | 708 | 305 | 1,393 |
|  |  |  |  |  |  |
| CEC Engineering West: |  |  |  |  |  |
| University of CA |  |  | 60 |  | 60 |
| PAC Bell and Equiva Services |  |  | 10 | 10 | 20 |
| Equiva |  |  | 35 |  | 35 |
| L.A. Unified School District |  |  | 20 |  | 20 |
| Phillips |  |  | 30 |  | 30 |
| PG& E Bankruptcy |  |  | 15 |  | 15 |
| USGypsum |  |  | 20 |  | 20 |
| Unocal |  |  | 20 |  | 20 |
| Category 5 - Equiva |  |  | 100 |  | 100 |
| Magnolia |  | 25 |  |  | 25 |
| Chevron |  |  | 15 |  | 15 |
| Reichold |  | 35 |  |  | 35 |
| Subtotal billed | 0 | 60 | 325 | 10 | 395 |
|  |  |  |  |  |  |
| Category 1 |  | 170 | 300 |  | 470 |
| Reichold/Lonestar |  |  | 55 |  | 55 |
| Martinez |  | 45 | 40 |  | 65 |
| Purity Oil |  |  | 60 | 225 | 225 |
| JWA |  |  |  | 20 | 60 |
| Goodwin |  |  |  | 30 | 20 |
| Equiva |  |  |  | 40 | 30 |
| Boeing |  |  |  | 400 | 40 |
| Purity Oil |  |  |  | 150 | 400 |
| Unbilled < 25K |  | 150 | 150 |  | 450 |
| Subtotal unbilled | 0 | 305 | 605 | 865 | 1,835 |
|  |  |  |  |  |  |
| Total CEC Engineering West | 0 | 425 | 930 | 675 | 2,230 |
|  |  |  |  |  |  |
| CEC Engineering North |  |  |  |  |  |
| Willco | 55 |  | 1,000 | 1,000 | 777 |
| Brookhil |  | 15 |  |  | 55 |
| Buckeye Asbestos | 33 |  |  |  | 15 |
| Glenn Springs | 25 |  |  |  | 33 |
| Chem Sales |  |  |  |  | 25 |

3

BallShtRev1.xls
J. Pierson

IT-BOD-008652

A   33



The IT Group, Inc.
Issues List
FYE Dec 28, 2001

| | $ 000's | | | | Prop. W/Os |
|---|---|---|---|---|---|
| | Yrs 98 & prior | 1999 | 2000 | 2001 Total | 2001 Total |
| Wheeling Pittsburgh | | | | 1,100 | 1,100 |
| Gypsum | | | | 10 | 10 |
| City of Rochester | | | | 20 | 20 |
| General Motors | | | | 20 | 20 |
| Shell | | | | 23 | 23 |
| Sackxoff | | | 14 | | 14 |
| Treescarce | | 26 | | | 26 |
| Billed < 10K | | | | 150 | 150 |
| Subtotal billed | 113 | 41 | 1,014 | 1,323 | 2,491 |
| ANL Landfill | 240 | | | | 240 |
| Bayer | | | 175 | | 175 |
| SARSS | | | | 33 | 33 |
| Category 3 - other | | | | 93 | 93 |
| Category 3 - Dupont | | | | 26 | 26 |
| Occidental | 860 | | | | 860 |
| TBS - 1E | 92 | | | | 92 |
| PQS | | | | 45 | 45 |
| GM | | | | 34 | 34 |
| United Tech | | | | 20 | 20 |
| National Fuel | | | | 30 | 30 |
| Metropolitan | | | | 15 | 15 |
| United Tech | | | | 40 | 40 |
| Unbilled < 25K | | | 180 | 200 | 360 |
| Retainage | | | | | 0 |
| Subtotal unbilled | 1,192 | 0 | 335 | 536 | 2,063 |
| Total CEC Engineering North | 1,305 | 41 | 1,349 | 1,859 | 4,554 |
| Total CEC Engineering | 1,305 | 656 | 3,077 | 3,129 | 6,177 |
| CEC Construction: | | | | | |
| Southeast (Gulf): | | | | | 0 |
| Flamingo | | | 160 | 90 | 250 |
| Norfolk Southern | | 275 | | | 275 |
| Phillips | | | | | 0 |
| Phillips Petroleum Bus Line | 25 | | | | 25 |
| South Florida WM/DSA | | | | 1,025 | 1,025 |
| Blinking | | | | 45 | 45 |
| East Gator | | | | 50 | 50 |

4

BaSJsIRev1.xls
J. Pierson

IT-BOD-008653

12/3/01 6:23 PM

A    34



**The IT Group, Inc.**
**Issues List**
**FYE Dec 28, 2001**

12/30/01 6:23 PM

| | $000's | | | | Prop. W/Os |
| --- | --- | --- | --- | --- | --- |
| | Yrs 98 & prior | 1999 | 2000 | 2001 Total | 2001 Total |
| Hubbard Construction Perf. | | 210 | | | 210 |
| South Florida WWADL10L12 | | 250 | | | 250 |
| Unbilled | | | | | 0 |
| Lake Apopka | 650 | | | | 650 |
| Indian Trail | 265 | | | | 265 |
| Florida USSC | 100 | | | | 100 |
| Sun | | | 75 | 75 | 75 |
| FDOT | | | 275 | 30 | 350 |
| Osceola Farms | | | | | 30 |
| USA Waste | | 30 | | 1,200 | 30 |
| Wingate | | | 80 | | 1,200 |
| Rankin | | | | | 80 |
| Grove Gate | | | | 300 | 300 |
| American Equity | | | | 50 | 50 |
| ThermoRetec | | | | 500 | 500 |
| Polk County | | | | 600 | 600 |
| SFWMD 3/4 Supply | | | | 280 | 250 |
| SFWMD 3/4 Borrow | | | | 150 | 150 |
| Below 25K-Unbilled | | 100 | 100 | 100 | 300 |
| Total SouthEast Const (Gulf) | 1,040 | 805 | 690 | 4,475 | 7,070 |
| | | | | | |
| North Construction: | | | | | |
| ENCAP | | | 330 | | 330 |
| CBS | | | 50 | | 50 |
| Waste Mgmt | | 120 | | | 120 |
| MillCreek | | | 1,000 | 30 | 1,000 |
| Safety Light | | | 100 | | 100 |
| Elfled < 10K | | | | | 30 |
| Unbilled | | | | | 0 |
| St Michael the Archangel | | 160 | | 100 | 160 |
| Ray Hart | | | 40 | | 140 |
| PAS NYC | | | 100 | | 100 |
| NYC Transit | | | 80 | | 90 |
| NY Air Brakes | | | | 60 | 60 |
| Buffalo Airport | | | | 30 | 30 |
| OHM Beavers | 35 | | | | 35 |
| PA DEP | | | | 30 | 30 |
| Palmetto Wood | | | | 30 | 30 |
| PSE & G | | 1,000 | 1,000 | 1,000 | 2,000 |
| Hercules | | | | | 2,000 |
| | | | | 5 | |

IT-BOD-008654

BalShtRev1.xls
J. Pierson

The IT Group, Inc.
Issues List
FYE Dec 20, 2001

12/30/01 6:23 PM

| | $ 000's | | | | Prop. W/Os |
| | Yrs 08 & prior | 1999 | 2000 | 2001 Total | |
|---|---|---|---|---|---|
| Exxon Bayway | | | 250 | | 250 |
| Chemtol | | 350 | | 13 | 13 |
| Port Auth./Echo/Stanford | | | 25 | | 25 |
| PPG Pulverizing | | | 0 | | 350 |
| Wycoff (Atlas LandBank) | | | 200 | | 200 |
| Unalloc < 25K | | | 75 | 75 | 150 |
| **Total North Construction** | **0** | **0** | **330** | **0** | **330** |
| | | | | | |
| **South Construction:** | | | | | |
| White | 76 | | | | 76 |
| CHM | 46 | | | | 46 |
| Ell Atochem | 28 | | | | 28 |
| Bush Valley Landfill | | | 1,000 | | 1,000 |
| AHP Impoundment | | | | 35 | 35 |
| Hoechst | | | 20 | | 20 |
| Willow Run | 750 | | | | 750 |
| E-3 | | 100 | | | 100 |
| Kirby's Tire Fire | | | | 25 | 25 |
| Weldsville | 2,000 | | | | 2,000 |
| Category 5 | 180 | 10 | | | 190 |
| Ralph Gray Trucking | 19 | | | | 19 |
| FDEP Orange | | | 29 | | 29 |
| Kirby's Tire Fire | | | | | 25 |
| Kopper's | | | 32 | | 32 |
| IT/WEL | 50 | | | | 50 |
| Old Rust (verify) | 800 | | | | 800 |
| Clayton | 28 | | | | 28 |
| Pacific Env. Grp | 25 | | | | 25 |
| Sykas | 1,000 | | | | 1,000 |
| Weyernauser | 100 | | | | 100 |
| Unocal | | | | | 0 |
| **Total South Construction** | **5,163** | **1,740** | **5,671** | **1,448** | **14,022** |
| | | | | | |
| **Major Programs/Midwest:** | | | | | |
| Asarco | | 150 | | | 150 |
| Schlumberger | 35 | | | | 35 |
| Alcoa | 15 | | | | 15 |
| Old Inger | 300 | | | | 550 |
| Nicor | | | 600 | 250 | 1,200 |
| IMC | | | 1,750 | 600 | 3,500 |
| | | | | 1,750 | |
| | | | | 6 | |



IT-BOD-008655

BudShtRev1.xls
J. Plaxton

A  36

12/3/01 6:23 PM

The IT Group, Inc.
Issues List
FYE Dec 28, 2001



| $ 000's | Yrs 98 & prior | 1999 | 2000 | 2001 Total | Prop. W/Os |
|---|---|---|---|---|---|
| Total Major Programs/Midwest | 350 | 150 | 2,350 | 2,000 | 5,450 |
| West | | | | | |
| Emcon Ind. Svcs | | | 170 | | 170 |
| Lockheed Martin | | 100 | 100 | | 200 |
| CR Briggs | | | | 270 | 270 |
| Fresno | | | | 2,000 | 2,000 |
| Intl Paper | | 70 | | | 70 |
| Parsons | | | | 325 | 325 |
| Chevron | | | 180 | | 180 |
| Telache | | | 40 | | 40 |
| Penn Mines | 500 | | | 1,000 | 500 |
| Cost Accrual | | | 450 | 450 | 1,000 |
| Eng MSA | | | | 35 | 900 |
| | | | | | 35 |
| Total West Construction | 500 | 170 | 950 | 4,080 | 5,700 |
| Aberdeen Proving Grounds | | | | | |
| Total CEC Construction | 7,053 | 2,925 | 9,691 | 12,603 | 32,572 |
| Total CEC Eng & Const. Total | 8,358 | 3,591 | 13,088 | 15,732 | 40,749 |

| Consulting & Technology: | | | 1999 | 2000 | 2001 Total | Prop. W/Os |
|---|---|---|---|---|---|---|
| Unbilled A/R | | | 298 | | 348 | 1,148 |
| Uncollectable A/R - System Issues | | | | 504 | | 368 |
| Disputes litigation | | | | 358 | | 250 |
| Funding Issues | | | | 125 | 125 | 0 |
| Amounts under $200K | | | | | | |
| Subtotal unbilled | | | 298 | 995 | 473 | 1,764 |
| Billed A/R: | | | | | | |
| Slow Payer identified uncollectable | | | | | 100 | 100 |
| Rate Adjustments | | | | | 50 | 50 |
| Client disputes | | | | | 339 | 339 |
| Bankruptcy | | | | | 140 | 140 |
| Claims | | | | | 100 | 100 |
| Uncollectable A/R - System Issues | | | | | 133 | 133 |
| Claims | | | | | 100 | 100 |

IT-BOD-008656

7

BalShtRev1.xls
J. Pierson

A    37

12/3/01 8:23 PM

**The IT Group, Inc.**
**Issues List**
**FYE Dec 28, 2001**

$000's

| | Yrs 98 & prior | 1999 | 2000 | 2001 Total | Prop. W/Os |
|---|---|---|---|---|---|
| E-COM - litigation (claim) | | | 1,100 | 1,100 | 1,100 |
| Amounts under $10K | | 206 | | 962 | 2,662 |
| Subtotal billed | 0 | 206 | 1,100 | 962 | |
| Writeoff earnest payment | | | 110 | 110 | 110 |
| Total Consulting & Technology | 0 | 206 | 2,205 | 1,435 | 3,935 |
| | | | | | |
| **Solid Waste:** | | | | | |
| Bankruptcy | | 250 | 1,020 | 1,020 | 1,020 |
| Delaware SW- Estimating | | | 500 | | 500 |
| Delaware SW- Poor Sub Perf | | | 515 | | 515 |
| Delaware SW-Engineering Design | | | 540 | 850 | 650 |
| ET - Claim | | | | 409 | 982 |
| Out of Scope Work | 33 | | | 138 | 138 |
| Product Failure Warranty | | | | 745 | 745 |
| ET Investment | | | | 220 | 745 |
| Accounts Payable | | | | | 220 |
| Inventory Obsolete | 30 | | 103 | | 133 |
| Total Solid Waste | 313 | | 2,678 | 2,162 | 5,153 |
| | | | | | |
| **International:** | | | | | |
| ST Fellicone | | | | 1,700 | 1,700 |
| Biotepp Bankruptcy | | | | 100 | 100 |
| W/Os > 100K | | | 35 | | 50 |
| Billed > 10K < 100K | | | 150 | | 150 |
| Unbilled < 25K | | | | 200 | 200 |
| Docklands | | | 1,000 | 1,000 | 2,000 |
| OCA Claim | | | 450 | 450 | 900 |
| Fluor Daniel | | | | 175 | 175 |
| Doe Run | | | | 50 | 50 |
| Total International | 0 | | 1,635 | 3,675 | 5,325 |
| | | | | | |
| **Trans & Telecom:** | | | | | |
| Bankruptcy | | | 65 | 25 | 65 |
| Nextel | | | 20 | 20 | 45 |
| Federal Highway | | | 50 | 65 | 20 |
| Billed under $10K | | | 97 | 63 | 115 |
| Unbilled | | | 0 | 95 | 160 |
| Unbilled < 25K | | | | | 95 |

IT-BOD-008657

BalShtRev1.xls
J. Plesson

8

12/3/2001 6:23 PM

The IT Group, Inc.
Issues List
FYE Dec 28, 2001

| | $ 000's | | | | Prop. W/Dn |
|---|---|---|---|---|---|
| | Yrs 98 & prior | 1999 | 2000 | 2001 Total | Total |
| Rataleago | | | | | |
| Total Trans & Telecom | 0 | 0 | 232 | 268 | 500 |
| Equipment Division: | | | | | |
| Bulldozer maintenance | | | | 700 | 700 |
| Other equipment write-off | | | 680 | | 660 |
| Construction equip. (Research) | 250 | | 2,000 | | 2,000 |
| OHM Vision integration tng | | | | | 240 |
| Dell note receivable | 200 | | | 620 | 200 |
| Inventory | | | | | 1,120 |
| Inventory | | 160 | | | 160 |
| Cintas Chemical | | 115 | | | 115 |
| Computer issues | | 340 | 340 | | 680 |
| Furniture & telecom | | 1,510 | | | 1,510 |
| Obsolete/lost assets | | 355 | | | 355 |
| IMC Equip. | | | 500 | 500 | 500 |
| Total equipment division | 490 | 2,460 | 3,500 | 1,820 | 6,290 |
| Facilities: | | | | | |
| Year 2000 Special Charge | | | 1,000 | | 1,000 |
| Year 2001 Special Charge | | | | 3,300 | 3,300 |
| Total Facilities | 0 | 0 | 1,000 | 3,300 | 4,300 |
| Corporate: | | | | | |
| Corporate | | 3,300 | 1,000 | | 4,300 |
| Severance Charge | | | | | 0 |
| Total Corporate | 0 | 3,300 | 1,000 | 0 | 4,300 |
| Total Company Wide | 19,228 | 8,966 | 30,282 | 35,625 | 100,101 |

IT-BOD-008658

BalShtRev1.xls
J. Plateun

A    39

# EXHIBIT B TO SUBPOENA

The Itt Group
Child Projects (Company DOOTR)
Project Detail for Unbilled Balance Analysis

| PRI LAB Product | Product Name | Program | June 00 Unbld at | Nov 99 Unbld at | Q3 Estimate Potential Write off | Q4 Estimate Potential Write off | Total Estimate Potential Write off | Ilewson Unbld | Gov't Rate Invoiced | Other unbld | Earnings Charge | Collected | Unbld | Total | Acct/Client Int Adjustment | Tot Acct/Clnt Int Adjustment |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 919534 | Various Vendors HI | CEC | 163,948 | 163,743 | | | 163,948 | | | | | 45 | 30 | 163,743 | | |
| 919840 | HERNDON HOMES | CEC | (88,300) | | | | | | | | | | | | 30 | | (140,962) | (181,774) |
| 840001 | IT CORPORATION | CEC | 124,417 | 124,417 | 124,417 | 124,771 | | | | 124,417 | 124,417 | | 124,417 | | (181,774) | |
| 949241 | PYERADO | CEC | 132,782 | 138,829 | 15,651 | 4,000 | 120,782 | | | 129,782 | | 37 | 138,829 | | | |
| 919229 | IT CORPORATION Q S H | CEC | 4,900 | 4,900 | | | 4,900 | | | 4,900 | | | 4,900 | | | |
| 900002 | CONCOURSE E COM | CEC | 23,700 | 24,700 | | 23,700 | 23,700 | 23,700 | | | 1,000 | 24,700 | | | 0 | |
| 920741 | DERM PARKS PHASE I AU | CEC | 6,700 | 6,700 | | 6,700 | 6,700 | | | 8,700 | 8,700 | | 6,700 | | | |
| 920903 | DADE COUNTY AVIATION | CEC | 6,100 | 6,100 | | 6,100 | 6,100 | 1,800 | | 8,300 | 6,300 | | 8,100 | | | |
| 920724 | OEMATECH INC | CEC | (83,998) | | | | | | | | | (6,099) | (8,998) | | | |
| 990031 | PEPCO | CEC | (279,948) | (180,682) | | | | | | | (140,882) | (180,682) | | | |
| 990033 | WHEELAND-PITTSBURG ET | CEC | 311,361 | (181,774) | | | | | | | (181,774) | (181,774) | | | |
| Misc. - Shared Resources | | CEC | 771,245 | 616,718 | | | | | | 810,718 | 810,718 | | 816,718 | | 97,272 | |
| | | CEC - Total | 34,007 | 1,253,420 | 60,037 | 1,189,383 | 1,944,417 | 37,184 | | 254,398 | 1,253,420 | 254,378 | 7,444,428 | | (514,638) |

TRUST A0011124

TRUST 0011125
A   43

# EXHIBIT C TO SUBPOENA

THE IT GROUP, INC.
LARGEST CONTRACTS BY BUSINESS LINE
AS OF SEPTEMBER 28, 2001
(In 000's)

| BUSINESS LINE | DESCRIPTION | EXPIRATION DATE | CONTRACTED/ OBLIGATED BACKLOG | IDO/ UNOBLIGATED BACKLOG | TOTAL |
|---|---|---|---|---|---|
| GOVT SERVICES | USACE - SAC TERC II | 6/01/97-6/01/03 | 57,019 | 126,680 | 183,699 |
| | USACE KC TERC | 2/19/98-2/18/08** | 2,203 | 169,992 | 172,195 |
| | NAVY EFA WEST RAC II | 3/01/99-3/01/04 | 87,588 | 83,216 | 170,804 |
| | USACE SAD TERC | 5/17/96-5/17/06** | 50,524 | 119,304 | 169,828 |
| | USACE Fort Benning | 12/00 - 12/05 | 144,000 | - | 144,000 |
| | NAVY - LANTDIV RAC III | 1/22/98-1/21/05 | 21,028 | 115,792 | 137,720 |
| | AFCEE ENRAC | 4/27/01-04/27/0 | 4,350 | 75,768 | 80,118 |
| | USACE Baltimore TERC | 8/15/95-8/15/05** | 24,985 | 38,830 | 63,815 |
| | AFCEE 3P+ A&E | 6/01/00-06/01/10 | 3,938 | 58,371 | 62,309 |
| | USACE-Tulsa TERC | 08/17/00-08/16/0 | 10,574 | 50,352 | 60,926 |
| | NAVY PAC DIV - RAC II | 1/2/99-1/1/06 | 24,916 | 33,976 | 58,892 |
| | USACE Omaha TERC II | 09/30/03-09/30/0 | 1,560 | 55,496 | 57,056 |
| | USEPA ERRS Region III | /06/29/00-10/01/i | 885 | 55,809 | 56,694 |
| | USEPA -REGION IV | 06/17/99-06/17/0 | 673 | 54,680 | 55,353 |
| CEC | Iron Mountain | 10/00-12/30 | 210,029 | - | 210,029 |
| | El Paso Energy | 03/01-05/04 | 4,500 | 152,000 | 156,500 |
| FORT MEADE OUTSOURCING | Fort Meade | 04/01-04/51 | - | 536,158 | 536,158 |
| | Chesapeake 2000 | 05/00-05/05 | 12,231 | 115,686 | 127,917 |
| | Ft Benning | 03/00-03/05 | 1,621 | 55,191 | 56,812 |
| | MCDC Chesapeake | 08/99-08/04 | 7,567 | 47,343 | 54,910 |
| | N DIV IDIQ Family Housing | 05/00-05/05 | 3,515 | 49,008 | 52,523 |
| CONSULTING | USEPA - OATS | 11/15/00-11/14/0 | 1,274 | 17,987 | 19,261 |
| | | | 676,400 | 2,011,639 | 2,688,119 |

** Includes option years

F-4

A   45

Exhibit B

**EXHIBIT "B"**
**Signature Page**

Dated: February 15, 2006

GLANCY, BINKOW & GOLDBERG LLP
*Counsel for Plaintiffs*

By: ⟨signature⟩
Lionel Z. Glancy, Esq.
Robert M. Zabb, Esq.
1801 Avenue of the Stars, Suite 311
Los Angeles, California 90067
Telephone:  (310) 201-9150
Facsimile:  (310) 201-9160

Dated: February 15, 2006

LATHAM & WATKINS LLP
*Counsel for Defendants other than Harry Soose and
Anthony DeLuca*

By: ⟨signature⟩
Thomas L. Patten, Esq.
Laurie B. Smilan, Esq.
David A. Becker, Esq.
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
Telephone: (202) 637-2200
Facsimile: (202) 637-2201

Dated: February 15, 2006

DICKIE, McCAMEY & CHILCOTE, P.C.
*Counsel for Defendant Harry Soose*

By: ⟨signature⟩
Charles A. DeMonaco, Esq.
Richard J. Federowicz, Esq.
Kimberly L. Haddox, Esq.
Two PPG Place, Suite 400
Pittsburgh, PA  15222-5402
Telephone: (412) 281-7272
Facsimile: (412) 392-5367

Dated: February 15, 2006

ECKERT SEAMANS CHERIN & MELLOTT, LLC
*Counsel for Defendant Anthony DeLuca*

By: ⟨signature⟩
Mark A. Willard, Esq.
Robert V. Campedel. Esq.
600 Grant Street, 44th Floor
Pittsburgh, PA  15219
Telephone: (412) 566-6000

A    47

## CERTIFICATE OF SERVICE

I, Kathryn D. Sallie, Esquire, hereby certify that on this 22nd day of May, 2006, I caused copies of the foregoing *Appendix to Opening Brief in Support of the Motion of the Trustee for the IT Litigation Trust to Quash Subpoena* to be served upon the following parties in the manner indicated:

### VIA ELECTRONIC MAIL AND HAND DELIVERY

Brian D. Long, Esquire
Milberg, Weiss, Bershad & Schulman
919 North Market Street
Suite 980
Wilmington, DE 19801
Email: blong@milbergweiss.com

### VIA ELECTRONIC MAIL AND FIRST CLASS MAIL

Kwasi A. Asiedu, Esquire
Law Offices of Kwasi A. Asiedu
3858 Carson Street
Number 204
Torrance, CA 90503
Email: laskido@hotmail.com

Lionel Z. Glancy, Esquire
Michael Goldberg, Esquire
Robert Zabb, Esquire
Glancy & Binkow
1801 Avenue of the Stars
Suite 311
Los Angeles, CA 90067
Email: info@glancylaw.com

Richard J. Pocker, Esquire
Boies, Schiller & Flexner
777 North Rainbow Boulevard
Suite 350
Las Vegas, NV 89107
Email: rpocker@bsfllp.com

Mark A. Willard, Esquire
Robert V. Campedel, Esquire
Eckert, Seamans, Cherin & Mellott
600 Grant Street, 44th Floor
Pittsburgh, PA 15219
Email: mwillard@eckertseamans.com
Email: rcampedel@eckertseamans.com

Charles A. DeMonaco, Esquire
Kimberly L. Haddox, Esquire
Richard J. Federowicz, Esquire
Dickie, McCamey & Chilcote
Two PPG Place, Suite 400
Pittsburgh, PA 15222-5402
Email: cdemonaco@dmclaw.com
Email: khaddox@dmclaw.com
Email: rfederowicz@dmclaw.com

E. Powell Miller, Esquire
Miller Shea
950 West University Drive
Suite 300
Rochester, MI 48307
Email: epm@millershea.com

Steven A. Schwartz, Esquire
Chimicles & Tikellis , Esquire
361 West Lancaster Avenue
One Haverford Centre
Haverford, PA 19041
Email: steveschwartz@chimicles.com

Larry K. Elliott, Esquire
Cohen & Grigsby
11 Stanwix Street, 15th Floor
Pittsburgh, PA 15222-1319
Email: lelliott@cohenlaw.com

David A. Becker, Esquire
Thomas L. Patten , Esquire
Courtney S. Schorr, Esquire
Laurie B. Smilan, Esquire
Latham & Watkins
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004
Email: david.becker@lw.com
Email: tom.patten@lw.com
Email: courtney.schorr@lw.com
Email: laurie.smilan@lw.com

_____
Kathryn D. Sallie (No. 4600)