## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

THOMAS L. PAYNE, SID ARCHINAL,          )
GARY H. KARESH, JO ANN KARESH,          )
BELCA D. SWANSON AND MERLE K.           )        MISC No. 06-mc-00106 JJF
SWANSON, individually and on behalf     )
of all others similarly situated,       )
                                        )        THE UNITED STATES
　　　　　Plaintiffs,                    )        DISTRICT COURT FOR THE
　　v.                                   )        WESTERN DISTRICT OF
                                        )        PENNSYLVANIA
                                        )
ANTHONY J. DeLUCA, HARRY J. SOOSE       )        CA No. 02-1927
FRANCIS J. HARVEY, JAMES C. McGILL,     )
RICHARD W. POGUE, DANIEL A. D'ANIELLO,  )
PHILLIP B. DOLAN, E. MARTIN GIBSON,     )
ROBERT F. PUGLIESE, JAMES DAVID         )
WATKINS, AND THE CARLYLE GROUP,         )
                                        )
　　　　　Defendants.                    )
                                        )

## JOINT ANSWERING BRIEF TO MOTION OF THE TRUSTEE OF THE
## IT LITIGATION TRUST TO QUASH SUBPOENA

                                        SMITH, KATZENSTEIN & FURLOW LLP
                                        Roger D. Anderson (ID No. 3480)
                                        800 Delaware Avenue [19801]
                                        Post Office Box 410
                                        Wilmington, DE 19899-0410
                                        Telephone (302) 652-8400
                                        Facsimile (302) 652-8405
                                        E-mail randerson@skfdelaware.com
                                        *Attorneys for Harry J. Soose*

Charles A. DeMonaco, Esquire
Kimberly L. Haddox, Esquire
Richard J. Federowicz, Esquire
DICKIE, MCCAMEY & CHILCOTE
Two PPG Place, Suite 400
Pittsburgh, PA 15222-5402
Telephone (412) 281-7272
Facsimile (412) 392-5367
E-mail haddoxk@dmclaw.com

Dated: June 9, 2006

10014945.WPD

## TABLE OF CONTENTS

I.   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  STATEMENT OF THE NATURE AND STATE OF PROCEEDING . . . . . . . . . . . . . 3

III. SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

IV.  BACKGROUND FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

V.   ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

     A.   The Subpoena is Not Moot Because Judge Standish Still Has Jurisdiction
          Over The Payne Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

     B.   The Trustee's Motion Improperly Ignores and Attempts to Override Judge
          Standish's Order for Issuance of the Subpoena . . . . . . . . . . . . . . . . . . . . . 9

          1.   The Law of the Case and Comity Doctrines Apply to a
               Revisiting of Issuance of the Subpoena . . . . . . . . . . . . . . . 9

          2.   Judge Standish Ordered The Preservation Subpoena to be
               Issued in Response to an Extended History of Attempts by
               the Trustee to Destroy Documents . . . . . . . . . . . . . . . . . . 10

     C.   The Trustee's Assertion of Undue Burden Should be Rejected Because
          Judge Standish Duly Considered the Wording of the Subpoena and the
          Complexities of the Case Before Ordering the Parties to Serve the
          Subpoena . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

          1.   Judge Standish Was Fully Briefed on the Document
               Destruction Efforts . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

          2.   Judge Standish Reviewed the Subpoena Before Approving
               It . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

     D.   The Motion to Quash Would Improperly Undermine the Purpose of Judge
          Standish's Order, Which Was Intended to Restrict Any Other Court's
          Approval of the Trustee's Document Destruction . . . . . . . . . . . . . . . . . . 16

          1.   Granting the Motion Would Undermine Judge Standish's
               Order Which was Intended to Stop Any Other Court From
               Approving Document Destruction By The Trust . . . . . . . 16

E.    This Court, Like the Bankruptcy Court, Should Uphold the Third Circuit's Case Law Which Requires Preservation of Evidence . . . . . . . . . . . . . . 16

F.    The Trustee's Contentions About "Undue Burden" Are Largely Unsubstantiated . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

VI.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

# TABLE OF AUTHORITIES

## CASES

Blair v. Wills,
    112 Fed. Appx. 546 (8th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Capricorn Power Co., Inc. v. Siemens Westinghouse,
    220 F.R.D. 429 (W.D.Pa. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Christianson v. Colt Industries Operating Corp.,
    486 U.S. 800, 108 S.Ct. 2166,
    100 L.Ed.2d 811 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

City of El Paso v. S.E. Reynolds,
    887 F.2d 1103 (D.C. Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

Cohen v. Federal Deposit Ins. Co.,
    2003 WL 21419155 (E.D.Pa.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Construction Aggregates, Ltd. v. Joseph Paolino & Sons, Inc.,
    1991 WL 206751 (E.D.Pa.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Creative Resources Group of New Jersey, Inc. v.
    Creative Resources Group, Inc.,
        212 F.R.D. 94 (E.D.N.Y.2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

DIRECTV, Inc. v. Richards,
    2005 WL 1514187 (D.N.J.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Ford Motor Company v. Summit Motor Products, Inc.,
    930 F2d 277 (3rd Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Fujitsu Limited v. Federal Express Corp.,
    247 F.3d 423 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Hayman Cash Register Co. v. Sarokin,
    669 F.2d 162 (3d Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Hull v. Freeman,
    991 F.2d 86 (3d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

In re Adelphia Communications Securities Litigation,
    2003 WL 22358819 (E.D.Pa.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

In re: Continental Airlines,
        203 F.3d 203 (3d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

In re: Sealed Case No. 98-5062,
        141 F.3d 337 (D.C. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Lopez v. F&M Bank,
        90 Fed. Appx. 549, 550 (8th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Matter of Wechsler,
        121 F.Supp.2d 404 (D.Del. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

McCook Metals LLC v. Alcoa, Inc.,
        249 F.3d 330 (4th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Mondrow v. Fountain House,
        867 F.2d 798 (3d Cir.1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Munz v. Parr,
        972 F.2d 971 (8th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Non-Punitive Segregation Inmates of Holmesburg Prison v. Kelly,
        589 F. Supp. 1330 (E.D. Pa. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Public Interest Research Group of New Jersey,
        123 F.3d 111 (3d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Sullivan v. Dickson,
        283 F.2d 725 (9th Cir. 1960) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

U.S. v. Amerigroup Illinois, Inc.,
        2005 WL 3111972 (N.D.Ill.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 21

U.S. v. Wheeler,
        256 F.2d 745 (3d Cir. 1958) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

## STATUTES & RULES

Federal Rules of Civil Procedure
        45(c)(3)A)(iv) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Federal Rules of Civil Procedure
        Rule 26 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Federal Rules of Civil Procedure
    Rule 26(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Federal Rules of Civil Procedure
    Rule 34 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Federal Rules of Civil Procedure
    Rule 45 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Federal Rules of Civil Procedure
    Rule 59 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

Federal Rules of Civil Procedure
    Rule 59(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Private Securities Litigation Act of 1995
    ("PSLRA") . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 7, 11, 13, 15

## I.    INTRODUCTION

Plaintiffs and Defendants in Payne v. DeLuca, U.S.D.C., W.D. Pa. Case No. 02-1027 ("Payne") hereby jointly object to the motion of Alix Partners LLC, the trustee ("Trustee") of the IT Litigation Trust ("Trust") to quash a document preservation subpoena ("Subpoena"). Plaintiffs and Defendants (the "Parties") jointly served the Subpoena pursuant to the order of the presiding District Court judge in Payne, the Honorable Judge William L. Standish, which order was dated December 23, 2005.

The Trustee's Motion to Quash should be denied. The principal ground the Trust advances for quashing the Subpoena–that the Subpoena is "moot because the court in Payne recently dismissed the complaint–is ill-founded, because that court retains jurisdiction to decide motions for reconsideration and/or for leave to amend the complaint filed by Plaintiffs. Since Payne, and a corresponding case for an earlier Class Period captioned Glover v. DeLuca, U.S.D.C., W.D. Pa. Case No. 03-00288 ("Glover"), are both still pending before the District Court for the Western District of Pennsylvania, and since both of these cases are subject to appeal as well, the Subpoena is clearly not moot.[1]

The Trustee's alternative assertion that the Subpoena, even if not moot, should be quashed on the grounds of undue burden, is ill-considered because it would have this Court overrule an order of Judge Standish. In effect, the Trustee is asking this Court to second-guess Judge Standish's judgment that the documents specified in the Subpoena should be preserved in order to duly litigate

---

[1]After Defendants' motion to dismiss was granted in Payne, Plaintiffs filed a motion for reconsideration and a motion for leave to amend on May 15, 2006. Those motions are currently pending and Defendants have been ordered to respond on or before June 16, 2006. In addition, Defendants' motion to dismiss in Glover, a case which deals with an earlier class period but the same basic allegations, was fully briefed as of April 27, 2006 and remains currently pending.

a case of considerable complexity, which he has presided over since 2002.

In its Motion, the Trustee fails to mention its unsuccessful efforts to gain the imprimatur of the United States Bankruptcy Court for the District of Delaware ("Delaware Bankruptcy Court" or "Bankruptcy Court") for its proposed plan to abandon and destroy documents, which would result in destruction of relevant evidence. Having been advised of the Trustee's efforts before the Bankruptcy Court by the Parties, Judge Standish not only ordered issuance of the Subpoena, but reviewed and approved it before permitting it to be served. Now, the Trustee is effectively seeking that this Court stand by and allow the destruction of documents which both the Bankruptcy Court and Judge Standish refused to permit.

The Trustee had every opportunity to cooperate with the Parties and eliminate documents shown to be irrelevant to the securities litigation in the lengthy proceedings before the Bankruptcy Court which led the Parties to seek issuance of the Subpoena. Moreover, the Trustee had notice of the proceedings before Judge Standish leading to issuance of the Subpoena. Had the burden been as overwhelming as the Trust now asserts, it could have participated in those proceedings, but chose not to. Indeed, the Trustee's counsel (the Bayard Firm and White & Case) each was provided a copy of Judge Standish's December 23, 2005 order prior to issuance of the Subpoena. In this unique situation, the most appropriate approach would be for the Trustee to raise its objections before Judge Standish, who could then determine to what extent he would be willing to revisit his prior decision.

Finally, the Trust initiated a civil action in the U.S. District Court for the District of Delaware against former officers and directors of the IT Group, Inc. and a major shareholder of IT Group. That action, docketed at No. 04-CV-1268 before U.S. District Judge Jordan (the "Trust Action"), includes allegations that overlap with the claims made by the Plaintiffs in the Western District of

Pennsylvania. Independent of whatever obligations are imposed upon the Trust with respect to the instant preservation Subpoena, the Trust, as a Plaintiff in the Trust Action, has the obligation to preserve the very same documents that are the subject of its motion to quash. Curiously, the Trust's Opening Brief fails to disclose its pending action in the District Court or discuss, in any fashion whatsoever, the Trust's independent obligation as a party plaintiff to preserve relevant evidence and the effect of that obligation on the Trust's undue burden argument.

If this Court does not find the above factors – the continuing jurisdiction of the District Court in the Western District of Pennsylvania over the Payne case, Judge Standish's order to serve the Subpoena, and the Trustee's ongoing obligations to preserve documents for its own case – to be dispositive in denying the motion to quash, the Parties request leave for additional briefing – as the Court may find necessary – to discuss the appropriateness of the scope of the Subpoena in view of the detailed allegations in the current Payne complaint.

## II.    STATEMENT OF THE NATURE AND STATE OF PROCEEDING

In the IT Group bankruptcy proceedings, the Trustee filed successive motions with the Delaware Bankruptcy Court in August 2004, August 2005 and October 2005, seeking the Court's authorization to destroy documents. Both Plaintiffs and Defendants in Payne objected to these efforts.

In response to the third motion, on November 4, 2005, Plaintiffs filed a motion to lift the PSLRA stay of discovery with Judge Standish, the Judge presiding over the securities litigation, and informed the Trustee and the Bankruptcy Court of the pending motion. The Trustee chose not to participate in those proceedings.

The Defendants opposed Plaintiffs' motion to lift the stay, but moved for issuance of a

document preservation subpoena. Judge Standish approved the Defendants' motion on December 23, 2005. Upon submission of a proposed subpoena, on January 9, 2006, the <u>Payne</u> court approved its issuance and ordered it to be served.

In a succession of hearings culminating almost concurrently with the proceedings leading to issuance of the Subpoena in <u>Payne</u>, the Delaware Bankruptcy Court concluded that the Trustee's motion to destroy documents would not be granted. Taking into account the objections of the <u>Payne</u> Plaintiffs and Defendants and other interested parties, the Bankruptcy Court in hearings held on November 16, 2005 and December 27, 2005 declined to grant the Trustee's motion absent the consent of all interested parties and strongly questioned whether it maintained the authority to approve the Trustee's request to destroy documents relevant to pending litigation. Subsequently, in a motion approved by Bankruptcy Court order in March 2006, the Trustee withdrew its motion to destroy documents from Bankruptcy Court consideration.

The securities litigation in the Western District of Pennsylvania is ongoing. While a motion to dismiss was granted on May 2, 2006 in <u>Payne</u>, Plaintiffs filed a motion for reconsideration and a motion for leave to amend on May 15, 2006. Those motions are still pending, and the case is subject to appeal. The related <u>Glover</u> case is also still pending before same District Court presiding over <u>Payne</u>.

## III.    SUMMARY OF ARGUMENT

1. Because the securities litigation is still pending the Subpoena is not moot.

2. Judge Standish, who presides over the securities litigation, reviewed and approved the Subpoena and ordered it to be served. The Trustee had notice of the proceedings leading to issuance of the Subpoena and chose not to participate. As a matter of comity, Judge Standish's order and his

determination regarding the propriety of the Subpoena should be respected and the Trustee should present to Judge Standish any attempt to reconsider his order.

3. The Subpoena was issued in response to successive motions by the Trustee before the Bankruptcy Court to gain approval for destruction of documents. In the current motion, the Trustee fails to even acknowledge its obligation to preserve documents relevant to pending litigation. The bankruptcy court declined to approve destruction of relevant documents, and this Court likewise should not take action which could be taken as approval of such document destruction.

4. The Subpoena was not unilaterally imposed on an unaware Trustee. In response to the Trustee's multiple motions for destruction of documents before the Bankruptcy Court, the Parties to Payne filed objections and appeared at Bankruptcy Court hearings, and repeatedly requested to meet with the Trustee to work out a method of preserving necessary documents. When this failed, and the Parties began the motion process before Judge Standish leading to the Subpoena, the Trustee had notice but chose not to participate.

5. The Trustee's claim that the Subpoena requires preservation of all its documents is unsubstantiated, and it is clearly false. Many documents fall outside the relevant time period, and the Trustee's counsel advised the Bankruptcy Court that many documents in storage are irrelevant to the pending litigation.

6. The Trustee never substantiates that its resources are inadequate to preserve the documents. In fact, the Trustee has recovered tens of millions of dollars and should have considerable resources. In view of the fact that IT Group was an enormous company with $1.4 billion in reported revenues for fiscal 2000, the document preservation obligation is reasonable.

7.   The Litigation Trust is the plaintiff in the matter captioned <u>IT Litigation Trust v.</u>
<u>D'Aniello et al.</u>, CA No. 04-1268, currently pending before the Honorable Kent A. Jordan in this
Court.   That case is brought against the former IT Group officers and directors and a major
shareholder for breach of fiduciary duty raises much the same factual issues as <u>Payne,</u> and thus
creates an independent duty of the Trustee to preserve documents.

## IV.    BACKGROUND FACTS

IT Group and related entities (hereinafter "Debtors") filed for protection under Chapter 11
of the U.S. Bankruptcy Code on January 16, 2002.   On May 3, 2002 the Debtors sold substantially
all their assets to the Shaw Group.  The Debtors' Chapter 11 plan, approved by the Bankruptcy Court
on April 5, 2004, established the Trust as a special-purpose entity which would pursue litigation in
order to create additional recovery for the benefit of IT Group's creditors.   Since its founding, the
Trust has collected tens of millions of dollars for creditors.

As the only existing successor entity to the Debtors, the Trust remained in possession of those
of the Debtors' documents which had not been transferred to the Shaw Group.

<u>Payne,</u> a federal securities class action brought against IT Group's officers and directors and
the Carlyle Group, was filed on May 31, 2002, and was transferred to the U.S. District Court for the
Western District of Pennsylvania before Judge Standish on November 7, 2002.   After a motion to
dismiss was granted on November 16, 2004, Plaintiffs filed a second amended complaint, and a
second motion to dismiss was filed, fully briefed and under submission by the parties by September
15, 2005.

Meanwhile the Trustee engaged in successive attempts to obtain Bankruptcy Court approval
to destroy the documents in its possession.  The first such motion was filed on September 2, 2004,

the second such motion was filed on August 17, 2005 and the third such motion was filed on October 21, 2005. These motions are reviewed in greater detail below.

In response to the third motion, on November 4, 2005, Plaintiffs filed a motion in Payne to lift the PSLRA stay on discovery. In response, Defendants objected but moved for issuance of a document preservation subpoena. By Order of December 23, 2005, Judge Standish approved Defendants' motion. On January 9, 2006, Judge Standish approved the Subpoena which had been jointly submitted to him by Plaintiffs and Defendants. The Subpoena was amended by further stipulation of the parties, and was served on the Trustee's counsel on February 15, 2006.

The Trust is the plaintiff in the matter captioned IT Litigation Trust v. D'Aniello et al., CA No. 04-1268, currently pending before the Honorable Kent A. Jordan in this Court. That case is brought against the former IT Group officers and directors and a major shareholder for breach of fiduciary duty and raises many of the same factual issues as Payne.

**V.    ARGUMENT**

**A.    The Subpoena is Not Moot Because Judge Standish Still Has Jurisdiction Over The Payne Case**

Plaintiffs' primary argument, that the Subpoena has been mooted by Judge Standish's order granting the Motion to Dismiss in Payne, is fundamentally flawed. While the Motion to Dismiss was granted, no final order has yet issued dismissing the case and divesting the court of jurisdiction. To the contrary, as noted above, Plaintiffs filed a motion for reconsideration and a motion for leave to amend, both under Fed. R. Civ. P. 59, within the prescribed time period. Accordingly, jurisdiction remains with the District Court until those motions have been decided, and the Subpoena does not – as the Trustee suggests – cease automatically to have any force and effect, either by the Subpoena's

explicit terms, or by operation of law.[2]  As Judge Standish made clear, the Subpoena was to remain

in effect to protect the specified documents until either the litigation was resolved, or until the

PSLRA stay had been lifted, to allow issuance of standard discovery requests.

The Trust's cases are thus inapposite.  In each case, unlike here, the court quashed the

subpoena in question because the district court in which the underlying litigation took place has been

divested of jurisdiction, either through entry of a final judgment terminating the court's jurisdiction

or otherwise.  *See* Blair v. Wills, 112 Fed. Appx. 546, 547 (8th Cir. 2004) (quashing individual's

subpoena for his juvenile records because case for which he sought the subpoena was on appeal and

district court thus lacked jurisdiction); McCook Metals LLC v. Alcoa, Inc., 249 F.3d 330, 333-34

(4th Cir. 2001) (ancillary court quashed subpoena because final judgment in district court where

primary action was pending had issued final judgment divesting jurisdiction and case was on appeal);

Munz v. Parr, 972 F.2d 971, 973 (8th Cir. 1992)(same); Lopez v. F&M Bank, 90 Fed. Appx. 549, 550

(same); City of El Paso v. S.E. Reynolds, 887 F.2d 1103, 1105-06 (D.C. Cir. 1989).[3]  Here, by

---

[2]See Ford Motor Company v. Summit Motor Products, Inc., 930 F2d 277, 282 (3rd Cir. 1991)(appellate court cannot have jurisdiction over case until district court's resolution of motions under Rule 59); Mondrow v. Fountain House, 867 F.2d 798, 799 (3d Cir.1989) (same); Cohen v. Federal Deposit Ins. Co., 2003 WL 21419155 at *1 (E.D. Pa.) (attached as Exhibit 1) ("If a party has timely filed a Rule 59 motion and the motion has not been ruled on, the case lacks finality and the notice of appeal does not deprive the district court of jurisdiction to rule on the motion"); Construction Aggregates, Ltd. v. Joseph Paolino & Sons, Inc., 1991 WL 206751 at *1 (E.D. Pa.) (attached as Exhibit 2) ("[b]ecause plaintiff has pending a motion cognizable, at least in part, under Rule 59(e)...this court retains jurisdiction."); Non-Punitive Segregation Inmates of Holmesburg Prison v. Kelly, 589 F. Supp. 1330, 1336 (E.D. Pa. 1984) (district court retained jurisdiction during pendency of motion to alter or amend the judgment under Rule 59(e)).

[3]Sullivan v. Dickson, 283 F.2d 725, 727 (9th Cir. 1960), cited by the Trust, is entirely off-point.  There, a prisoner seeking to compel production of medical examinations of his alleged rape victims was denied because the relief sought – issuance of a subpoena – "is not available in this proceeding."  *Id.*

contrast, the District Court for the Western District of Pennsylvania continues to retain jurisdiction, as plaintiffs in the <u>Payne</u> action have sought reconsideration and/or amendment of their complaint, and no final judgment has issued divesting the court of jurisdiction.

Moreover, if and when the case proceeds to appeal, the Trust's blanket statement that "any appeal...would not revive the Subpoena," Motion at 7 n.3, ignores the fact that, as their own case acknowledges, the Subpoena can be maintained pending appeal upon "a real showing of the need for the preservation of the evidence and a finding by the District Court that the perpetuation of testimony pending appeal...is proper to avoid a failure or delay of justice." <u>City of El Paso</u>, 887 F.2d at 1105. Such is the case here, where the Trust has sought repeatedly to destroy relevant evidence.

**B.      The Trustee's Motion Improperly Ignores and Attempts to Override Judge Standish's Order for Issuance of the Subpoena**

> **1.      The Law of the Case and Comity Doctrines Apply to a Revisiting of Issuance of the Subpoena**

Fed.R.Civ.P.45(c)(3)A)(iv) permits "the court by which a subpoena was issued" to "quash or modify the subpoena if it subjects person to undue burden." The Parties do not contest the jurisdiction of this court, since it is axiomatic that the Court that issues a subpoena has personal jurisdiction over the nonparty and has the statutory authority to enforce or quash a subpoena that was issued out of its court. <u>See</u> <u>In re: Sealed Case No. 98-5062</u>, 141 F.3d 337 (D.C. 1998).

That is not to say, however, that the court reviewing a motion to quash should not take into consideration the deliberate orders and memoranda of the court in the underlying litigation that reviewed and authorized the issuance of the subpoena. "Relitigation of issues previously determined in the same litigation is controlled by principles of the law of the case doctrine rather than collateral estoppel. 18 Charles A. Wright, Arthur R. Miller, and Edward R. Cooper, Federal Practice and

Procedure: Jurisdiction § 4478, at 788 (1981)." Hull v. Freeman, 991 F.2d 86, 90 (3d Cir. 1993).

"The law of the case doctrine directs courts to refrain from re-deciding issues that were resolved

earlier in the litigation. The doctrine applies 'as much to the decisions of a coordinate court in the

same case as to a court's own decisions.'" Public Interest Research Group of New Jersey, 123 F.3d

111, 116 (3d Cir. 1997), quoting Christianson v. Colt Industries Operating Corp., 486 U.S. 800, 816,

108 S.Ct. 2166, 2177, 100 L.Ed.2d 811 (1988).

      Still another principle, the "rule of judicial comity" applies where two different judges are

involved. Hayman Cash Register Co. v. Sarokin, 669 F.2d 162, 168 (3d Cir. 1981). In fact:

> "[a]dherence to law of the case principles is even more important in this context
> where the transferor judge and the transferee judge are not members of the same
> court. Here, the principles of comity among courts of the same level of the federal
> system provide a further reason why the transferee court should not independently
> re-examine an issue already decided by a court of equal authority."

Id. At 169. "A disappointed litigant should not be given a second opportunity to litigate a matter

that has been fully considered by a court of coordinate jurisdiction, absent unusual circumstances."

Id. "As we have pointed out, the heart of the matter is whether a second judge may properly

entertain the reconsideration at all. We have indicated that if the first judge is available the matter

should again be presented to him." U.S. v. Wheeler, 256 F.2d 745, 747 (3d Cir. 1958).

      **2.**    **Judge Standish Ordered The Preservation Subpoena to be Issued in
Response to an Extended History of Attempts by the Trustee to Destroy
Documents**

      The specifics of the Trustee's repeated attempts to destroy documents are helpful to a full

consideration of the Motion to Quash, and will be provided to this Court if the motion to quash is

considered further. At this stage of the proceedings, a summary overview of this history, as

presented in detail to Judge Standish,[4] is pertinent to show that Judge Standish's deliberations took into account all the facts and should not be second-guessed.

On August 11, 2004, the Trustee filed a motion in the IT Group bankruptcy proceedings for authorization to destroy all documents that the Trustee did not view – "in its reasonable discretion" – as needed by the Trust.[5] No attempt was made to accommodate the interest of third parties in the documents. The motion identified the volume of stored documents as huge, stating: "The Trust currently pays for the storage of over 126,000 boxes of Records, which are stored at locations in over 45 cities across the United States." In response to the objections of Plaintiffs, Defendants, and other interested parties, the Trustee filed a reply memorandum with the Bankruptcy Court which offered interested parties fourteen days to inspect documents, after being notified of the Trustee's intent to destroy them.

At the September 2, 2004 hearing on the Trustee's motion, attended by counsel for the Plaintiffs and Defendants, the Bankruptcy Court refused to approve the Trustee's proposal. Instead, Judge Walrath specified certain threshold procedures to protect parties who had an interest in the preservation of the documents, including detailed indexing of the documents by the Trust and

---

[4]The details were presented to Judge Standish in the Declaration of Robert Zabb in Support of Motion to Lift the PSLRA Stay of Discovery in Connection with Potential Destruction of Company Documents, filed on November 4, 2005, Payne Docket No. 94. The Zabb Declaration included 22 paragraphs and attached twenty exhibits comprising 429 pages. The Parties will not burden the Court with the voluminous record at this juncture, but would be pleased to provide the Court with these materials if they would be of assistance to the consideration of this issue.

[5]The document destruction motions are available on the Court's electronic filing system. The August 11, 2004 motion and Trustee's September 1, 2004 reply are In re IT Group, Bankr.krptcy D.Del. Chapter 11 Case No. 02-10118, docket nos. 5380 and 5476, the August 17, 2005 motion is docket No. 6233, and the October 21, 2005 motion is docket no. 6343. The Parties will gladly provide copies of any of these materials to the Court if the Court so desires.

assessment of the indices by the Court and the interested parties prior to approval of any destruction of documents.[6]  The Trustee's counsel agreed to the Bankruptcy Court's plan on the record in open court.

Contrary to its agreement, the Trustee did not implement the Bankruptcy Court's plan and remained silent and inactive for a year.  Then, on August 17, 2005, the Trustee filed a motion for approval of a settlement of certain matters with the Shaw Group. This settlement included a far more aggressive plan for document destruction.  The Parties in Payne again objected to the proposal for document destruction.  At the September 6, 2005 hearing, the Trustee's counsel admitted that the Trustee had decided immediately after the September 2004 ruling not to implement the Bankruptcy Court's specified procedures, but had not disclosed that choice to the parties interested in protecting the documents. The Bankruptcy Court denied the document destruction provisions of the settlement agreement, but on strictly procedural grounds and without prejudice to renewal of the document destruction efforts.[7]

---

[6]The Bankruptcy Court decided that before any destruction of documents could be considered for approval, the Trustee had to categorize the documents, location by location, and renew the motion for document destruction in a single test location. The Court would rule on whether the new index was sufficient before any document destruction was allowed, and no document destruction would be approved without a consensus of the parties as to which documents they did not need. *See* September 2, 2004 Transcript, In re IT Group, Bankr.krptcy D.Del. Chapter 11 Case no. 02-10118 docket no. 5513 at 40:11-41:21. The Court stated: "[T]o the extent there's some documents that nobody objects to you destroying, then they can be destroyed." Id. at 23:21-22.  The Trustee agreed that documents which litigants wanted to preserve, would be preserved. No cost-shifting on storage from the Trustee – the owner of the documents – to any other party was ordered.

[7]The Bankruptcy Court ruled that settlement provisions for document destruction were really a request to reconsider the September 2, 2004 order.  Thus, the court concluded that the motion to approve the settlement failed to provide notice that it was a reconsideration motion. See September 6, 2005 Transcript, In Re IT Group, Bankr.krptcy D.Del. Chapter 11 Case no. 02-10118 docket no. 6308, at 34:15-42:8.

The Trustee then renewed its motion to destroy documents in a filing dated October 21, 2005 and set for hearing on November 16, 2005. The renewed motion provided for a "Storage End Date" of December 31, 2005, after which the Trust proposed to implement its procedures to dispose of its documents through their destruction. Under the scheme outlined in the renewed motion, the interested parties would be allowed until that date to inspect documents and copy or identify any documents they wished to obtain, after which the Trustee would be given the right to unilaterally destroy the documents. Ultimately, as explained in Section V.D below, the motion was not granted and the Trustee withdrew the motion.

**C.    The Trustee's Assertion of Undue Burden Should be Rejected Because Judge Standish Duly Considered the Wording of the Subpoena and the Complexities of the Case Before Ordering the Parties to Serve the Subpoena**

**1.    Judge Standish Was Fully Briefed on the Document Destruction Efforts**

In response to the Trustee's October 21, 2005 motion in the Bankruptcy Court, on November 4, 2005, the Plaintiffs in <u>Payne</u> filed a motion before Judge Standish to lift the PSLRA stay of discovery. The motion reviewed in detail the Trustee's document destruction motions in the Bankruptcy Court. In a concurrently filed declaration, Judge Standish was provided with copies of the Trustee's August 2004, August 2005 and October 2005 motions for document destruction, Plaintiffs' objections thereto, and the relevant Bankruptcy Court transcripts. Reflecting the Court's concern, Judge Standish immediately approved an expedited briefing schedule for the motion.[8] Defendants objected to a lifting of the discovery stay, but acknowledged the need to preserve evidence and proposed issuance of a subpoena for the purpose of preserving relevant documents.

---

[8]See motion to lift the PSLRA stay of discovery, supporting memorandum of law, supporting declaration of Robert M. Zabb, and related discovery order, filed respectively as <u>Payne</u> docket nos. 92, 93, 94 and 95.

Judge Standish approved the Defendants' request for issuance of a document preservation subpoena. *See* Memorandum Order filed on 12/23/2005, Payne docket no.107.

### 2.    Judge Standish Reviewed the Subpoena Before Approving It

Judge Standish's December 23, 2005 Order provided that "The draft subpoena shall be submitted to this Court for approval not later than January 3, 2005, together with an order directing its issuance by the appropriate court." Upon submission of the proposed subpoena it was approved. By Order dated January 9, 2006, Payne docket no. 113, the court ruled that "[t]he proposed document preservation subpoena submitted by the parties on January 5, 2006 is hereby approved. Any one or more of the parties shall immediately effect issuance of the subpoena through whichever U.S. District Court has appropriate jurisdiction over the IT Group Litigation Trust Trustee, and shall thereafter immediately serve the subpoena upon the Trustee."[9]

### 3.    The Trustee Had Abundant Opportunities to Meet and Confer With the Parties, and Had Notice of the Proceedings Before Judge Standish but Did Not Participate

The Trustee's claim of undue burden is also contradicted by its conduct. Its assertion that the Trust was not a party to the proceedings before Judge Standish is irrelevant for two reasons. First, the Plaintiffs and Defendants to this action were objectors to the Trustee's repeated document destruction motions before the Bankruptcy Court. In that context, the Parties requested the Trustee to meet and confer in order to reach a mutually agreeable solution about the scope of documents to be preserved, but no agreement was reached. The Subpoena was issued to preserve relevant documents because the parties' repeated approaches to the Trustee were fruitless, not because the Trustee was in any sense deprived of an opportunity to cooperate.

---

[9]See Trustee's Appendix at A1.

Second, the Trustee had notice of the proceedings before Judge Standish and of Judge Standish's December 23, 2005 order. Plaintiffs' objections to the Trustee's October 21, 2005 document destruction motion, filed with the Bankruptcy Court on November 9, 2005, both explained that Plaintiffs' motion to lift the PSLRA stay was pending, and attached the motion. Plaintiffs also requested that the Trustee meet and confer concerning the issues raised by that pending motion.[10] Further, Defendants in Payne provided Trust counsel with a copy of Judge Standish's order requiring the issuance of the Subpoena immediately after the Order was signed, but well before the Subpoena was drafted and presented to the District Court. *See* e-mail dated December 23, 2005 from Charles A. DeMonaco to Jeffrey Schlerf and John Cunningham (among others) (attached as Exhibit 3). Having the benefit of such notice, the Trustee nevertheless did not attempt to participate in the process leading to issuance of the Subpoena.

Since the Trustee chose not to take part in the proceedings before Judge Standish, the Trustee cannot rightfully object on those grounds.

---

[10]Plaintiffs' objections, filed with the Bankruptcy court and served on the Trust, stated: "Allowing Class Plaintiffs some time to take discovery would be an indispensable part of any just resolution of the document destruction issue. Therefore, Class Plaintiffs have concurrently filed a motion for relief from the PSLRA stay with the Pittsburgh federal court presiding over the class actions. A hearing is scheduled for early December. *See* motion to lift stay, Zabb Declaration Exh. "E," and scheduling order thereon, Zabb Decl. Exh. "F." Class Plaintiffs ask this Court to continue the hearing on the Trustee's document destruction motion for sixty (60) days to allow enough time for the Pittsburgh court to rule on the stay motion, and some time for the parties to meet and confer after that ruling to work out an arrangement for document management." See In re IT Group, Inc., U.S. Bankruptcy Court for the District of Delaware Case No. 02-10118 docket no. 6368 at 5.

### D.    The Motion to Quash Would Improperly Undermine the Purpose of Judge Standish's Order, Which Was Intended to Restrict Any Other Court's Approval of the Trustee's Document Destruction

#### 1.    Granting the Motion Would Undermine Judge Standish's Order Which was Intended to Stop Any Other Court From Approving Document Destruction By The Trust

The current motion to quash would have the same effect, as a practical matter, as the Trustee's numerous motions before the Bankruptcy Court. Just as the Trustee sought in those motions to exercise unlimited discretion to destroy documents, the current motion asks for the Subpoena to be eliminated without compromise. The Trustee's motion to quash does not acknowledge any legal obligation to preserve relevant documents, although the Parties to this case have briefed the existence of such obligations many times since 2004. The motion does not propose any partial solution which would reduce the scope of documents to be preserved, although the parties have asked the Trustee to confer in filings with the Bankruptcy Court.

Judge Standish's Order was intended to forestall any other court from granting the Trustee such unlimited rights to destroy documents. While specifically issued to address the threat of the Bankruptcy Court approving any document destruction plan, the Order's purpose also encompasses any court which would be asked to take a similar action, such as in the current situation before this Court.

### E.    This Court, Like the Bankruptcy Court, Should Uphold the Third Circuit's Case Law Which Requires Preservation of Evidence

This Court should decline, as did Judge Walrath, to endorse the Trustee's plan for unlimited document destruction. It is clear that this circuit, and courts in this district in particular, recognize the duty to preserve evidence. "A party who has reason to anticipate litigation has an affirmative duty to preserve evidence which might be relevant to the issues in the lawsuit." Matter of Wechsler,

121 F.Supp.2d 404, 415 (D.Del. 2000).  The need to preserve documents extends to all documents falling within the scope of discovery under Fed.R.Civ.P. 26 and 34.  Thus, the duty extends to documents which that might be relevant, not only to documents established to be admissible at trial. Capricorn Power Co., Inc. v. Siemens Westinghouse, 220 F.R.D. 429, 434 (W.D.Pa. 2004).[11] "The obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." Creative Resources Group of New Jersey, Inc. v. Creative Resources Group, Inc., 212 F.R.D. 94, 105 (E.D.N.Y.2002), quoting Fujitsu Limited  v. Federal Express Corp., 247 F.3d 423, 436 (2d Cir. 2001).

The bankruptcy process does not override the duty to preserve evidence.  Case law recognizes that the bankrupt entity will be subjected to discovery obligations and should preserve evidence accordingly.  For example, in In re Adelphia Communications Securities Litigation, 2003 WL 22358819 (E.D.Pa.) (attached as Exhibit 4) discovery was stayed in the anticipation that the bankrupt entity would provide discovery once the bankruptcy process took its course.  The Third Circuit has been protective of securities claims related to bankrupt entities.[12] In re: Continental Airlines, 203

---

[11]Capricorn Power Co., Inc. v. Siemens Westinghouse, 220 F.R.D. 429, 434 (W.D.Pa. 2004), in ruling on a motion to preserve documents, noted that "[T]he Court believes that a motion for a preservation order can be granted with regard to all items of evidence which are discoverable in accordance with Federal Rule of Civil Procedure 26(b)(1), without the necessity of establishing that the evidence will necessarily be relevant and admissible at trial."

[12]The Third Circuit, in In re: Continental Airlines, 203 F.3d 203 (3d Cir. 2000) overruled a release of non-debtors from liability by the Bankruptcy Court as part of a Chapter 11 reorganization plan.  The case noted that such releases were upheld only in "extraordinary cases" where "the central focus of these three reorganizations was the global settlement of massive liabilities against the debtors and co-liable parties" and where the co-liable parties" provided compensation to claimants in exchange for the release of their liabilities."  The Third Circuit noted that the thrust of district court precedent in this circuit was not to allow any non-consensual releases of non-debtor liabilities.

F.3d 203 (3d Cir. 2000).

Having been presented with this authority, Judge Walrath declined to grant the Trust's motion to destroy documents and strongly questioned whether she had the judicial power to authorize destruction of documents relevant to pending litigation. Judge Walrath further noted the parties' objection that any order approving any document destruction might be taken as arguably immunizing what would otherwise be an improper destruction of evidence by the Trustee.[13]

Judge Walrath was correct, and refused to endorse destruction of evidence even without the case-specific guidance provided by Judge Standish in ordering issuance of the Subpoena for document preservation. In response, the Trustee withdrew its motion for document destruction from Judge Walrath's consideration, as reflected in a Bankruptcy Court order of March 20, 2006.

Now this Court has the additional benefit of the guidance provided by Judge Standish when he ordered the Subpoena to be issued. The Trustee's effort to obtain court endorsement for document destruction, which was recognized by Judge Walrath to be so inapt, and which is continuing through the instant motion to quash, is even more inappropriate now that the court-approved Subpoena has been served. The Trust's pressing of its own lawsuit currently pending before Judge Jordan renders its motion to still more invalid.

---

Id. at 214, n. 11.

[13]*See* December 27, 2005 Transcript, <u>In Re IT Group</u>, Bankr.krptcy D.Del. Chapter 11 Case no. 02-10118 docket no. 6445 at 19:5-7 ("THE COURT: I don't think you have the power to do this. I agree with counsel. What power under Section 554 do you have for me to enter an order at all?"); Id. at 20:8-11 ("THE COURT: It doesn't give you the basis for an authority from me, a judge, just because you and somebody else agree that you want something done doesn't give me the authority to give it to you."); Id. at 23:18-23 ("THE COURT: That is the alternative, withdraw your motion and do what you think you have the authority to do. That is an alternative. I think a lot are objecting simply to the fact that you're trying to get my signature on what you're proposing to do, to the extent that some how leads another court to believe that what you did was proper.")

**F.    The Trustee's Contentions About "Undue Burden" Are Largely Unsubstantiated**

Since the matter can be referred to Judge Standish, who is already familiar with the allegations of the complaint and can best evaluate the correlative need to preserve documents, the parties will spare this Court the burden of reviewing the approximately 200 page complaint and hundreds of pages of related briefing, as well as the similarly lengthy complaint in the related Glover case.

Even at first blush, however, the Motion to Quash is facially deficient because its assertions of burden are unsubstantiated. The Trustee has the burden of factually establishing his claim of "undue burden." "The party moving to quash a subpoena carries the heavy burden of proving that the subpoena is unreasonable or oppressive." DIRECTV, Inc. v. Richards, 2005 WL 1514187 at *2 (D.N.J.) (attached as Exhibit 5). Even the case cited heavily by the Trustee holds that to sustain the Trustee's burden on this motion "[t]here must be affirmative and compelling proof. Ipse dixits will not suffice." U.S. v. Amerigroup Illinois, Inc.. 2005 WL 3111972 at *2 (N.D.Ill.) (attached as Exhibit 6). Amerigroup upheld a claim of burden because it was substantiated by submission of a detailed affidavit by the party objecting to the subpoena.

The Trustee's motion fails to factually prove its assertions. One claim is that "The subpoena's categories are so broadly described that the Trust must preserve virtually all container so records in its possession...." (Motion to Quash at 9). Nowhere, however, does the Trustee explain what its stored documents consist of, so there no way to ascertain from the motion whether the Subpoena actually covers the Company's entire universe of stored documents. The claimed burden is highly implausible, since the Subpoena focuses on high level executive and accounting documents, whereas IT Group had hundred of environmental remediation projects all over the United States that

generated documentation such as construction plans, site reviews, invoices and contracts with subcontractors and vendors, contracts and correspondence with clients, etc. Moreover, since the case relates to the period after the investment by the Carlyle Group in IT Group, documents predating that event in 1996, which include many thousands of boxes, would not be needed. Indeed, the Trustee's counsel advised Judge Walrath that numerous documents in the Trustee's custody are irrelevant to the pending litigation.[14]

The motion to quash also fails to substantiate the assertion that the Trust has insufficient resources to store the documents encompassed by the Subpoena. The motion mentions that the Trust was initially funded by $1.5 million, but fails to explain that the Trust has had tens of millions of dollars in its possession through various sources of recovery. For example, the Trustee filed a motion on August 17, 2005 to distribute over $22 million in funds to creditors, and additional motions for distributions have been filed since that time.[15] While it is impossible to fully evaluate the claim of burden without full information about the Trustee's resources, it appears that document storage is a reasonable means of complying with the Trustee's legal obligations at reasonable expense.

---

[14]At the December 27, 2005 hearing the Trust's counsel described documents which "couldn't be remotely relevant to their matters involving IT Group" such as "lab reports, laboratory data, time sheets, payroll, expense reports and reimbursement files, maps, drawings, project drawings, x-rays, soil data, vehicle incident reports, visitor logs' (Transcript, In Re IT Group, Bankr.krptcy D.Del. Chapter 11 Case no. 02-10118 docket no. 6445 at 6:19-22), "human resource documents" (Id. at 7:5) and "documents that are dated prior to January 1st, 1995, except for financial documents relating to projects of IT Group identified by Harry Soose's counsel...." (Id. at 7:12-14).

[15]See Motion of the IT Litigation Trust Trustee for an Order Authorizing First Distribution to Holders of Allowed General Unsecured Claims and Approving a Distribution Matrix of General Unsecured Creditors, In Re IT Group, Bankr.krptcy D.Del. Chapter 11 Case no. 02-10118 docket no. 6230 at 6, paragraph 209.

Moreover, the motion never weighs the "burden" of complying with the Subpoena claimed by the Trustee against the appropriate scope of document preservation as determined by the size of the Company and the scope of Plaintiffs' allegations. The Trust also does not disclose that it is a party in litigation pending in this district, and as a plaintiff, the Trust raises similar allegations to those in <u>Payne</u>. Thus, the Trustee cannot complaint of the obligation to preserve documents most of which would be relevant to its own case, and which it accordingly has an independent duty to preserve.

Also, even if there were a substantial burden, it would not necessarily be "undue" given that IT Group claimed to have $1.4 billion in annual revenues and Plaintiffs' complaint alleges the existence of misrepresentations which reflected widespread improper accounting and liquidity practices. In failing to argue that the Subpoena in any respect exceeds the needs of the case and the appropriate dimensions of the case, the Trustee never establishes that the Subpoena lacks merit.

The Trustee's assertion of non-party status, citing <u>U.S. v. Amerigroup Illinois, Inc.</u>, 2005 WL 3111972, is also inapt. In <u>Amerigroup</u> the victim of the fraud, an agency of the State of Illinois, moved to quash the subpoena. Here, the Trust is successor to the the IT Group and, of the alleged wrongdoing, therefore, can be rightfully called upon to preserve and ultimately to produce document relevant to the <u>Payne</u> litigation and the Trust Action.

## VI.    CONCLUSION

For the above-stated reasons, the Trustee's motion to quash should be denied.

CHIMICLES & TIKELLIS, LLP

/s/A. Zachary Naylor
A. Zachary Naylor (#4439)
One Rodney Square
P.O. Box 1035
Wilmington, Delaware 19899
(302) 656-2500

and

GLANCY BINKOW & GOLDBERG LLP
Lionel Z. Glancy, Esq.
Robert M. Zabb, Esq.
1801 Avenue of the Stars, Suite 311
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
*Counsel for Plaintiffs*

SMITH, KATZENSTEIN & FURLOW LLP

/s/Roger D. Anderson
Roger D. Anderson (ID No. 3480)
800 Delaware Avenue [19801]
Post Office Box 410
Wilmington, DE 19899-0410
Telephone (302) 652-8400
Facsimile (302) 652-8405

and

Charles A. DeMonaco, Esquire
Kimberly L. Haddox, Esquire
Richard J. Federowicz, Esquire
DICKIE, MCCAMEY & CHILCOTE
Two PPG Place, Suite 400
Pittsburgh, PA 15222-5402
Telephone (412) 281-7272
Facsimile (412) 392-5367
*Counsel for Harry Soose*

*[signature follows on next page]*

10014945.WPD                    22

RICHARDS, LAYTON & FINGER, P.A.

/s/Marcos A. Ramos, Esquire
Marcos A. Ramos, Esquire (#4450)
Mark D. Collins, Esquire (#2981)
One Rodney Square
P.O. Box 551
Wilmington, DE 19899

and

LATHAM & WATKINS LLP
David A. Becker, Esquire
Thomas L. Patten, Esquire
Courtney S. Schorr, Esquire
Laurie B. Smilan, Esquire
555 11th Street NW, Suite 1000
Washington, DC  20004-1304
*Counsel for Defendants other than Harry Soose and Anthony DeLuca*

ECKERT, SEAMANS, CHERIN & MELLOT, LLC

/s/Ronald S. Gellert
Ronald S. Gellert (#4259)
The Towne Center
4 East 8th Street, Suite 200
Wilmington, DE 19801

and

ECKERT SEAMANS CHERIN & MELLOT, LLC
Mark A. Willard, Esquire
600 Grant Street, 44th Floor
Pittsburgh, PA  15219
*Counsel for Defendant Anthony DeLuca*

**Exhibit 1**

Westlaw.

Not Reported in F.Supp.2d                                                                 Page 1
Not Reported in F.Supp.2d, 2003 WL 21419155 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

**H**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, E.D. Pennsylvania.
Faye R. COHEN, and Sanford H. COHEN, Plaintiffs,
v.
FEDERAL DEPOSIT INSURANCE
CORPORATION, et al., Defendants.
**No. CIV.A. 91-CV-3944.**

June 19, 2003.
BERLE M. SCHILLER, Judge.

*MEMORANDUM AND ORDER*

**\*1** Following a bench trial in this matter, I issued
findings of fact and conclusions of law and entered
judgment in favor of Defendant Federal Deposit
Insurance Corporation ("FDIC") and against Plaintiffs
Faye R. Cohen and Sanford H. Cohen ("Cohens"). *See*
Memorandum and Order dated May 14, 2003. Presently
before the Court is Plaintiffs' Motion to Amend
Judgment.

Under Federal Rule of Civil Procedure 59(e), a party
may move the court to alter or amend its judgment. *See*
Fed. R. Civ. P. 59(e). The purpose of a motion to alter
or amend the judgment is to correct manifest errors of
law or fact or to present newly discovered evidence.
*See Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d
Cir.1985).<u>FN1</u> Rule 59(e) is intended to afford relief only
in extraordinary circumstances, and not to routinely
give litigants a "second bite at the proverbial apple."
*Bachir v. Transoceanic Cable Ship Co.*, Civ. A. No.
98-4625, 2002 U.S. Dist. LEXIS 19840, at \* 5, 2002
WL 31357699, at \*2 (S.D.N.Y. Oct.17, 2002).<u>FN2</u>

> <u>FN1.</u> Plaintiffs' motion would have been more
> appropriately filed under Local Rule of Civil
> Procedure 7.1(g) or Federal Rule of Civil
> Procedure 52(b). *See* Local R.Civ. P. 7.1(g)
> (providing for motions for reconsideration);

Fed.R.Civ. P. 52(b) (permitting parties to
move for amendment of findings of fact in
non-jury trials). With the exception of the
contentions related to Plaintiffs' tax returns,
Plaintiffs' motion is without merit when
analyzed under either of these rules.

> <u>FN2.</u> Plaintiffs filed the instant motion on
> May 27, 2003. On June 12, 2003, Plaintiffs
> filed a notice of appeal in this action. If a party
> has timely filed a Rule 59 motion and the
> motion has not been ruled on, the case lacks
> finality and the notice of appeal does not
> deprive the district court of jurisdiction to rule
> on the motion. *See* Fed.R.App. P. 4(a)(4)(A);
> *Osterneck v. Ernst & Whinney*, 489 U.S. 169,
> 174, 109 S.Ct. 987, 103 L.Ed.2d 146 (1989);
> *Healy v. Pa. R. Co*, 181 F.3d 934, 935-37 (3d
> Cir.1950); 11 Charles Alan Wright, Arthur R.
> Miller, & Mary Kay Kane, Federal Practice
> and Procedure § 2821 (2d ed.1995).

The Cohens' first argument is that footnote 3 of the
Court's Memorandum and Order dated May 14, 2003 is
erroneous. In this regard, the Cohens contend that my
indication that there were "certain irregularities in the
Cohens' income tax returns ... of concern to the Court"
was inaccurate because no evidence was presented at
trial suggesting that there were any irregularities in the
Cohens' professionally-prepared tax returns. Having
considered the Cohens' arguments, I agree that the
footnote cannot stand as stated. Nonetheless, the Court's
concern remains.    Specifically,    testimony    and
representations made at trial appear to be inconsistent
with the amount of income reflected on the tax returns.
*See* 2/21/03 Tr. at 50-51. I will amend footnote three
accordingly.

The Cohens' remaining contentions rehash arguments
previously made at trial. Because a Rule 59(e) motion
should not be used as "means to reargue matters already
argued and disposed of," *Waye v. First Citizen's Nat'l*
*Bank*, 846 F.Supp. 310, 314 (M.D.Pa.), *aff'd*, 31 F.3d
1175 (3d Cir.1994), and because their contentions were

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 21419155 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 2

addressed in the Court's Memorandum and Order of
May 14, 2003, these arguments are without merit and
will not be addressed herein.

An appropriate Order follows.

*ORDER*

AND NOW, this 19th day of June, 2003, upon
consideration of Plaintiffs Faye R. Cohen's and Sanford
H. Cohen's Motion to Amend Judgment, it is hereby
ORDERED that:

1. Plaintiffs' Motion to Amend Judgment (Document
No. 59) is GRANTED IN PART AND DENIED IN
PART.

2. Plaintiffs' Motion is GRANTED to the extent it seeks
amendment of footnote three of the Court's
Memorandum and Order of May 14, 2003. Footnote
three of the Court's Memorandum and Order of May 14,
2003 is amended to state the following: "It should also
be noted that testimony and representations made at
trial appear to be inconsistent with the amount of
income reflected on the tax returns. These
inconsistencies are of concern to the Court."

3. Plaintiffs' Motion is DENIED in all other respects.

E.D.Pa.,2003.
Cohen v. F.D.I.C.
Not Reported in F.Supp.2d, 2003 WL 21419155
(E.D.Pa.)

Briefs and Other Related Documents (Back to top)

• 2:91cv03944 (Docket) (Jun. 20, 1991)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**Exhibit 2**

Westlaw.

Not Reported in F.Supp.
Not Reported in F.Supp., 1991 WL 206751 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.)**

Page 1

**H**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, E.D. Pennsylvania.
CONSTRUCTION AGGREGATES, LTD.
v.
JOSEPH PAOLINO & SONS, INC.
Civ. A. No. 88-8506.

Oct. 2, 1991.

Thomas P. Preston, Mark Steiner, Duane, Morris &
Heckscher, Wilmington, Del., for plaintiff.
Bruce L. Phillips, Venzie, Phillips & Warshawer,
Philadelphia, Pa., for defendant.

*MEMORANDUM*

WALDMAN, District Judge.
**\*1** Presently before the court is plaintiff's Motion to
Amend Judgment. The motion was timely filed under
Fed.R.Civ.P. 59(e).

This motion and five post-trial motions of defendant
were filed the same day. The court received and ruled
upon defendant's motions. Although apparently
docketed, plaintiff's motion for some reason was never
forwarded to the court and might well have escaped
detection indefinitely had counsel not brought this
situation to the court's attention this past week.

In the interim, defendant filed a notice of appeal which
has been docketed. A notice of appeal filed while a
timely Rule 59(e) motion is pending in the district court
is a nullity and has no effect. *Griggs v. Provident*
*Consumer Discount Co.*, 459 U.S. 56, 61 (1982).
Regardless of the movant's characterization, the court
must look to the intended function of a motion to
determine if it is truly a Rule 59(e) motion within the
meaning of Fed.R.App.P. 4(a)(4). *Aloe Coal Co. v.*
*Clark Equipment Co.*, 816 F.2d 110, 112 (3d Cir.1987).

In its motion plaintiff seeks several things which most
appropriately are addressed by Rule 60(a), *e.g.*,
formally recording the jury verdict against defendant on
its counterclaim which the clerk inadvertently omitted
from the official judgment form. One of the
modifications sought by plaintiff, however, is a
*discretionary* award of pre-judgment interest or delay
damages at the market rate on plaintiff's
misrepresentation claim. *See Peterson v. Crown*
*Financial Corp.*, 661 F.2d 287, 295 (3d Cir.1981)
(award of pre-judgment interest above legal rate in
cases beyond scope of Pa.R.Civ. P. 238 is equitable in
nature and discretionary).

Such a request for a discretionary award of interest is
cognizable under Rule 59(e).[FN1] *See Aloe Coal*, 816
F.2d at 113. Because plaintiff has pending a motion
cognizable, at least in part, under Rule 59(e),
defendant's notice of appeal is a nullity and this court
retains jurisdiction. Because the court has jurisdiction,
it may resolve all matters properly pending before it,
including those requests of plaintiff appropriately
presented pursuant to Rule 60(a).

The clerk inadvertently omitted a notation on the
judgment form reflecting the verdict of the jury for
plaintiff and against defendant on the latter's
counterclaim. The court will grant plaintiff's request to
rectify this oversight.

Plaintiff requests that formal judgment be entered on
each of the two counts in its complaint with "the
amount awarded pursuant to each Count." Based on a
single transaction and set of operative facts, plaintiff
sought to recover a particular sum under two legal
theories. Plaintiff asserted in one count that defendant
refused to pay this sum after contractually promising to
do so and in another count that it misrepresented its
intention to pay this sum.

The assertion of various legal theories under which one
allegedly is entitled to a particular sum does not
constitute separate claims. *See* Wright, Miller & Kane,
Federal Practice and Procedure: Civil 2d § 2657 at 69.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                              Page 2
Not Reported in F.Supp., 1991 WL 206751 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.)

*See also* *Oyster v. Johns-Manville Corp.,* 568 F.Supp. 83, 85 (E.D.Pa.1983) (complaint which seeks vindication of single right pursuant to various remedies asserts single claim). The only additional essential fact plaintiff had to prove under its second theory was an intent by defendant not to pay when it made the contractual promise to do so in obtaining goods from plaintiff. *See Oyster, supra* at 86. That plaintiff seeks more pre-judgment interest under one theory than another does not convert one claim into two.

**\*2** It would have been premature to enter a formal judgment in this case before a final determination of defendant's liability under both of plaintiff's theories.[FN2] It would be inappropriate now to enter separate judgments or awards on each count, incorrectly making it appear that defendant is indebted to plaintiff for an additional amount because of a different transaction or occurrence. The pleadings and verdict form are part of the record, and thus it will be clear to posterity that defendant was found to have breached a promise to pay to plaintiff a sum of money and to have misrepresented to plaintiff that it would pay *that* sum. The purpose of the formal judgment form ordinarily is not to record the legal theories of the prevailing party.

Accordingly, plaintiff's request to enter multiple judgments or awards will be denied. Lest there be any doubt, however, the court will make clear that plaintiff is entitled to $155,265.13 in actual damages under either or both of its legal theories.

Plaintiff also requests pre-judgment interest compounded at the market rate. The imposition of such interest as a remedy and deterrent in cases where money intentionally was wrongfully withheld is appropriate. In this case, because it found defendant's conduct to be intentional and egregious, the jury awarded to plaintiff punitive damages of $60,000. This is almost 40% of the amount withheld by defendant and provides a substantial deterrent against a repetition of such conduct by it or others. Under the overall circumstances of this case, the court will not award interest at the rate requested.

Plaintiff alternatively seeks an award of pre-judgment interest at the legal rate of 6%. Because defendant

breached an obligation to pay a definite sum of money, plaintiff is entitled to such interest from the time of that breach. *See* *Fiat Motors of North America v. Mellon Bank, N.A.,* 827 F.2d 924, 931 (3d Cir.1987); *Trustees of the Univ. of Pa. v. Lexington Ins. Co.,* 815 F.2d 890, 908 (3d Cir.1987); *Peterson,* 661 F.2d at 293. Accordingly, the judgment will be amended to provide for pre-judgment interest on the $155,765.13 in actual damages from September 6, 1988.[FN3]

Plaintiff also seeks post-judgment interest. It is entitled to such interest as provided in 28 U.S.C. § 1961(a) and (b), currently at the rate of 6.26%. Since the award of such interest is mandatory, it is not necessary that the judgment specify that it will bear interest. *See* *Whelan Associates, Inc. v. Jaslow Dental Laboratory,* 609 F.Supp. 1325, 1327 (E.D.Pa.1985); *White v. Bloomberg,* 360 F.Supp. 58, 63 (D.Md.1973). Lest there be any doubt, however, the court will amend the judgment to specify that it bears interest as provided by law.

Finally, plaintiff requests costs in the amount of $372.20. Defendant has not challenged the validity of this amount. This request will be granted. *See* Fed.R.Civ.P. 54(d).

An appropriate order and amended judgment will be entered.

## ORDER

**\*3** AND NOW, this 2nd day of October, 1991, upon consideration of plaintiff's Motion to Amend Judgment and defendant's response thereto, consistent with the accompanying Memorandum, IT IS HEREBY ORDERED that said Motion is GRANTED in part and DENIED in part, in that an amended judgment will be entered herewith to reflect the jury's rejection of defendant's counterclaim, the allowance of costs of $372.20, an award of pre-judgment interest at the legal rate and post-judgment interest as provided by law (28 U.S.C. § 1961(a) and (b)); and, the Motion is otherwise denied.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                         Page 3
Not Reported in F.Supp., 1991 WL 206751 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.)**

*AMENDED CIVIL JUDGMENT*

AND NOW, this 2nd day of October, 1991, in accordance with the verdict of the jury and the court's Orders of June 11, 1990, August 20, 1991 and October 2, 1991 in the above-captioned case, IT IS HEREBY ORDERED that the Civil Judgment of June 26, 1991 is AMENDED and superseded as follows:

JUDGMENT is hereby entered in favor of plaintiff, Construction Aggregates, Ltd., a Canadian Corporation, and against defendant, Joseph Paolino & Sons, Inc., a Pennsylvania Corporation, on plaintiff's claim for breach of contract and misrepresentation for $155,765.13 plus pre-judgment interest at the legal rate of 6% or $26,194.15, in the amount of $181,959.28, plus $60,000 in punitive damages awarded on plaintiff's cause of action for misrepresentation, in the total amount of $241,959.28, said Judgment to bear interest until satisfied, pursuant to 28 U.S.C. § 1961(a) and (b) at the rate of 6.26% compounded annually or such other rate as may be determined hereafter from time to time pursuant to 28 U.S.C. § 1961(a).

JUDGMENT is hereby entered in favor of plaintiff and against defendant on defendant's counterclaim for breach of contract.

> FN1. Plaintiff also seeks costs, the award of which is generally viewed as discretionary. *See Inst. Juveniles v. Secretary of Public Welfare,* 568 F.Supp. 1020, 1035 (E.D.Pa.1983), *rev'd in part on other grounds,* 758 F.2d 897 (3d Cir.1985); Wright, Miller & Kane, Fed.Prac. and Proc.2d § 2668.

> FN2. Both parties appear to recognize that of necessity the court's order of June 11, 1990 granting summary judgment on the breach of contract count was interlocutory. Yet, defendant contends that because a final judgment was not entered simultaneously, plaintiff is not entitled to any recovery under its contract theory. This is specious. There was no dispute whatsoever about the amount

defendant contracted to pay plaintiff. Defendant's sole contention in resisting summary judgment was that it had a right to set-off this amount against monies allegedly owed by plaintiff and sought by defendant in a counterclaim which was rejected by the jury.

> FN3. According to the calculation of the Federal Reserve Bank, the amount of such interest is $26,194.15.

E.D.Pa.,1991.
Construction Aggregates, Ltd. v. Joseph Paolino & Sons, Inc.
Not Reported in F.Supp., 1991 WL 206751 (E.D.Pa.)

Briefs and Other Related Documents (Back to top)

• 2:88cv08506 (Docket) (Nov. 04, 1988)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**Exhibit 3**

**REDACTED**

**REDACTED**

---

**From:** DeMonaco, Charles [mailto:CDeMonaco@dmclaw.com]
**Sent:** Friday, December 23, 2005 1:28 PM
**To:** Jeffrey Schlerf; DAVID.BECKER@LW.com; tpglass@strausstroy.com
**Cc:** Laurie.Smilan@LW.com; Thomas.Patten@lw.com; Haddox, Kimberly; MWillard@eckertseamans.com; rcampedel@eckertseamans.com; Eric Sutty; rswayne@strausstroy.com; jcunningham@whitecase.com; Cruz, Ileana
**Subject:** RE: Litigation Trust documents

Dear Jeff,

   FYI - Attached please find an Order entered today by Judge Standish in Payne v. DeLuca directing the issuance of a preservation subpoena to be jointly drafted by the parties.  That subpoena will direct the Trustee to preserve relevant documents.

Chuck

Charles A. De Monaco
Dickie, McCamey & Chilcote, P.C.
Two PPG Place, Suite 400
Pittsburgh, PA  15222-5402
Telephone: 412-392-5523
Fax: 412-392-5367
Cell: 412-400-2474
cdemonaco@dmclaw.com

THIS MESSAGE IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL, AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW.  IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, OR THE EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING THE MESSAGE TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION, OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED.

**REDACTED**

**Exhibit 4**

Westlaw.

Not Reported in F.Supp.2d                                                                                    Page 1
Not Reported in F.Supp.2d, 2003 WL 22358819 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

**C**
Only the Westlaw citation is currently available.
United States District Court,E.D. Pennsylvania.
In re ADELPHIA COMMUNICATIONS
SECURITIES LITIGATION
**No. 02-1781.**

May 13, 2003.

Deborah R. Gross, Law Offices Bernard M. Gross, PC,
Robin Switzenbaum, Berger & Montague, P.C.,
Philadelphia, PA, Judith L. Spanier, Mark C. Gardy,
Abbey Gardy, LLP, Harvey Greenfield, The Law Firm
of Harvey Greenfield, Laura Perrone, Law Offices of
Laura M. Perrone, PLLC, New York, NY, for Plaintiffs.
Jeremy Heep, Robert L. Hickok, Pepper Hamilton LLP,
Penny Conly Ellison, Thomas S. Biemer, Dilworth
Paxson LLP, Patrick J. O'Connor, Cozen Oconnor,
Daniel C. Fleming, Henry Oh, Wong Fleming PC, Joel
E. Tasca, Ballard Spahr Andrews & Ingersoll LLP,
Philadelphia, PA, Scott R. Shepherd, Shepherd
Finkelman Miller & Shah LLC, Media, PA, David
Boies, Boies & Schiller, LLP, Armonk, NY, Katherine
B. Forrest, Max R. Shulman, Cravath Swaine & Moore,
New York, NY, for Defendants.

*MEMORANDUM AND ORDER*
HUTTON, J.
**\*1 THIS DOCUMENT RELATES TO ALL ACTIONS**

Presently before the Court are two Motions for
Reconsideration of the Court's Order, dated September,
26, 2002, staying these securities class action cases.
One motion (Docket No. 84) was filed on January 17,
2003, by a group of arbitrage funds ("Argent/Eminence
Plaintiffs"). The other motion (Docket No. 88) was
filed on January 29, 2003, by several public employee
pension funds ("Pension Fund Plaintiffs"). In each of
these motions, Plaintiffs ask the Court to (1) remove
these cases from the civil suspense docket; (2)
reconsider the stay order; and (3) rule on Plaintiffs'
Motions for Appointment of Lead Plaintiff and

Counsel. For the reasons discussed below, the motions
are denied.

*I. BACKGROUND*

These cases arise from the financial collapse of
Adelphia Communications Corporation, a company
providing cable television and communications services
to consumers. The first of these private securities
actions against Adelphia and its officers and directors
was filed on April 20, 2002. Since that date,
approximately 40 similar actions have been filed. The
cases were consolidated before this Court in an order
dated April 30, 2002. Included among the Defendants
in these actions are Adelphia, John Rigas, Timothy
Rigas, and Michael Rigas ("Rigas Defendants").

Adelphia's collapse also spawned other litigation that is
relevant to the instant case. First, on June 25, 2002,
Adelphia filed a Chapter 11 Bankruptcy petition in the
Southern District of New York. Presently, Adelphia's
bankruptcy petition is still pending in that court.

Second, on July 24, 2002, the United States Securities
and Exchange Commission ("SEC") filed a civil
enforcement action in the Southern District of New
York against Adelphia, the Rigas Defendants, and two
other former Adelphia officers, James Brown and
Michael Mulcahey. In its complaint, the SEC makes
allegations similar to those contained in the various
complaints filed in the private securities suits currently
before this Court. Specifically, the SEC charges that
Adelphia, as directed by the Rigas Defendants and
others, fraudulently hid liabilities from Adelphia's
consolidated financial statements, falsified company
earnings, and concealed self-dealing by the Rigas
Defendants. *See* Compl., *SEC v. Adelphia Comm. Corp,*
No. Civ.A. 02-5776 (S.D.N.Y. July 24, 2002). On
October 29, 2002, the court stayed the SEC
enforcement action pending resolution of the related
criminal proceedings against the defendants, described
below.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 22358819 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.2d)

On September 23, 2002, the Rigas Defendants, James Brown, and Michael Mulcahey were indicted in the Southern District of New York on criminal charges related to their conduct at Adelphia, including charges of wire fraud, securities fraud, and conspiracy. While Mr. Brown pleaded guilty to several charges in November, 2002, the criminal proceedings are ongoing against the remaining defendants. Count I of the 24-count indictment contains issues and allegations similar to those in the instant private securities suits, including allegations that the Rigas Defendants improperly co-mingled funds, engaged in self-dealing, and failed to disclose co-borrowing arrangements that ultimately resulted in Adelphia understating its liabilities by approximately $3 billion. *See* Argent/Eminence Pls .' Compl. at ¶¶ 29-33, 44, 46; Indictment, *United States v. Rigas,* No.Crim.A. 02-1236, at ¶¶ 16-21, 73-91.

*\*2* On September 27, 2002, this Court issued an order (Docket No. 72) which: (1) stayed the consolidated action and placed it on the Civil Suspense Docket; and (2) denied all pending motions with leave to renew. Subsequent to this order, the Argent/Eminence Plaintiffs petitioned the United States Court of Appeals for the Third Circuit, requesting a writ of mandamus requiring this Court to lift the stay. On December 26, 2002, the Third Circuit denied the petition, stating that "the proper course is for plaintiffs to file a motion to reconsider the stay.... We are confident the District Court will review this matter and set forth its reasons for granting or denying the stay." *In Re Eminence Capital LLC,* No. 02-3889, at 1 (3d Cir. Dec. 26, 2002). As a result of this ruling, Plaintiffs filed the instant motions.

## II. *LEGAL STANDARD*

"The standards controlling a motion for reconsideration are set forth in Federal Rule of Civil Procedure 59(e) and Local Rule of Civil Procedure 7.1." *Vaidya v. Xerox Corp.,* No. Civ. A. 97-547, 1997 WL 732464, at *1 (E.D.Pa. Nov.25, 1997). The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence. *Max's Seafood Café by Lou-Ann, Inc. v. Quinteros,* 176 F.3d

669, 677 (3d Cir.1999) (citing *North River Ins. Co. v. CIGNA Reinsurance Co.,* 52 F.3d 1194, 1218 (3d Cir.1995)). Therefore, a court should grant a motion for reconsideration only "if the moving party establishes one of three grounds: (1) there is newly available evidence; (2) an intervening change in the controlling law; or (3) there is a need to correct a clear error of law or prevent manifest injustice." *Drake v. Steamfitters Local Union No. 420,* No. Civ. A. 97-585, 1998 WL 564886, at *3 (E.D.Pa. Sept. 3, 1998) (citing *Smith v. City of Chester,* 155 F.R.D. 95, 96-97 (E.D.Pa.1994)).

## III. *DISCUSSION*

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with the economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis v. North American Co.,* 299 U.S. 248, 254-55, 57 S.Ct. 163, 166, 81 L.Ed. 153 (1936) (citing *Kansas City Southern R. Co. v. United States,* 282 U.S. 760, 763, 51 S.Ct. 304, 305-6, 75 L.Ed. 684 (1931)); *see also Texaco, Inc. v. Borda,* 383 F.2d 607, 608 (3d Cir.1967) (quoting same). Thus, the decision to stay civil proceedings calls for the trial court, in its discretion, to balance the various interests of the parties, the court, and the public. *Landis,* 299 U.S. at 254-56. In the instant motions, Plaintiffs argue that this Court abused its discretion by failing to give adequate weight to the Plaintiffs' interests. *See* Argent/Eminence Pls.' Mem. at 3-4; Pension Fund Pls.' Mem. at 3.

*\*3* In this case, the Court based its stay order on two parallel proceedings directly affecting the instant private securities suits: (1) the ongoing criminal case in the Southern District of New York; and (2) Adelphia's pending bankruptcy petition. The impact of each action on the consolidated securities cases is discussed in turn below.

### A. *Related Criminal Proceedings*

As noted above, the Rigas Defendants in this suit are

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 22358819 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.2d)

currently under indictment in the Southern District of New York for engaging in allegedly fraudulent conduct that contributed to Adelphia's collapse. In deciding whether to stay a civil case pending the resolution of a related criminal case, courts consider many factors, including: (1) the extent to which the issues in the civil and criminal cases overlap; (2) the status of the criminal proceedings, including whether any defendants have been indicted; (3) the plaintiff's interests in expeditious civil proceedings weighed against the prejudice to the plaintiff caused by the delay; (4) the burden on the defendants; (5) the interests of the court; and (6) the public interest. *Walsh Securities, Inc. v. Cristo Prop. Mgmt. Ltd., 7 F.Supp.2d 523 (D.N.J.1998)* (citing *Trustees of Plumbers and Pipefitters Nat'l Pension Fund v. Transworld Mech., Inc. ., 886 F.Supp. 1134, 1138 (S.D.N.Y.1995)); see also Golden Quality Ice Cream Co. v. Deerfield Specialty Papers, Inc., 87 F.R.D. 53, 56 (E.D.Pa.1980)* (listing similar factors). Each of these factors is discussed in turn below.

### 1. Similarity of Issues

The similarity of the issues underlying the civil and criminal actions is considered the most important threshold issue in determining whether or not to grant a stay. *Walsh Securities, 7 F.Supp.2d at 527* (quoting Milton Pollack, *Parallel Civil and Criminal Proceedings, 129 F.R.D. 201, 203 (1989)* (*"Parallel Proceedings"* )). The consolidated Adelphia securities actions have a significant overlap of issues with the Rigas Defendants' criminal case. For example, both cases allege that the Rigas Defendants made material omissions and misstatements regarding certain co-borrowing arrangements, which were used by the Rigas Defendants to purchase Adelphia stock. Moreover, both cases allege that the Rigas Defendants improperly commingled funds and used Adelphia assets for their own purposes. The Court finds that these overlapping issues are integral to both the civil and criminal cases. Accordingly, this factor weighs heavily in favor of granting the stay.

### 2. Stage of Related Criminal Proceedings

In determining whether to grant a stay, a court must also consider the status of the related criminal proceedings, which can have a substantial effect on the balancing of the equities. If criminal indictments are returned against the civil defendants, then a court should strongly consider staying the civil proceedings until the related criminal proceedings are resolved. *Parallel Proceedings, 129 F.R.D. at 203* (citing *SEC v. Dresser Indus., Inc., 628 F.2d 1368, 1375-76 (D.C.Cir.1980)); see also Walsh Securities, 7 F.Supp.2d at 527-28*. Civil defendants subject to criminal indictment face a significant risk of self-incrimination during the civil discovery process. *Walsh Securities, 7 F.Supp.2d at 527* (citing *Parallel Proceedings, 129 F.R.D. at 203*). Moreover, the indicted defendants risk exposing their criminal defense strategy during civil discovery. *Id.* Additionally, the burden of delay on the civil litigants is minimal because the Speedy Trial Act requires prompt resolution of the related criminal proceedings. *Id.* In contrast, because there is less risk of self-incrimination and greater burdens imposed by the delay, stays are rarely granted at the pre-indictment stage. *See State Farm Mut. Auto. Ins. Co. v. Beckham-Easley, No. Civ.A. 01-5530, 2002 WL 31111766, at *2 (E.D.Pa. Sept.18, 2002). But see Walsh Securities, 7 F.Supp.2d at 527-28* (granting temporary stay at pre-indictment stage).

*4 In this case, indictments were returned against several of the civil defendants on September 23, 2002. Because the civil and criminal issues are so closely intertwined, the Court finds that these defendants face a substantial risk of self-incrimination if the civil cases are allowed to proceed. In addition to the Fifth Amendment problems, the defendants risk exposing their criminal defense strategies to the government and to their co-defendants. Thus, this factor weighs strongly in favor of staying the consolidated securities actions pending resolution of the related criminal proceedings.

### 3. Prejudice to the Plaintiff

In evaluating the plaintiff's burden resulting from the stay, courts may insist that the plaintiff establish more prejudice than simply a delay in his right to expeditiously pursue his claim. *Golden Quality Ice*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 22358819 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 4

*Cream,* 87 F.R.D. at 56. Instead, the plaintiff should demonstrate a particularly unique injury, such as the dissipation of assets or an attempt to gain an unfair advantage from the stay. *Beckham-Easley,* 2002 WL 31111766, at *3; *Walsh Securities,* 7 F.Supp.2d at 528.

In their filings, Plaintiffs primarily argue that they are prejudiced by the stay because a Lead Plaintiff and Lead Counsel have not yet been appointed to manage the consolidated actions. The Pension Fund Plaintiffs argue that, without Lead Counsel, Plaintiffs do not "have someone with authority to speak for them in this litigation." *See* Pension Fund Pls.' Mem. at 3. Similarly, the Argent/Eminence Plaintiffs assert that stay order deprives "tens of thousands of purchasers of Adelphia securities ... of representation" and prevents Plaintiffs from making important strategic decisions regarding the course of this litigation. *See* Argent/Eminence Pls.' Mem. at 2-3. Finally, both sets of Plaintiffs implicitly assert that the stay order is counter to Congressional intent in enacting the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4 ("PSLRA"). *See Id.;* Pension Fund Pls.' Mem. at 3. In their filings, Plaintiffs point out that Congress gave Lead Plaintiffs and Lead Counsel important roles in shaping the strategic direction of securities class action suits. *Id.* It follows, Plaintiffs argue, that staying the proceedings before making these appointments is counter to the scheme envisioned by Congress in the Act. *Id.*

The Court finds that Plaintiffs have failed to demonstrate sufficient prejudice to warrant reconsideration of the stay in this case. First, Plaintiffs have not shown any prejudice other than delay in pursuing their suits, which is insufficient to support vacating the stay. *See Walsh Securities,* 7 F.Supp.2d at 528. For example, Plaintiffs point to no evidence that Defendants are intentionally liquidating assets or otherwise trying to gain an advantage during the delay. *Contra Beckham-Easley,* 2002 WL 31111766, at *3 (finding the defendants' willful assets transfers militated against stay). Second, the lack of a Lead Plaintiff or Lead Counsel does not prevent the individual plaintiffs and their respective counsel from making the kinds of strategic decisions, such as intervention in other suits, described by Plaintiffs in their filings. Finally, nothing in the PSLRA indicates that Congress intended for

private securities actions to proceed during related criminal proceedings. While the Court agrees that Congress gave Lead Plaintiffs and Lead Counsel important roles in shaping the strategic direction of securities class actions, the legislative record does not reveal an intent to limit a Court's inherent discretion to control its own docket. Accordingly, because the Court finds that Plaintiffs are not prejudiced by the delay resulting from the stay, this factor militates in favor of the stay.

### 4. Burden on the Defendants

**\*5** As noted above, civil defendants subject to a criminal indictment must often choose between waiving their Fifth Amendment rights during civil discovery or asserting the privilege and losing the civil case. *Walsh Securities,* 7 F.Supp.2d at 528. While it is not unconstitutional to place a defendant in this position, *see Baxter v. Palmigiano,* 425 U.S. 308, 318-19, 96 S.Ct. 1551, 1558, 47 L.Ed.2d 810 (1976), courts may consider these conflicts when deciding whether to stay a civil case. *Dresser Indus.,* 628 F.2d at 1375; *Sterling Nat'l Bank v. A-1 Hotels Int'l, Inc.,* 175 F.Supp.2d 573, 577-78 (S.D.N.Y.2001).

In this case, the Court finds that Defendants potentially face a significant burden if the civil cases are allowed to go forward. As noted above, because the Rigas Defendants are already under criminal indictment in a case concerning identical allegations and issues, they face substantial risks of self-incrimination. Moreover, Defendants also may be forced to reveal their criminal defense strategies if the case is allowed to proceed.

Finally, the unindicted civil defendants also face prejudice unless the civil proceedings are stayed. The Rigas Defendants are the key figures in both the civil and criminal cases. *See Volmar Distribs., Inc. v. New York Post Co., Inc.,* 152 F.R.D. 36, 41 (S.D.N.Y.1993). Because their actions lie at the center of the civil cases, their testimony and documents will be essential to resolving those cases. *Id.* Staying the civil cases pending resolution of the criminal proceedings will preclude the Rigas Defendants from invoking the Fifth Amendment privilege during the civil cases. *Id.* If a stay

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 22358819 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.2d)

is not issued, then remaining Defendants, who are not protected by the Fifth Amendment, may not be able to adequately defend themselves. Accordingly, this factor weighs in favor of staying the civil proceedings.

### 5. Interest of the Court

The Court has an interest in efficiently managing its caseload. *Beckham-Easley*, 2002 WL 31111766, at *3. In this case, granting a stay promotes judicial efficiency. First, without a stay, the civil defendants will likely assert their Fifth Amendment rights, causing the court to decide a number of privilege issues during civil discovery. In contrast, if the civil actions are stayed until the conclusion of the criminal proceedings, then these rulings will no longer be necessary. *Walsh Securities*, 7 F.Supp.2d at 528. Moreover, if the indicted defendants assert the privilege throughout the litigation, then it will be "difficult or impossible to fairly apportion liability because of the differing factual record among the defendants." *Id.* at 528-29. Additionally, criminal convictions against any of the civil defendants will likely encourage them to settle the civil suits, thereby eliminating the need to litigate some issues in the civil cases. Thus, staying the civil actions preserves judicial resources and streamlines some of the complexities of the consolidated securities actions. As a result, this factor weighs in favor of staying the civil actions.

### 6. Public Interest

*6 The public interest is not harmed by staying the civil action. In their filings, Plaintiffs argue that the public interest in protecting the integrity of the securities markets militates in favor of letting the civil action proceed. *See* Pension Fund Pl.'s Mem. at 3. While the Court agrees that the public has a strong interest in protecting capital markets, the related criminal proceedings serve to advance those same interests. *Volmar Distribs. ., Inc. v. New York Post Co., Inc.*, 152 F.R.D. 36, 40 (S.D.N.Y.1993) (citing *Brock v. Tolkow*, 109 F.R.D. 116, 121 (E.D.N.Y.1985)). Accordingly, the public interest may be served by staying the civil cases pending resolution of the criminal proceedings.

As a result, this factor militates in favor of staying the consolidated civil cases.

### 7. Balancing the Equities

On balance, the factors listed above support staying the consolidated civil cases pending resolution of the criminal proceedings. While the Court appreciates that the delay will cause some inconvenience to Plaintiffs, this prejudice is outweighed by the other factors supporting the stay.

### B. *Related Bankruptcy Proceedings*

The Court also based its stay order on the pendency of Adelphia's bankruptcy proceedings. The stay is independent of the automatic stay provision of § 362(a) of the Bankruptcy Code, which applies only to the debtor-defendant in this case, Adelphia. Rather, the stay is based on the Court's inherent power to control its docket. *Landis*, 299 U.S. at 254-55. Under circumstances such as those present in this case, courts may stay civil proceedings against non-debtor defendants that are not subject to the Bankruptcy Code's automatic stay provision. *In re the Loewen Group, Inc. Sec. Litig.*, No. Civ.A. 98-6740, 2001 WL 530544, at *1-3 (E.D.Pa. May 16, 2001); *Smith v. Dominion Bridge Co.*, No. Civ.A. 96-7580, 1999 WL 111465 (E.D.Pa. March 2, 1999).

In *Loewen Group*, a series of securities class actions were filed against Loewen, alleging, *inter alia*, that the company inflated profits in its securities filings. 2001 WL 530533, at *1. While these class actions were pending, Loewen filed for bankruptcy protection under Chapter 11 of the Bankruptcy Code. *Id.* The court, *sua sponte*, placed the consolidated class actions in civil suspense pending the resolution of the bankruptcy proceedings. *Id.* In response, the plaintiffs filed motions to remove the cases from the suspense calendar and allow them to proceed against the non-debtor defendants. *Id.*

The court, applying four factors listed in *Dominion Bridge*, denied the motion to reconsider the stay. In

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 22358819 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 6

denying the motion, the court considered the following factors: (1) plaintiff's interest in having a forum and whether a satisfactory alternative forum exists; (2) whether the defendant may wish to avoid multiple litigation or inconsistent relief for liability shared with third parties; (3) the extent to which judgment may impede the debtor-party's ability to protect its interest; and (4) the interest of the courts and the public in the consistent and efficient settlement of controversies. _Loewen Group,_ 2001 WL 530544, at *1 (citing _Dominion Bridge,_ 1999 WL 11465, at *4). Application of the factors to this case demonstrates that the consolidated civil actions should be stayed pending resolution of Adelphia's bankruptcy petition.

*7 Regarding the first factor, the consolidated securities actions have merely been placed in suspense. Thus, Plaintiffs retain this Court as the forum to adjudicate their securilies claims. Accordingly, this factor weighs in favor of staying the consolidated securities actions. _Accord Loewen Group,_ 2001 WL 530544, at *1; _Dominion Bridge,_ 1999 WL 11465, at *4.

Regarding the second and fourth factors, the Court, the public, and the parties all have an interest in the efficient resolution of both the civil and the bankruptcy claims. The Court finds that this interest is best served by staying the consolidated civil actions as to all defendants, not just Adelphia, pending resolution of Adelphia's bankruptcy petition. As in _Loewen,_ the securities actions in this case will require significant and burdensome discovery on the part of the debtor-defendant, Adelphia. 2001 WL 530544, at *3. Thus, it will be difficult, if not impossible, to proceed against the non-debtor defendants without substantial involvement by Adelphia. _Id._ Accordingly, these factors militate towards staying the consolidated securities actions.

Finally, regarding the third factor, because many of the individual defendants were officers of Adelphia and the claims against them arise out of their conduct at the company, Adelphia cannot adequately protect its interests if the civil actions are allowed to proceed without Adelphia's involvement. In _Loewen,_ the Court found that, because the claims against the individual defendants were based upon actions taken as officers of

the debtor-defendant, the plaintiffs could not "meaningfully separate the actions of the company from the actions of its officers and directors." _Loewen Group,_ 2001 WL 530544, at *3. _See also Dominion Bridge,_ 2001 WL 530544, at *4 (extending stay to non-debtors where "there is such identity between the debtor and third-party that the debtor may be said to be the real party defendant"). As a result, an action solely against the non-debtor defendants risked unnecessary duplication of issue and inconsistent relief.

Similarly, in this case, proceeding against the individual defendants risks subjecting Adelphia to duplicative and inconsistent litigation. For example, if Plaintiffs are allowed to proceed against the individual defendants, Adelphia risks being collaterally estopped from relitigating issues decided in Plaintiffs' favor based on the Adelphia officers' actions. _Accord Loewen Group,_ 2001 WL 530533, at *3. Thus, this factor also supports staying the civil actions until the conclusion of Adelphia's bankruptcy proceedings so that Adelphia may adequately represent its interests. Therefore, all four factors discussed in _Loewen Group_ and _Dominion Bridge_ militate in favor of staying the civil cases as to all defendants.

## IV. _CONCLUSION_

Based on the foregoing discussion, the Court finds that its stay order, dated September 6, 2002, is adequately supported by precedent. Accordingly, Plaintiffs fail to demonstrate that the Court committed a clear error of law by staying these civil cases. Plaintiffs' Motions for Reconsideration are denied.

*8 An appropriate Order follows.

## _ORDER_

AND NOW, this 13th day of May, 2003, upon consideration of Plaintiffs' Motions for Reconsideration (Docket Nos. 84 & 88), IT IS HEREBY ORDERED that Plaintiffs' Motions are DENIED.

E.D.Pa.,2003.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 7
Not Reported in F.Supp.2d, 2003 WL 22358819 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**


In re Adelphia Communications Securities Litigation
Not Reported in F.Supp.2d, 2003 WL 22358819
(E.D.Pa.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**Exhibit 5**

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 1514187 (D.N.J.)
(Cite as: Not Reported in F.Supp.2d)

Page 1

**H**

Briefs and Other Related Documents

Only the Westlaw citation is currently available.
United States District Court,D. New Jersey.
DIRECTV, INC., Plaintiff,
v.
Dave RICHARDS, et al., Defendants.
**No. Civ. 03-5606(GEB).**

June 27, 2005.

David Andrew Cohen, Saiber, Schlesinger, Satz &
Goldstein, LLC, Newark, NJ, for Plaintiff.
Jonathan J. Sobel, Galerman & Tabakin, LLP,
Voorhees, NJ, for Defendants.

MEMORANDUM OPINION

BROWN, J.

*1 This matter comes before the Court upon Defendant
Dave Richards' ("Defendant" or "Richards") motion to
quash the third-party subpoena *duces tecum* upon
Providian National Bank ("Providian"). This Court has
jurisdiction pursuant to 28 U.S.C. § 1331, 47 U.S.C. §
605(e)(3)(A), and 18 U.S.C. § 2520(a). The Court has
decided the motion upon the submitted papers and
without oral argument, pursuant to Federal Rule of
Civil Procedure 78. For the reasons discussed below,
the Defendant's motion is denied.

I. BACKGROUND

Plaintiff DIRECTV, Inc. ("DIRECTV") instituted this
action against several named defendants,[FN1] including
Richards, alleging the violation of the Federal
Communications Act of 1934 ("FCA"), 47 U.S.C. §
605, and the Electronic Communications Privacy Act
("ECPA"), 18 U.S.C. §§ 2510-2521. Compl. ¶ 5.

FN1. Other defendants named in DIRECTV's
complaint include Michael J. Marino, Richard

H. Yoss, Francine J. Miraglia, Martin
Edelman, Richard Casario, David Kleinman,
Alan Mintzer, and Aaron Kemble. All of these
defendants have reached settlement with
DIRECTV.

Specifically, DIRECTV alleges that Richards purchased
two Pirate Access Devices ("devices") from The
Computer Shanty, Compl. ¶ 13(a), an Internet seller of
such devices.[FN2] The devices are designed primarily for
the unauthorized decryption of DIRECTV's satellite
transmissions. Compl. ¶ 3. Seized shipping
documentation allegedly reveals that Richards received
the devices by mail at his home in Lodi, New Jersey.
Compl. ¶ 13.

FN2. On or about December 1, 2001, with the
assistance of law enforcement officials,
DIRECTV executed writs of seizure upon The
Computer Shanty. Compl. ¶ 3. DIRECTV
obtained various business records showing the
continued sale of the devices and used this
documentation as the basis for the allegations
against Defendant. Compl. ¶¶ 3, 13.

DIRECTV served a third-party subpoena upon
Providian on February 10, 2005, seeking Defendant's
credit card records and other documents pertaining to
his VISA credit card for the months of February 2001
through January 2003. Richards filed the instant motion
to quash the third-party subpoena upon Providian the
following day, asserting that the subpoena should be
quashed because DIRECTV served it after the February
7, 2005 entry of a final pretrial order. Richards
alternately argues that the Court should quash the
subpoena because it is unduly burdensome, unlikely to
reveal relevant information, overly broad in scope, and
likely to uncover privileged material.

II. DISCUSSION

*A. The Court Will Reach The Merits Of Defendant's*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                              Page 2
Not Reported in F.Supp.2d, 2005 WL 1514187 (D.N.J.)
**(Cite as: Not Reported in F.Supp.2d)**

*Challenge Because He Claims A Privilege Is*
*Threatened By The Third-Party Subpoena*

DIRECTV questions whether Richards has standing to
challenge the third-party subpoena upon Providian. A
party lacks standing to seek the modification or
quashing of a subpoena upon a third party unless the
party claims a personal privilege is implicated. *See,*
*e.g., Catskill Development, L.L.C. v. Park Place*
*Entertainment Corp., 206 F.R.D. 78, 93*
*(S.D.N.Y.2002)* (holding that a party whose banking
records are subpoenaed has standing to oppose the
subpoena). Here, Defendant asserts a personal privilege
with respect to his bank account records. The Court
finds that Defendant's claimed privilege is sufficient to
confer standing for the purpose of this motion.

*B. The Court Finds That The Subpoena Was Timely*
*Served*

Richards argues at the outset that this Court should
quash the subpoena because it was served after the
designated period for discovery and three days after the
February 7, 2005 entry of a final pretrial order. This
argument cannot succeed.

**\*2** DIRECTV first served a subpoena upon VISA on
December 13, 2004. Certification of David A. Cohen
("Cert.") Exhibit I. This subpoena was served more
than seven weeks before the final pretrial order was
entered and well within the discovery period. By letter
dated December 29, 2004, DIRECTV was notified that
VISA was not the Custodian of Records for individual
accounts and that any subpoena would instead need to
be served on Providian. Cert. Exhibit J. The following
day, DIRECTV forwarded this letter to defense
counsel, specifically stating that "we will serve a
subpoena upon Providian ... for the information
requested in our original subpoena to VISA." Cert.
Exhibit K. In addition, DIRECTV later forwarded to
counsel a copy of a letter to Providian's executive vice
president asking for directions on whom to serve with
the subpoena. Cert. Exhibit M.

The decision to depart from or adhere to a pretrial order

is within the sound discretion of the trial court judge.
*See Beissel v. Pittsburgh & Lake Erie Railroad Co.,*
*801 F.2d 143, 150 (3d Cir.1986)*. The Court finds that
DIRECTV acted diligently and that counsel received
timely notification of DIRECTV's plans to subpoena
Providian's records. Further, Richards was not
prejudicially surprised because he knew that the
subpoena upon Providian was forthcoming. *See Morton*
*Intern., Inc. v. A.E. Staley Mfg. Co., 343 F.3d 669, 684*
*(3d Cir.2003)* (citing *Lamborn v. Dittmer, 873 F.2d*
*522, 527 (2d Cir.1989)*) (finding that scheduling orders
were designed "to insure the efficient resolution of
cases and, most importantly, [to] minimize prejudicial
surprise"). Accordingly, the Court concludes that the
subpoena was served in a timely, appropriate manner.

*C. Defendant's Motion To Quash Must Be Denied*
*Because Defendant Has Not Proven The Subpoena Is*
*Unduly Burdensome, Unlikely To Reveal Relevant*
*Information, Overly Broad, Or Likely To Uncover*
*Privileged Material*

*1. The Subpoena Does Not Subject Defendant To An*
*Undue Burden*

Richards argues that the subpoena upon Providian is
unduly burdensome under Federal Rule of Civil
Procedure 45. *See* Fed. R. Civ. P. 45(c)(3)(A)(iv)
(2005). A subpoena causes an undue burden if the
request "is unreasonable or oppressive." *Northrop*
*Corp. v. McDonnell Douglas Corp., 751 F.2d 395, 403*
*(D.C.Cir.1984)*. The party moving to quash a subpoena
carries the *heavy* burden of proving that the subpoena
is unreasonable or oppressive. *See id.; Westinghouse*
*Elec. Corp. v. City of Burlington, Vt., 351 F.2d 762,*
*766 (D.C.Cir.1965)* (emphasis added). When
appropriate, a district court should consider the
possibility of modifying a subpoena rather than
quashing. *See Northrop, 751 F.2d at 403*.

Richards has not satisfied the heavy burden of proving
that the subpoena is either unreasonable or oppressive.
Defendant argues that the subpoena is oppressive
because it was served three days after the entry of a
final pretrial order. As discussed above, the Court has

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 1514187 (D.N.J.)
(Cite as: Not Reported in F.Supp.2d)

Page 3

determined that the subpoena was timely served, and that the Defendant was not prejudicially surprised by the change in the subpoena. Defendant has offered no additional facts to satisfy his heavy burden of proof. Therefore, Defendant's motion to quash cannot be granted on this basis.

### 2. The Subpoena Is Narrowly Drawn And Likely To Disclose Relevant Facts

**\*3** Under Rule 26, "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party ... Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1) (2005). *See also* Fed.R.Evid. 401 (2005) (defining "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence"). The relevancy requirement has been construed broadly and liberally in order to ensure mutual knowledge of all relevant facts. *Hickman v. Taylor,* 329 U.S. 495, 507, 67 S.Ct. 385, 91 L.Ed. 451 (1947); *see also Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978).

This Court finds that the information sought by the subpoena is clearly relevant to the allegations made by DIRECTV. DIRECTV alleges that Richards purchased two devices and received them by mail. Compl. ¶ 13. As DIRECTV notes, the sale of these primarily illegal devices usually occurs over the Internet, where the use of a credit card is often necessary to complete a transaction. *See* DIRECTV Brief at 11. Therefore, the subpoena of credit card records within the designated time frame clearly represents an attempt to gain relevant information.

Richards also argues that the subpoena served upon Providian is overly broad because there is only alleged to be a single purchase of two devices in 2001. This argument cannot succeed. Based on the seizure of records from The Computer Shanty, DIRECTV

determined that Richards had purchased the two devices in May 2001. Cert. Exhibit A. Therefore, it is reasonable for DIRECTV to request documents dating back to February 2001.

The Court also finds that it was not unreasonable to request documents up to January 2003. In *DIRECTV, Inc. v. Richards (Marino),* this Court examined the propriety of a subpoena served upon PayPal in 2004. *See DIRECTV, Inc. v. Richards (Marino),* No. 03-5606 (D.N.J. Oct. 14, 2004) (memorandum opinion denying motion to quash subpoena), at 11. DIRECTV sought, without limitation, all documents associated with Defendant Richards' accounts. This Court held that the documents sought were entirely relevant to DIRECTV's claims and that the subpoena was "appropriately limited." *Id.* Significantly, PayPal records revealed that Defendant Richards allegedly sold a "DSS HU" card to one Santos Garcia in December 2002. *See* Cert. Exhibit G. Because the PayPal records reveal that Defendant engaged in further conduct involving DIRECTV hardware as late as December 2002, it is reasonable for DIRECTV to inquire into Defendant's credit card records up to January 2003. Therefore, this Court concludes that DIRECTV's subpoena upon Providian is not overly broad.

### C. The Subpoena Does Not Threaten A Proven Personal Privilege

**\*4** Richards asserts that the subpoena upon Providian should be quashed because it requires the disclosure of privileged bank records. *See* Fed. R. Civ. P. 45(c)(3)(A)(iii) (2005). Defendant only offers vague legal conclusions and speculates about the existence of a personal privilege. The Court finds that Defendant has not proven the existence of a threatened privilege. Further, Defendant's concern would be better cured by a protective order issued pursuant to Federal Rule of Civil Procedure 26(c). Therefore, the Court cannot quash the subpoena on this basis.

### III. CONCLUSION

For the foregoing reasons, Richards' motion to quash

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                    Page 4
Not Reported in F.Supp.2d, 2005 WL 1514187 (D.N.J.)
**(Cite as: Not Reported in F.Supp.2d)**

the third-party subpoena *duces tecum* upon Providian is
denied. An appropriate Order accompanies this
Memorandum Opinion.

D.N.J.,2005.
DIRECTV, Inc. v. Richards
Not Reported in F.Supp.2d, 2005 WL 1514187 (D.N.J.)

Briefs and Other Related Documents (Back to top)

• 2005 WL 3630505 (Trial Motion, Memorandum and
Affidavit) Directv Inc.'s Memorandum of Law in
Opposition to Defendant Richards' Motion to Quash the
Subpoena Duces Tecum Served Upon Providian
National Bank (Feb. 18, 2005)
• 2005 WL 3630504 (Trial Motion, Memorandum and
Affidavit) Brief in Support of Defendant, Dave
Richards's Motion to Quash the Third-Party Subpoena
Upon Providian National Bank (Feb. 11, 2005)
• 2004 WL 3647708 (Trial Motion, Memorandum and
Affidavit) Plaintiff Directv, Inc.'s Memorandum of Law
in Opposition to Defendants Yoss and Kemble's
Motions to Dismiss (Feb. 17, 2004)
• 2004 WL 3647707 (Trial Motion, Memorandum and
Affidavit) Plaintiff Directv, Inc.'s Memorandum of Law
in Opposition to Defendants Kemble and Yoss's
Motions to Sever (Feb. 16, 2004)
• 2003 WL 24222583 (Trial Pleading) Defenndant,
Aaron Kemble's Answer to Plaintiff's Complaint and
Jury Demand (2003)
• 2003 WL 24222584 (Trial Pleading) Defenndant,
Dave Richards's Answer to Plaintiff's Complaint,
Affirmative Defenses and Counter-Claim and Jury
Demand (2003)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# Exhibit 6

*Westlaw.*

Slip Copy                                                                                    Page 1
Slip Copy, 2005 WL 3111972 (N.D.Ill.)
**(Cite as: Slip Copy)**

**H**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,N.D. Illinois.
UNITED STATES of America, State of Illinois, ex
rel., and Cleveland Tyson, Plaintiffs,
v.
AMERIGROUP ILLINOIS, INC., and Magistrate
Judge Cole Amerigroup Corporation, Defendants.
**No. 02 C 6074.**

Oct. 21, 2005.

Michael I. Behn, Behn & Wyetzner, Michael Charles
Rosenblat, Michael E. Rosenblat, P.C., Paul Joseph
Gaynor, Chaka M. Patterson, David Jamison Adams,
Tyree L. Givens, Illinois Attorney General's Office,
Paul Joseph Gaynor, Chaka M. Patterson, Illinois
Attorney General, Joan Matlack, Putterman & Howard,
Marla Helene Swartz, Michael Keyes Hendershot,
Frederick H. Cohen, Chad A. Blumenfield, David Joel
Chizewer, Hillary Levitt Dunn, Goldberg, Kohn, Bell,
Black, Rosenbloom & Moritz, Ltd, Michele Marion
Fox, United States Attorney's Office, NDIL, William
W. Thomas, Futterman & Howard, Chtd., Chicago, IL,
for Plaintiffs.
Daniel John Voelker, Andrew C. Nordahl, Catherine A.
Miller, Daniel Charles Curth, Hillard M. Sterling,
Jeffrey Lawrence Dorman, Freeborn & Peters, Kellye
L. Fabian, Kirkland & Ellis LLP (Chicago), Michele
Marion Fox, United States Attorney's Office, NDIL,
Robert A Barba, Illinois Attorney General's Office,
Chicago, IL, for Defendants.

### MEMORANDUM OPINION AND ORDER
MAGISTRATE, Judge.
**\*1** The Illinois Department of Healthcare and Family
Services ("HFS"), has moved to quash a subpoena
*duces tecum* served on it by the defendants calling for
production of emails of three named HFS employees on
the ground that compliance with the subpoena would be
unduly burdensome-especially given the fact that HFS

is not a party to the case.

**I**

**BACKGROUND**

**A**

**The Underlying Complaint**

Relator, Cleveland Tyson, filed this *qui tam* suit under
the False Claims Act ("FCA"), 31 U.S.C. §§ 3729 *et
seq.* and Illinois Whistleblower Reward and Protection
Act ("Illinois Whistleblower Act"). 740 ILCS §§ 175/1
*et seq.* FN1 The FCA establishes civil penalties for any
person who files "a false or fraudulent claim for
payment or approval" by the United States government.
31 U.S.C. § 3729(a)(1). The provisions of the IWRPA
are similar. 740 ILCS § 175/3. The State of Illinois
intervened in the suit on March 2, 2005; the United
States was just granted leave to intervene on October
17, 2005.

> FN1. The term, *qui tam,* comes from the Latin
> expression, *qui tam pro domino rege quam
> pro se ipso in hac parte sequitur* ("Who
> brings the action for the King as well as for
> himself"). *United States ex rel. Mathews v.
> Bank of Farmington,* 166 F.3d 853, 857 (7th
> Cir.1999). In a *qui tam* action, a private party,
> the "relator," brings an action to redress fraud
> upon the government. *Id.* If the claim is
> proven, the relator receives a percentage of the
> recovery ranging, under the current statute,
> from 10% to 30%. *Id.* at 857-58 (*citing* 31
> U.S.C. § 3730(d)). *See Vermont Agency of
> Natural Resources v. United States ex rel.
> Stevens,* 529 U.S. 765 (2000). The history of
> the False Claims Act is detailed in *United*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2005 WL 3111972 (N.D.Ill.)
**(Cite as: Slip Copy)**

Page 2

*States ex rel. S. Prawer and Co. v. Fleet Bank of Maine,* 24 F.3d 320, 324 (1st Cir.1994). *See also United States ex rel. Williams v. NAC Corp.,* 931 F.2d 1493, 1496-98 (11th Cir.1991).

The second amended complaint alleged that under its contract with the Illinois Department of Public Aid-now known as HFS-Amerigroup Illinois ("AMG-IL") was required to submit quarterly statements certifying that, to its knowledge, there had been no fraud, abuse, or misconduct on the part of its employees, providers, or representatives. The contract defined "abuse" as "a manner of operation that results in excessive or unreasonable costs to the Federal and/or State health care programs." (*Second Amended Complaint,* Ex. A, at 2). The Second Amended Complaint alleges that AMG-IL did not report its limited enrollment practices in its quarterly certifications, which were a precondition to its receiving payment from the federal and state programs involved. This omission allegedly resulted in and constituted false or fraudulent claims for payment in violation of the applicable statutes.

**B**

**The Present Discovery Dispute**

On July 29, 2005, defendants served a subpoena on HFS, calling for the production of twelve categories of materials. It was the third in a series of substantially similar subpoenas, the first two having been the subject of successful motions to quash by HFS.[FN2] On August 11, 2005, HFS moved to quash the subpoena as to all but two of the categories-Nos. 5 and 11-on three grounds: that service was defective under the plain language of Fed.R.Civ.P. 45(b)(1); that the documents sought were not relevant; and that the subpoena was unduly burdensome to a non-party under Fed.R.Civ.P. 45(c)(3)(A)(iv). In the alternative, HFS sought a protective order that no discovery be had aside from discovery bearing on the calculation of damages. Defendants filed their response to HFS's motion on August 18, 2005.

FN2. The defendants have filed objections to those two prior rulings under Fed.R.Civ.P. 72(a), which are currently pending before Judge Leinenweber.

I convened a hearing on this matter on August 23rd and 24th of 2005. In those two sessions, lengthy conferences were conducted in open court, and many of the disputed issues relating to the instant motion, as well as to another discovery dispute, were resolved. In the end, the parties were able to reach a voluntary agreement as to all but two of the document categories, Nos. 6 and 7. The resolution of their dispute as to category No. 6 was held in abeyance at my request. Document category No. 7, which relates to the production of emails of HFS personnel, remains in dispute; and it is the category that is presently the subject of HFS's motion to quash.

**\*2** The defendants have agreed to limit their request to the emails of Lucille Rendok and Kelly Carter, who are currently HFS employees, and Nelly Ryan, a former employee. In addition, the defendants have agreed that HFS may limit the search terms to be used in retrieving the desired emails to: (1) adverse select\*, cherry, pregnan\*, trimester, discriminate\*, and/or continuity of care; combined with (2) some reference to Amerigroup, such as Amerigroup or AMG. HFS-still unhappy with the request-filed its reply brief on September 14, 2005.

HFS maintains that the current version of the subpoena must still be quashed under Rule 45(c)(3)(A)(iv) because the defendants' request is unduly burdensome, and the emails are irrelevant and unlikely to lead to the discovery of admissible evidence. The defendants' position consists largely of the unadorned conclusion that the burden is not undue and that the emails are critical to proving that HFS had knowledge of the claimed illegality, which HFS insists is at least a *pro tanto* defense to the claimed fraud.

**II**

**ANALYSIS**

**A**

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**B**

### Undue Burden Within The Meaning Of Rule 45(c)(3)(A)(iv) And The Protections Accorded Non-Parties

### The Evidence In Support Of HFS's Motion Suffices To Carry Its Burden Of Proving That Production Of The One Year's Worth Of Emails Should Not Be Required

Rule 45(c)(3)(A)(iv) mandates that a court "shall quash or modify" a subpoena if it "subjects a person to undue burden." The Advisory Committee's Notes to the 1991 amendments to Rule 45 make clear that the amendments have "enlarge[d] the protections afforded persons who are required to assist the court by giving information or evidence." The rule "requires the court to protect all persons from undue burden imposed by the use of the subpoena power." *Id.* This is not the discretionary language of Rule 26(c), under which a court "may make any order which justice requires to protect a party or person from ... undue burden...." It is a "command[ ]." *Heidelberg Americas, Inc. v. Tokyo Kikai Seisakusho, Ltd.,* 333 F.3d 38, 41 (1st Cir.2003).

HFS submits that its system and attendant backup system do not even allow the retrieval of emails for the entire five-year period-2000 through 2004-specified in the subpoena. All that is available, according to HFS, is a year's worth of emails. But even that, HFS argues, would constitute an undue burden on it.

As the party objecting to the document request, HFS must demonstrate that the burden of producing the one year's worth of emails is undue. There must be affirmative and compelling proof. *Ipse dixits* will not suffice. *See Trading Technologies Intern., Inc. v. eSpeed, Inc.,* No. 04 C 5312, 2005 WL 1300778, *1 (N.D.Ill. April 28, 2005)*(Moran, J.); *Semien v. Life Insurance. Co. of North America,* No. 03 C 4795, 2004 WL 1151608, *1 (N.D.Ill. April 21, 2004)*(Kocoras, J.); *In re Sulfuric Acid Antitrust Litigation,* No. 03 C 4576, 2005 WL 2403328, *9 (N.D.Ill. Sept. 27, 2005)*(collecting cases). HFS has provided such evidence in the form of the affidavit of a testimonially competent HFS employee. *See Rule 602, Federal Rules of Evidence.*

*\*3* In support of its contention that the document request is unduly burdensome, HFS has submitted the affidavit of Donald Perry, the chief of its bureau of information systems. (*Motion of Non-Party HFS to Quash a Subpoena for Documents,* Ex. H). Mr. Perry is familiar with HFS's email systems, as well as procedures for backing up email files and restoring old files. (*Id.,* Ex. H, at ¶ 2). The HFS email system comprises 23 post offices residing on specified servers. Each HFS employee is provided with an individual email account in the post office that is appropriate to their location. (*Id.,* Ex. H, at ¶ 3). The post offices are "backed up" incrementally on a daily basis, while a full back up of all the post offices is performed over the weekend. (*Id.,* Ex. H, at ¶ 4). The daily, incremental backup files are retained for one month; the weekly backup files are retained for one year. (*Id.,* Ex. H, at ¶ 5).

Mr. Perry's affidavit explains what would be involved in retrieving the old email files the defendants have requested. In order to restore an employee's email account, one begins with the data range and the employee's post office. The data range is limited to one year from the current date. Once provided with a data range and post office, HFS's central management service can retrieve the appropriate back up tapes from an off-site storage facility and restore that entire post office to a dedicated server with restricted access. (*Id.,* Ex. H, at ¶ 6). At that point, the individual employee's email messages can be retrieved and analyzed to determine relevance. (*Id.,* Ex. H, at ¶ 7). According to Mr. Perry, however, a post office may only be restored one week at a time; if there are multiple weeks in the data range, the restoration process must be performed in stages. (*Id.,* Ex. H, at ¶ 8). During such a "staged retrieval process," a post office is restored for a period, analyzed, and then deleted to allow the next post office to be restored and analyzed. (*Id.,* Ex. H, at ¶ 9). This

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2005 WL 3111972 (N.D.Ill.)
**(Cite as: Slip Copy)**

stored retrieval process is costly, in terms of expense, equipment, and man-power. (*Id.,* Ex. H, at ¶ 10). For example, a review of one year's worth of an employee's emails would take approximately six weeks. (*Id.,* Ex. H, at ¶ 10).

Significantly, the defendants do not challenge any of Mr. Perry's assertions. This omission, they claimed at oral argument, was the inevitable result of having no familiarity with the internal systems used at HFS. The argument is unpersuasive. The defendants could have sought leave to depose Mr. Perry, and, of course, they could have retained an expert of their own to opine on the validity of Mr. Perry's statements-at least in a general sense. Moreover, Mr. Perry's assessment is confirmed, in the main, by the cases, which have recognized that the task of restoring emails through the use of backup tapes is a "unique burden":

Backup tapes record a "snapshot" of the contents of the computer system at the moment the backup is run. "The data on a backup tape are not organized for retrieval of individual documents or files, but for wholesale, emergency uploading onto a computer system." In case the system "crashes," and all the information created since the previous backup is lost, the contents of the tape can be loaded onto the system, restoring the lost information. Since crashes presumably occur infrequently, backup tapes need not be as convenient to access as, say, a CD-ROM. At the same time, backup tapes must have the capacity to store large amounts of information since they are relied upon to replace all the information contained on a computer system after a crash. It is understandable, then, that backup tapes sacrifice accessibility for storage capacity, since to have both would be impractical and costly.

**\*4** *Hagemeyer North America, Inc. v. Gateway Data Sciences Corp.,* 222 F.R.D. 594, 600 (E.D.Wis.2004) (Citations omitted).

This is not to say that undue burden may be presumed simply because electronic evidence is involved. *Zubulake v. UBS Warburg LLC,* 217 F.R.D. 309, 318 (S.D.N.Y.2003). But, in the hierarchy of accessibility, it is clear that electronic data stored on media such as the backup tapes involved here is near the bottom. *Id.* at 319. One of the reasons for the difficulty involved in searching backup tapes is that they store infinitely more information than most other storage media. For example, a CD-ROM's storage capacity is 650 megabytes, the equivalent of 325,000 typewritten pages. Computer networks, on the other hand, create backup data measured in terabytes-1,000,000 megabytes-which is the equivalent of 500 billion typewritten pages. Manual for Complex Litigation (Fourth) § 11.446 (2004) (*cited in Hagemeyer,* 222 F.R.D. at 601).

It is not a decisive answer to say that the defendants have offered pay the costs that might be incurred in retrieving the emails. Expense is but a part of the burden. As Mr. Petty's uncontested affidavit indicates, the process of retrieving the emails also entails the extensive use of equipment and internal man-power. It will take six weeks to restore and review the data of just one of the three individual's email accounts. The entire project, then, will entail eighteen weeks of effort. To be sure, one can imagine the use of three dedicated servers to perform each of the six weeks of restoration work concurrently, but the end result is still eighteen weeks of man-power and eighteen weeks of use of the necessary equipment. That burden, which is undeniably substantial, exists independently of the monetary costs entailed.

The defendants have dealt with the question of undue burden by essentially ignoring its existence. This mode of dealing with potentially dispositive argument is as "pointless" as is ignoring potentially dispositive authority that is contrary to a party's position. *Hill v. Norfolk & Western Ry. Co.,* 814 F.2d 1192, 1198 (7th Cir.1987); *Fred A. Smith Lumber Company v. Edidin,* 845 F.2d 750, 753 (7th Cir.1988). While ignoring the question of burdens, the defendants have not cited not a single case in which a non-party was subjected to the significant burden of restoring electronic data from backup tapes.

**C**

**The Significance Of HFS's Non-Party Status**

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

In keeping with the text and purpose of Rule 45(c)(3)(A), it has been consistently held that "non-party status" is a significant factor to be considered in determining whether the burden imposed by a subpoena is undue. *See North Carolina Right to Life, Inc. v. Leake,*-F.R.D.-, 2005 WL 2456982 (D.D.C. Oct. 6, 2005); *Wyoming v. U.S. Dept. of Agriculture,* 208 F.R.D. 449, 452 (D.D.C.2002); *In re Automotive Refinishing Paint,* 229 F.R.D. 482, 495 (E.D.Pa.2005). As the First Circuit has explained:

**\*5** Although discovery is by definition invasive, parties to a law suit must accept its travails as a natural concomitant of modern civil litigation. Non-parties have a different set of expectations. Accordingly, concern for the unwanted burden thrust upon non-parties is a factor entitled to *special weight* in evaluating the balance of competing needs.

*Cusumano v. Microsoft Corp.,* 162 F.3d 708, 717 (1st Cir.1998)(Emphasis added). Here, the "unique burden" of restoring the email records and the "special weight" to be accorded HFS's non-party status combine to require that the defendants' subpoena be quashed under Rule 45(c)(3)(A)(iv).

Instead of focusing on the pivotal question of undue burden, the defendants attempt to demonstrate how relevant-i.e., how important-the emails are to HFS's possible knowledge and approval of the defendants' alleged fraud under the False Claims Act. According to the defendants, HFS was aware of adverse selection and has allowed it to be a general part of the Medicaid program that it was charged with administering. (*Defendants' Response to Motion of Non-Party HFS,* at 13). As such, the defendants argue that their request for the emails is critical to a "government knowledge" defense under *United States ex rel. Durcholz v. FKW, Inc.,* 189 F .3d 542 (7th Cir.1999).

There, the Seventh Circuit explained that, in order to prove an FCA violation, a relator must "produce evidence that [the defendant] knowingly presented, or caused to be presented, a false or fraudulent claim for payment or approval." *Id. at* 544 (*citing* 31 U.S.C. § 3729(a)(1)). The court described the *mens rea* element as requiring "that the defendant have actual knowledge of (or deliberately ignore or act in reckless disregard of)

the truth or falsity of the information presented; no specific intent to defraud is required." 189 F.3d at 544 (Emphasis in original). While the court noted that "[i]nnocent mistakes or negligence are not actionable," it also cautioned that "[w]hat constitutes the offense is not intent to deceive but knowing presentation of a claim that is either fraudulent or simply false." *Id.*

As for the "government knowledge" defense, the court held that: "[i]f the government knows *and approves of* the particulars of a claim for payment before that claim is presented, the presenter cannot be said to have knowingly presented a fraudulent or false claim." *Id.* at 545 (Emphasis added). Despite the seeming clarity of the court's opinion, HFS and the defendants have very different interpretations of the opinion and of the elements of the defense. (*Defendants' Response to Motion of Non-Party HFS,* at 13-14; *Reply Brief of the Non-Party HFS to Defendants' Response,* at 3-5). For the defendants, knowledge, *simpliciter,* is enough. Not surprisingly, HFS contends that there must have been approval by employees who had approval authority, not merely knowledge of what was going on. (*HFS Reply Brief* at 6). For the defendants, this sort of proof is irrelevant since they ignore the approval prong of the Seventh Circuit's opinion.

**\*6** Of course, it would be improper for me to make a determination about the ultimate merits of the controversy regarding the scope of the government knowledge defense since that issue is before Judge Leinenweber in the context of defendant's motion for summary judgment. But that does not mean that some cursory review is inappropriate for limited purposes. *Compare Von Drake v. National Broadcasting Co., Inc.,* No. 04-CV-0652, 2004 WL 1144142, *2 (N.D.Tex. Mar. 29, 2004)(cursory review to determine whether defendants have substantial arguments for dismissal); *Pacific Lumber Co. v. National Union Fire Insurance. Co. of Pittsburgh, PA,* 220 F.R.D. 349, 352 (N.D.Cal.2003)(cursory review to determine whether motion will potentially dispose of entire case and whether pending motion can be decided absent additional discovery); *Chrysler Capital Corp. v. Century Power Corp.,* 137 F.R.D. 209, 209-10 (S.D.N.Y.1991)(cursory review to determine whether motion appears to have substantial grounds or does not

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2005 WL 3111972 (N.D.Ill.)
(Cite as: Slip Copy)

Page 6

appear to be without foundation in law); *Aura Lamp & Lighting, Inc. v. International Trading Corp.,* 325 F.3d 903 (7th Cir.2003); *Price v. Code-Alarm,* 73 Fed.Appx. 159, 161, 2003 WL 21750812 (7th Cir.2003); (Although a court of appeals lacked jurisdiction to decide the merits of a case over which there was no jurisdiction, it could nevertheless "take a peek" to see whether to transfer the case to the Federal Circuit or dismiss the appeal); *Philips v. Seiter,* 173 F.3d 609, 611 (7th Cir.1999).

Judge Cudahy was the author of the opinion in *Durcholz.* On the panel were Judges Posner and Rovner. The Court of Appeals' conjunctive phrasing-"if the government knows *and* approves"-would appear to have been purposeful and intended to signal that mere knowledge alone of illegality would not enable those who defraud the government from being able to draw a conjurer's circle around their illegality and insulate themselves from condign punishment. Any other reading would make the conjunctive phrasing superfluous. The defendants have not paused to analyze the matter in any depth; they have merely quoted the text of the opinion. HFS, relying on the identical language quoted by the defendants, stressed the conjunctive phrasing and, in addition, adverted to the doctrine that prohibits, in most cases, estoppel against the government.

The inappropriateness of my deciding the issue presently before Judge Leinenweber is further underscored by the fact that the Relator and the State of Illinois have not briefed the government knowledge issue in connection with the present motion, involving as it does, a non-party. Consequently, any expression of ultimate opinion on the government knowledge defense would not only be unfair, but would necessarily be uninformed, as parties with a significant interest in the proper resolution of the question have not had an opportunity to express themselves. *Cf. Adamson v. California,* 332 U.S. 45, 59 (1946) (Frankfurter, J., concurring) ("the judicial process [is] at its best" only when there are "comprehensive briefs and powerful arguments on both sides...."); Brandeis, The Living Law, 10 Ill. L.Rev. 461, 470 (1916)("A judge rarely performs his functions adequately unless the case before him is adequately presented.").

*7 On the state of the present record, the following seems beyond debate: the burden on HFS to produce the requested emails is substantial and undue, while the claimed criticality of the emails is anything but certain, given the polar positions on the question by HFS and the defendants and the unresolved nature of the issue of the contours of the government knowledge defense. But even if it be conceded that the emails are "potentially germane" to the that defense, the significant and undue burden on HFS precludes production. *See Heidelberg Americas,* 333 F.3d at 41. In *Heidelberg,* for example, the First Circuit upheld the district court's quashing of a subpoena to a non-party and, in so doing, noted that: some considerable question exists as to how discovery of the materials would lead to admissible evidence. In other words, the documents are not obviously, and perhaps not even reasonably, calculated to lead to other discoverable materials ... The burden on the non-party ..., by contrast, appears to be significant.

333 F.3d at 41.

Here, too, the subpoena is significantly burdensome, and there is a question as to the claimed criticality of the emails: When the defendants filed their motion for summary judgment in December 2004, they were obviously satisfied that the evidentiary record they had compiled was sufficiently comprehensive and compelling that there were no disputed issues of material fact on the question of the government knowledge defense. In the intervening eleven months, the defendants have been content to rely on the record submitted to the district court. Yet, in this court, they now insist that the emails are indispensable to the defense that they thought was so straightforward and uncompromising in their favor that they were entitled to judgment as a matter of law under Rule 56. The tension between the current claim in this court that the evidence is so critical that any burden that the non-party HFS must endure is outweighed by the need for the evidence and the position taken in the summary judgment motion is as irreconcilable as it is obvious. In short, while the evidence sought may be relevant, on the present record, the efforts required for its production would be unduly burdensome, especially given HFS's non-party status, and the unresolved issue of the scope of the government knowledge defense.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

For the foregoing reasons, the motion of non-party Illinois Department of Healthcare and Family Services to quash the defendants' subpoena [267] as to document category No. 7 is GRANTED.

N.D.Ill.,2005.
U.S. v. Amerigroup Illinois, Inc.
Slip Copy, 2005 WL 3111972 (N.D.Ill.)

Briefs and Other Related Documents (Back to top)

• 2006 WL 1044685 (Trial Motion, Memorandum and Affidavit) Non-Party Illinois Department of Healthcare and Family Services' Response to Defendants' Motion for Sanctions and Request for Relief (Mar. 31, 2006) Original Image of this Document (PDF)
• 2006 WL 1044684 (Trial Motion, Memorandum and Affidavit) Defendants' Motion to Compel the Production of ""Media" Documents Improperly Withheld by the Relator (Mar. 30, 2006) Original Image of this Document (PDF)
• 2006 WL 1040189 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Relator's and the People of the State of Illinois' Motion to Modify or Reconsider Magistrate Judge Levin's April 19th Order (Mar. 7, 2006) Original Image of this Document (PDF)
• 2006 WL 1040191 (Trial Motion, Memorandum and Affidavit) Relator's Response to Defendants' Motion for Sanctions for State of Illinois/HFS' Continued Failure to Comply with Court Orders (Mar. 7, 2006) Original Image of this Document (PDF)
• 2006 WL 1044683 (Trial Motion, Memorandum and Affidavit) Defendants' Reply Brief Supporting Motion for Order to Show Cause and to Compel MCOs to Produce Documents Required by Agreement (Mar. 6, 2006) Original Image of this Document (PDF)
• 2006 WL 1044682 (Trial Motion, Memorandum and Affidavit) Reply Brief Supporting Motion for Order to Show cause and Sanctions Based on HFS's Perjured Deposition Testimony (Mar. 3, 2006) Original Image of this Document (PDF)
• 2006 WL 1044681 (Trial Motion, Memorandum and Affidavit) Non-Party MCOs' Joint Response to Defendants' Motion for Order to Show Cause and to Compel (Mar. 1, 2006) Original Image of this Document (PDF)

• 2006 WL 740160 (Trial Motion, Memorandum and Affidavit) Relator's and the People of the State of Illinois' Response to Defendants' Motion for Order to Show Cause and Sanctions Based on Testimony of Kelly Carter (Feb. 27, 2006)
• 2006 WL 740159 (Trial Motion, Memorandum and Affidavit) Defendants' Opposition to the Relator's and the State of Illinois' Motion for Clarification of This Court's Order of November 2, 2005 (Feb. 20, 2006)
• 2006 WL 549059 (Trial Motion, Memorandum and Affidavit) Defendants' Opposition to Motion to Strike Affirmative Defenses (Jan. 24, 2006)
• 2006 WL 549057 (Trial Motion, Memorandum and Affidavit) Relator's and the People of the State of Illinois' Motion to Strike Affirmative Defenses (Jan. 5, 2006)
• 2006 WL 549058 (Trial Motion, Memorandum and Affidavit) Relator's and the People of the State of Illinois' Memorandum in Support of Their Motion to Strike Affirmative Defenses (Jan. 5, 2006)
• 2005 WL 3612838 (Trial Pleading) Defendants' Answer and Affirmative Defenses to the Third Amended Complaint (Nov. 23, 2005)
• 2005 WL 3615546 (Trial Motion, Memorandum and Affidavit) Non-Party Illinois Department of Heal Thcare and Family Services' Response to Amerigroup Illinois Inc.'s Objections to Magistrate Judge's Order Quashing Request for E-Mails in a Subpoena (Nov. 21, 2005)
• 2005 WL 3615542 (Trial Motion, Memorandum and Affidavit) Objections to Magistrate Judge's Order Quashing Request for E-Mails in A Subpoena (Nov. 4, 2005)
• 2005 WL 3286491 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Defendants' Motion to Certify for Interlocutory Appeal Pursuant to 28 U.S.C. | 1292(b) (Oct. 27, 2005)
• 2005 WL 3286486 (Trial Motion, Memorandum and Affidavit) The People of the State of Illinois' Response to Amerigroup Corporation's Motion to Compel Discovery Responses (Oct. 24, 2005)
• 2005 WL 3286483 (Trial Motion, Memorandum and Affidavit) Amerigroup Illinois' Opposition to the Illinois Department of Healthcare and Family Services' ""Motion to Quash Subpoenas, or in the Alternative, Motion for Protective Order" (Oct. 18, 2005)
• 2005 WL 3286480 (Trial Motion, Memorandum and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2005 WL 3111972 (N.D.Ill.)

**(Cite as: Slip Copy)**

Affidavit) Trial Motion and Memorandum and Affidavit (Oct. 17, 2005)

• 2005 WL 2871044 (Trial Motion, Memorandum and Affidavit) Reply Brief of Non-Party Illinois Department of Healthcare and Family Services to Defendants' Response to Hfs' Motion to Quash A Subpoena for Documents Or, in the Alternative, Motion for Protective Order (Sep. 14, 2005)

• 2005 WL 2611036 (Trial Motion, Memorandum and Affidavit) Defendants' Response to Relator's Motion to Compel Answer to Interrogatory on Damages (Aug. 26, 2005)

• 2005 WL 2611026 (Trial Motion, Memorandum and Affidavit) Reply Brief in Support of Defendants' Motion to Dismiss Plaintiffs' Third Amended Complaint (Aug. 18, 2005)

• 2005 WL 2611031 (Trial Motion, Memorandum and Affidavit) Defendants' Response to ""Motion of Non-Party Illinois Department of Healthcare and Family Services to Quash A Subpoena for Documents Or, in the Alternative, Motion for Protective Order" (Aug. 18, 2005)

• 2005 WL 2611021 (Trial Motion, Memorandum and Affidavit) The United States' Memorandum of Law in Support of its Motion to Intervene (Aug. 11, 2005)

• 2005 WL 3295617 (Trial Motion, Memorandum and Affidavit) Motion of Non-Party Illinois Department of Healthcare and Family Services to Quash A Subpoena for Documents Or, in the Alternative, Motion for Protective Order (Aug. 11, 2005)

• 2005 WL 2611015 (Trial Motion, Memorandum and Affidavit) Relator's Supplemental Memorandum in Support of its Motion to Compel Answer to Interrogatory on Damages (Aug. 09, 2005)

• 2005 WL 2611007 (Trial Motion, Memorandum and Affidavit) Relator's and the State of Illinois' Joint Response to Defendants' Motion to Dismiss (Aug. 04, 2005)

• 2005 WL 2240820 (Trial Motion, Memorandum and Affidavit) Non-Party Department of Healthcare and Family Services' Memorandum in Opposition to Defendant's Conditional Motion to Join Idpa as A Party (Jul. 19, 2005)

• 2005 WL 2240821 (Trial Motion, Memorandum and Affidavit) Relator's Response to Defendant's Brief Supporting its Motion to Join the Idpa as A Party (Jul. 19, 2005)

• 2005 WL 2240817 (Trial Motion, Memorandum and Affidavit) Defendants' Memorandum in Support of Their Motion for A Fair Apportionment of Electronic Discovery Costs (Jul. 13, 2005)

• 2005 WL 2240818 (Trial Motion, Memorandum and Affidavit) Brief Supporting Defendant's Conditional Motion to Join the Idpa as A Party (Jul. 12, 2005)

• 2005 WL 2240819 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Defendants Motion to Dismiss Plaintiffs' Third Amended Complaint (Jul. 7, 2005)

• 2005 WL 2240816 (Trial Motion, Memorandum and Affidavit) Relator's Response to Defendant Amerigroup Illinois, Inc.'s Conditional Motion to Join the Idpa as A Party (Jul. 1, 2005)

• 2003 WL 23817679 (Trial Motion, Memorandum and Affidavit) Defendant Amerigroup Illinois, Inc.'s Reply Brief in Support of Its Motion to Dismiss Plaintiff's Second Amended Complaint (2003) (Dec. 23, 2003)

• 2003 WL 23817676 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Response to Defendant's Motion to Dismiss Plaintiffs' Second Amended Complaint (2003) (Dec. 9, 2003)

• 2003 WL 23817675 (Trial Pleading) Second%n1%n Amended Complaint (2003) (Oct. 14, 2003)

• 2002 WL 32676088 (Trial Pleading) Complaint (Aug. 26, 2002)

• 1:02cv06074 (Docket) (Aug. 26, 2002)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## CERTIFICATE OF SERVICE

I, Roger D. Anderson, do hereby certify that on the **9th** day of **June, 2006**, I electronically filed the forgoing **JOINT ANSWERING BRIEF TO MOTION OF THE TRUSTEE OF THE IT LITIGATION TRUST TO QUASH SUBPOENA** with the Clerk of the Court using the CM/ECF which will send notifications of such filing(s) to the following:

> Jeffrey M. Schlerf, Esquire
> The Bayard Firm
> 222 Delaware Avenue
> P.O. Box 25130
> Wilmington, DE, 19899

I, Roger D. Anderson, do further hereby certify that on the **9th** day of **June, 2006**, I caused the foregoing **JOINT ANSWERING BRIEF TO MOTION OF THE TRUSTEE OF THE IT LITIGATION TRUST TO QUASH SUBPOENA** to be served in the manner indicated upon the parties referenced below:

### BY ELECTRONIC MAIL AND HAND DELIVERY

Mark D. Collins, Esquire
Marcos A. Ramos, Esquire
Richards, Layton & Finger, P.A.
One Rodney Square
P.O. Box 551
Wilmington, DE 19899
Email: Collins@RLF.com
Email: Ramos@RLF.com

Jeffrey M. Schlerf, Esquire
Edmond D. Johnson, Esquire
Eric M. Sutty, Esquire
The Bayard Firm
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE, 19899
Email: jschlerf@bayardfirm.com
Email: tjohnson@bayardfirm.com
Email: esutty@bayardfirm.com

10014928.WPD

Brian D. Long, Esquire
Milberg, Weiss, Bershad & Schulman
919 North Market Street
Suite 980
Wilmington, DE 19801
Email: blong@milbergweiss.com


**BY ELECTRONIC MAIL AND U.S. MAIL**

Charles A. DeMonaco, Esquire
Kimberly L. Haddox, Esquire
Richard J. Federowicz, Esquire
Dickie, McCamey & Chilcote, P.C.
Two PPG Place, Suite 400
Pittsburgh, PA  15222-5402
Email: cdemonaco@dmclaw.com
Email: khaddox@dmclaw.com
Email: rfederowicz@dmclaw.com

David A. Becker, Esquire
Thomas L. Patten, Esquire
Courtney S. Schorr, Esquire
Laurie B. Smilan, Esquire
Latham & Watkins LLP
555 11th Street NW, Suite 1000
Washington, DC  20004-1304
Email: david.becker@lw.com
Email: tom.patten@lw.com
Email: courtney.schorr@lw.com
Email: laurie.smilan@lw.com

Richard J. Pocker, Esquire
Boies, Schiller & Flexner
777 North Rainbox Boulevard
Suite 350
Las Vegas, NV 89107
Email: rpocker@bsfllp.com

E. Powell Miller, Esquire
Miller Shea
950 West University Drive
Suite 300
Rochester, MI 48307
Email: epm@millershea.com

Mark A. Willard, Esquire
Paul D. Steinman, Esquire
Robert V. Campedel, Esquire
Eckert Seamans Cherin & Mellot, LLC
600 Grant Street, 44th Floor
Pittsburgh, PA  15219
Email: mwillard@eckertseamans.com
Email: psteinman@eckertseamans.com
Email: rcampedel@eckertseamans.com

Kwasi A. Asiedu, Esquire
Law Offices of Kwasi A. Asiedu
3858 Carson Street
Number 204
Torrance, CA 90503
Email: laskido@hotmail.com

Larry K. Elliott, Esquire
Cohen & Grigsby
11 Stanwix Street, 15th Floor
Pittsburgh, PA 15222-1319
Email: lelliott@cohenlaw.com

10014928.WPD

John K. Cunningham, Esquire
Matthew J. Feeley, Esquire
White & Case LLP
Wachovia Financial Center
200 South Biscayne Blvd.
Suite 4900
Miami, FL 33131
Email: jcunningham@whitecase.com
Email: mfeeley@whitecase.com

Steven A. Schwartz, Esquire
Chimicles & Tikellis, LLP
361 West Lancaster Avenue
One Haverford Centre
Haverford, PA 19041
Email: steveschwartz@chimicles.com

Lionel Z. Glancy, Esquire
Michael Goldberg, Esquire
Robert Zabb, Esquire
Glancy, Binkow & Goldberg, LLP
1801 Avenue of the Stars
Suite 311
Los Angeles, CA 90067
Email: info@glancylaw.com

_____
Roger D. Anderson (I.D. No. 3480)